UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA GALVAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FIRST STUDENT MANAGEMENT, LLC, et al., <br><br> Defendants. | Case No. 18-cv-07378-JST <br><br> **ORDER DENYING MOTION FOR CLASS CERTIFICATION** <br><br> Re: ECF No. 77 |

Before the Court is a motion for class certification filed by Plaintiffs Barbara Galvan and Cynthia Provencio. ECF No. 77. The Court will deny the motion.

## I. BACKGROUND

Defendants First Student Management, LLC, First Group America, Inc., and First Transit, Inc. ("Defendants") provide transportation services to school districts and related clients. Named Plaintiff Barbara Galvan worked for First Student as a bus driver from approximately November 2011 through November 2017. ECF No. 54 ¶ 26. Named Plaintiff Cynthia Provencio worked for Defendants as a bus driver from June 2018 until March 2020.

Plaintiffs bring this putative class action against Defendants for violations of the California Labor Code and Business and Professions Code. Plaintiffs allege that (1) drivers were not paid for the walk time to/from the dispatch office nor were they paid for post-trip inspections; (2) drivers were paid based on scheduled start/end times rather than actual hours worked; (3) Defendants failed to pay split shift premium to drivers who worked more than one shift separated by more than an hour between shifts; (4) Defendants failed to provide legally compliant meal periods to drivers assigned additional shifts during their split shifts; (5) Defendants failed to provide legally compliant rest breaks; (6) Defendants failed to reimburse drivers for expenses incurred for work

purposes. ECF No. 77 at 7.

Plaintiffs seek to certify the following classes and sub-classes:

Off-the-Clock Work Class
"All persons employed as non-exempt, hourly paid bus drivers by Defendants in California who were not paid for all hours worked during the period four years before the filing of the complaint."

    Bus Clock-In/Clock-Out Sub-Class
    "All Off-the-Clock Work Class members who clocked in/out at the bus who were not paid for (1) walk time to/from the dispatch office; and/or (2) post-trip inspections."

    Scheduled Shift Sub-Class
    "All Off-the-Clock Work Class members who were not paid based upon their actual punch records, and were paid based on either their scheduled start and/or end times or some arbitrary start and/or end times which resulted in them being not paid all hours reflected by their punch records."

Split Shift Class
"All persons employed as non-exempt, hourly paid bus drivers by Defendants in California and who worked more than one shift in the same workday separated by more than an hour between shifts during the period four years before the filing of the complaint."

Meal Period Class
"All persons employed as non-exempt, hourly paid bus drivers by Defendants in California and who worked a shift in excess of five hours during the period four years before the filing of the complaint."

    Additional Shifts Sub-Class
    "All Meal Period Sub-Class members who were either assigned an additional shift and/or who agreed to take on an additional shifts during their split shifts."

Rest Break Class
"All persons employed as non-exempt, hourly paid bus drivers by Defendants in California and who worked a shift in excess of three and one-half hours during the period four years before the filing of the complaint."

Expense Reimbursement Class
"All persons employed as non-exempt, hourly paid bus drivers by Defendants in California who incurred business expenses during the period four years before the filing of the complaint."

*Id.* at 3-4. Defendants oppose the motion for class certification, ECF No. 84, and Plaintiffs replied, ECF No. 94.

## II.    LEGAL STANDARD

A party seeking class certification bears the burden of demonstrating by a preponderance

of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-47 (2011).

Under Rule 23(a), the court must conduct a "rigorous analysis" to determine whether:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Dukes*, 564 U.S. at 351-52.

A plaintiff must also establish that one of the bases for certification in Rule 23(b) is met. *Id.* at 345. Here, Plaintiffs invoke Rule 23(b)(3), which requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id.* Courts "must take the substantive allegations of the complaint as true" but "need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action." *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 335 (N.D. Cal. 2010) (citations omitted).

## III. DISCUSSION

### A. Evidentiary Questions

Both parties submitted extensive exhibits with their briefs. *See*, e.g., ECF Nos. 77-3 (681-page compendium of evidence in support of plaintiffs' motion for class certification); 87-1 (564-page lodgment of exhibits in support of Defendant's opposition). Both parties also filed objections to these exhibits in filings separate from their briefs. *See* ECF Nos. 84-1; 94-1. Under Civil Local Rule 7-3, "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum." Because the parties' separately-filed objections fail

3

to comply with this rule, the Court does not consider them. *Nucci v. Rite Aid Corp.*, No. 19-CV-01434-LHK, 2020 WL 3187335, at *7 (N.D. Cal. June 14, 2020) ("Courts have refused to consider objections in such circumstances." (citing cases)).

However, the local rules also provide that "[i]f new evidence has been submitted in the reply. an opposing party may file and serve an Objection to Reply Evidence, which may not exceed 5 pages of text." Civ. L.R. 7-3(d). The Court will therefore consider Defendants' objections to evidence submitted with Plaintiffs' reply brief, ECF No. 96, as well as evidentiary objections raised within Plaintiffs' motion and Defendants' opposition briefs. The Court addresses the relevant objections below "to the extent it deems necessary but does not address objections pertaining to facts it did not consider or that are irrelevant to the resolution of the Motion." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602 (C.D. Cal. Nov. 16, 2015).

### B. Rule 23

To obtain class certification under Rule 23(b)(3), Plaintiffs must satisfy Rule 23(a)'s numerosity, commonality, typicality and adequacy requirements and Rule 23(b)(3)'s requirement "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Given the relationship between Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement, courts often analyze them together. *See, e.g.*, *Siino v. Foresters Life Ins. and Annuity Co.*, 340 F.R.D. 157, 161-62 (N.D. Cal. Jan. 12, 2022); *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2021 WL 1320773, at *6-7 (N.D. Cal. March 23, 2021).

#### 1. Split Shift Class

Plaintiffs seek to certify a class of drivers who "worked more than one shift in the same workday separated by more than an hour between shifts." ECF No. 77 at 3. Defendants oppose certification because "Plaintiffs failed to allege any cause of action that included split shift premiums violations in the Consolidated Complaint and are therefore barred from certifying a class based on these claims." ECF No. 84 at 30. Plaintiffs, in reply, state that they are "not

seeking to add another theory of recovery to this case (*i.e.*, split shift premium)." ECF No. 94 at 21. Instead, they argue that the Court should exercise its "inherent power to further modify class definitions" because the claims for this class "are encompassed by the Meal Period and Rest Break Classes." *Id.*

The Court rejects Plaintiffs' appeal to the Court's "inherent power." As a general matter, courts "will not certify classes different from, or broader than, a class alleged in the complaint without plaintiff moving to amend the complaint." *Richie v. Blue Shield of Cal.*, No. C-13-2693 EMC, 2014 WL 6982943, at *13 (N.D. Cal. Dec. 9, 2014). Furthermore, Plaintiffs' opening brief does not attempt to demonstrate how a proposed class meeting such a modified definition satisfies the requirements of Rule 23. The Court therefore denies certification of a split shift class.

### 2.  Numerosity

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs contend, and Defendants do not dispute, that the numerosity prong of Rule 23(a) is satisfied because "there are thousands of class members." ECF No. 77 at 20. The Court finds Plaintiffs have met the numerosity requirement. *See Floyd v. Saratoga Diagnostics, Inc.*, No. 20-CV-01520-LHK, 2021 WL 2139343, at *3 (N.D. Cal. May 26, 2021) (noting that "[a]s a general rule . . . classes of 40 or more are numerous enough") (citation and internal quotation marks omitted).

### 3.  Commonality and Predominance

"The requirement of 'commonality' means that the class members' claims 'must depend upon a common contention' and that the 'common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting *Dukes*, 564 U.S. at 350).

In seeking to certify a Rule 23(b)(3) class, Plaintiffs must show that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "[T]he focus of the predominance inquiry" is whether "a proposed class is sufficiently cohesive to

5

1    warrant adjudication by representation." *Amgen Inc.*, 568 U.S. at 469 (citation and internal

2    quotation marks omitted).  "But the rule 'does not require a plaintiff seeking class certification to

3    prove that each element of their claim is susceptible to classwide proof,' so long as one or more

4    common questions predominate." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020)

5    (quoting *Amgen Inc.*, 568 U.S. at 469).

### a.      James Toney's Expert Report

Plaintiffs have submitted an expert report from James Toney setting forth calculations of meal break, rest break, and off-the-clock violations.  ECF No. 78.  Based on Defendants' opposition and objections, Plaintiffs later filed a supplemental declaration with amended calculations.  ECF No. 94-4.  For both calculations, Toney relied upon Defendants' FOCUS records.  ECF No. 94 at 10-12.[1]

The parties agree that the FOCUS records are incomplete and inadequate to demonstrate whether Defendants complied with the Labor Code.  Defendants describe their records as "a patchwork of different systems" that are "far from self-explanatory."  ECF No. 84 at 16-17.  According to Defendants' own expert, approximately 70 percent of the records were incomplete.  ECF No. 94-2 at 24-25.  The incomplete nature of a record could reflect that an employee forgot to clock in at either the beginning or the end of the day, but it could also reflect the payment of sick time or holiday pay.  *Id*.  For their part, Plaintiffs refer to Defendants' records as "a Swiss cheese model of recordkeeping."  ECF No. 94 at 7.  Plaintiffs do not attempt to defend the accuracy of Toney's conclusions, given the incomplete nature of the data on which he relied.  Instead, they argue that their motion should be granted "[b]ecause of the intrinsic flaws in First Student's FOCUS records."  *Id.* at 7 n.4.

In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Court held that "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing

---

[1] Toney's supplemental declaration was submitted for the first time on reply.  ECF No. 94-4.  The Court therefore disregards it and sustains Defendants' objection on this ground.  *Altman v. Cnty. of Santa Clara*, 464 F. Supp. 3d 1106, 1116 n.5 (N.D. Cal. 2020) ("The Court disregards this evidence because it was presented for the first time on reply.").

6

substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id*. at 687-88. Once this showing is made, the burden shifts to the employer to provide "evidence of the precise amount of work performed" or evidence that negates "the reasonableness of the inference to be drawn from the employee's evidence." *Id.* If the employer fails meet this burden, "the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688. Seventy years after *Mt. Clemens* was decided, the Supreme Court extended this reasoning and held that in certain situations, "a representative sample may be used to establish classwide liability." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455, 460 (2016). "The fairness and utility of statistical methods . . . will depend on [the case's] facts and circumstances." *Id.* Notably, the Court in Tyson did not find predominance met simply because the employer kept inadequate records. Instead, it found that the employees were still required to show classwide liability but could "introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records."[2] *Id.*

"Representative evidence is nothing new. Courts allow it in certain circumstances, but plaintiffs do not have free rein in using such evidence." *Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1086 (9th Cir. 2020) (citation omitted). In *Tyson Foods*, "[t]he Supreme Court allowed the plaintiffs to rely on a representative sample to establish hours worked because 'the sample could have sustained a reasonable jury finding as to hours worked in each employee's individual action.'" *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG, 2021 WL 4818945, at *2 (N.D. Cal. Oct. 15, 2021) (quoting *Tyson Foods*, 577 U.S. at 455). The workers in *Tyson Foods* engaged an expert witness to use keycard data to determine how many employees had likely been undercompensated. *See id.* at 450-51. They also submitted video evidence to demonstrate how long required donning and doffing practices might reasonably take per

---

[2] Representative samples are not the only way to fill evidentiary gaps. *See Fodera v. Equinox Holdings, Inc.*, No. 19-cv-05072-WHO, 2022 WL 1645942, at *5 (N.D. Cal. May 24, 2022) (finding that a survey could be used to "fill in evidentiary gaps").

employee, averaging together 744 separate observations to create a reliable average. *See id.* at 450. "Although the evidence was approximate for each class member, the workers submitted observable, quantifiable evidence to support their specific overtime claims." *Martorell v. Bagchi*, No. 3:19-cv-00523-MMD-CLB, 2021 WL 3824661, at *7 (D. Nev. Aug. 25, 2021).

Plaintiffs do not offer similar evidence here. James Toney's expert report does not attempt to obtain a representative sample and then extrapolate from that sample to determine the likely injury to each individual class member. Moreover, variations in the declarations submitted by Plaintiffs, as discussed in more detail below, make the prospect of a reliable average even more unlikely. "In determining whether a sample is representative of a class, courts ask whether each member of the class could have relied on the evidence obtained from the representative sample to establish liability in his or her own individual action." *Briggs v. Adel*, No. CV-18-02684-PHX-EJM, 2020 WL 4003123, at *18 (D. Ariz. July 15, 2020) (citing *Tyson Foods*, 577 U.S. at 455). Toney's report would not allow the Court or a jury to determine liability as to any individual plaintiff in this case or, by extension, as to the class.[3]

### b. Class Member Declarations

The other means by which Plaintiffs attempt to establish predominance is by asserting that Defendants' alleged unlawful employment practices rose to the level of an unofficial policy. ECF No. 77 at 23 ("Class certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established." (quoting *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008)).

"Courts generally hold that sufficient evidence of an unofficial policy exists where the plaintiff offers multiple declarations from employees attesting to the uniform application of the policy." *Campbell v. Vitran Express Inc*, No. CV 11-5029 RGK (SHx), 2015 WL 7176110, at *7 (C.D. Cal. Nov. 12, 2015) (citing cases); *Huerta v. CSI Elec. Contractors, Inc.*, No. 18-cv-06761-BLF, 2021 WL 1323425, at *9 (N.D. Cal. March 12, 2021) (finding declarations from class members sufficient to demonstrate an unofficial policy existed and applied uniformly to all class

---

[3] The Court discusses separately below whether Toney's analysis is sufficient to give rise to a rebuttable presumption of liability as to Plaintiffs' meal break claims.

8

1  members).  On the other hand, "courts have found insufficient evidence of a uniform policy where
2  employees provide testimony indicating that their experiences varied based on supervisor or work
3  location."  *Campbell*, 2015 WL 7176110, at \*7 (citing cases); *Flores v. CVS Pharmacy, Inc.*, No.
4  2:07-cv-05326-JHN-Ex, 2010 WL 3656807, at \*5 (C.D. Cal. Sept. 7, 2010), *aff'd sub nom. Flores
5  v. Supervalu, Inc.*, 509 F. App'x 593 (9th Cir. 2013) (finding predominance not met where
6  plaintiff's claim required examination of "a number of human factors and individual
7  idiosyncrasies"); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959
8  (9th Cir. 2009) (holding that class certification may be denied where "a fact-intensive inquiry into
9  each potential plaintiff's employment situation" is required).

10  In *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014), plaintiffs sought certification
11  of a class of employees who alleged that their employer implemented an unofficial policy to
12  discourage its employees from reporting overtime.  "[T]he district court held that the common
13  question of whether [the defendant] had an 'unofficial policy' of denying overtime payments
14  while requiring overtime work predominated over any individualized issues regarding the specific
15  amount of damages a particular class member may be able to prove."  *Id.* at 1164.  The Ninth
16  Circuit affirmed because "[p]roving at trial whether such informal or unofficial policies existed
17  will drive the resolution" of the litigation.  *Id.* at 1166.

18  On the other hand, in *Flores*, the plaintiff sought to certify a class where "the demeanor of
19  some supervisors implicitly compelled employees to forego or interrupt breaks to help customers."
20  509 F. App'x at 594.[4]  The claim in *Flores*, like the claim in *Jimenez*, centered on an employer's

---

[4] The Court is mindful of the Ninth Circuit's command that "although memorandum dispositions can be cited, and may prove useful, as examples of the applications of settled legal principles when a district court or litigant is interested in demonstrating how a given principle operates in practice, a nonprecedential disposition is not appropriately used—as it was here—as the pivotal basis for a legal ruling by a district court." *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020).  Many district courts have incorporated a comparison of *Flores* and *Jimenez* into their own holdings, however, and the Court therefore considers the resulting body of caselaw as a whole.  *See, e.g., Espinosa v. Genesis Healthcare, Inc.*, No. CV 20-688-DMG (JCx), 2021 WL 2497938, at \*11 (C.D. Cal. Mar. 31, 2021); *Briggs v. OS Rest. Servs., LLC*, No. LA CV18-08457 JAK (AFMx), 2020 WL 6260001, at \*17 (C.D. Cal. Aug. 26, 2020); *Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 339 (C.D. Cal. 2016); *Campbell*, 2015 WL 7176110, at \*6-7.

9

1  unofficial policy to violate the labor code, but the district court denied certification. The Ninth

2  Circuit affirmed, holding that "[t]he district court correctly found that [the 'unofficial policy']

3  claim required examination of 'a number of human factors and individual idiosyncrasies' having

4  'little to do with an overarching policy' and thus failed to satisfy Rule 23(b)(3)." *Id.* (quoting

5  *Flores*, 2010 WL 3656807, at *5).

6  In reconciling these two cases, court have identified the distinguishing factor as "the

7  amount of evidence presented to support the existence of an unofficial policy" that "applies

8  uniformly to all class members." *Campbell*, 2015 WL 7176110, at *7.

### i.  Meal Period Class

Section 512(a) of the California Labor Code "requires employers to provide employees with one 30-minute meal period, to begin no later than the end of the fifth hour of work, and another 30-minute meal period to begin no later than the tenth hour of work, for shifts of that length or longer. If the employer does not provide a compliant meal period, the employer must pay an additional hour of compensation at the regular rate of compensation." *Garcia v. Cent. Coast Rests., Inc.*, No. 18-cv-02370-RS, 2022 WL 657972, at *2 (N.D. Cal. March 4, 2022) (citing Cal. Lab. Code § 512(a)). "An employer is liable only if it does not provide an employee with the opportunity to take a compliant meal period. The employer is not liable if the employee chooses to take a short or delayed meal period or no meal period at all." *Donohue v. AMN Services*, 11 Cal. 5th 58, 78 (2021) (citing *Brinker Rests. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012)). Plaintiffs argue that Defendants implemented unofficial policies that prevented employees from taking legally compliant meal periods.

If a defendant's records indicate missed, short, or delayed meal break periods, a rebuttable presumption of liability arises. *Donohue*, 11 Cal. 5th at 75. The purpose of this presumption is "deriv[ed] from an employer's duty to maintain accurate records of meal periods" and to prevent employers from receiving a "potential windfall from the failure to record meal periods." *Id.* A defendant may rebut this presumption by "presenting evidence that employees were compensated for noncompliant meal periods or that they had in fact been provided compliant meal periods during which they chose to work." *Id.* at 77.

10

1  Here, Plaintiffs submitted Toney's analysis of class members' time record, in which he observed at least one meal period violation in 104,000 shifts. This number reflects "24% of the shifts that required a meal," "11% of all shifts," and the fact that 77% of all employees experienced at least one meal break violation. *Id.* Were these figures accurate, they would likely establish a rebuttable presumption under *Donohue*. Unfortunately, however, they are based on an incorrect legal premise: that, for a meal to be compliant, "[t]he meal break needs to start *prior to* the start of the 5th hour." ECF No. 94-4 (emphasis added). Under California law, an employer must provide a compliant meal break "no later than the *end* of the employee's fifth hour of work." *Brinker*, 52 Cal. 4th at 1041 (emphasis added). Because Toney's calculations are based on an incorrect legal premise, they cannot trigger a rebuttable presumption.

Nor does Plaintiffs' declaration evidence support the existence of a uniform, unofficial policy, because of the wide variations in the frequency with which class members did not take meal breaks. Many of the declarants state that Defendants did not schedule meal breaks for them, because they were expected to eat their meals between split shifts. *See, e.g.,* ECF No. 77-3 at 639 ("During my time at First Student, I was regularly not provided with a meal period of 30 minutes for work periods of more than five (5) hours per day. I was merely expected to find time to eat lunch during the interval between my split shifts."); ECF No. 87-1 at 74 (driver acknowledging she was "off duty" between shifts), 112 (driver acknowledging time between shifts was "her own time"), 400 (same). Plaintiffs do not allege that there was anything unlawful about this practice. And without further information concerning the length of each split shift, it is not possible to determine whether any meal break violations occurred.[5]

Putative class members did sometimes accept mid-day shifts which occupied the time during which they might otherwise have taken a meal break. But the evidence does not point to a uniform policy. Declarant John Gray, for example, testified at deposition that "I never do

---

[5] The Court has not considered the declarations Defendants submitted from their current employees. *See Garcia*, 2022 WL 657972, at *6 n.4; *Shaw v. AMN Healthcare, Inc.*, 326 F.R.D. 247, 269 (N.D. Cal. 2018) (noting that the court was "reluctant to place significant weight on declarations of current AMN employees to deny class certification given the risk of bias and coercion inherent in such testimony").

11

middays, ever" because he has "a job in the middle of the day [he has] to be at." ECF No. 871-1 at 370. And declarant Rachelle M. Tunstall testified that sometimes a mid-day shift presented the opportunity for a lunch break and sometimes it did not. *Id.* at 402 (testifying that "all field trips are not the same. You don't know until you actually start your field trip and you get to your destination[.]"). Sometimes drivers were relieved of responsibilities except that they "had to stay with the bus at all times." ECF No. 77-3 at 680. Given this variation, the Court cannot find the existence of a common, unofficial policy. *See Campbell*, 2015 WL 7176110, at *7; *Kilbourne v. Coca-Cola Co.*, No. 14cv0984–MMA (BGS), 2015 WL 5117080, at *11 (S.D. Cal. July 29, 2015) (finding that individualized issues predominate where "no substantial evidence points to a uniform, companywide policy").

Because individualized issues predominate, the Court denies certification of a meal period class.[6]

### ii.   Rest Period Class

In California, employers are required to provide employees with a rest break "at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." IWC Wage Order No. 9. Plaintiffs allege that Defendants did not provide Plaintiffs and the class with compliant rest breaks because "they were required to remain in the bus and there were no opportunities in which they could leave the bus, especially when they were transporting children." ECF No. 77 at 29.

Once again, the record indicates that individualized inquiries predominate as to this claim. Named Plaintiff Barbara Galvan testified that during a portion of her employment with Defendants, she understood that she was entitled to rest breaks, and she took them. ECF No. 87-1 at 56. And putative class member Kimberly Ramos testified that no one at Defendants ever

---

[6] The Court is aware of – and endorses – the authority holding that where a Defendant's policy or practice applies across an entire employee group, variations in individual class member's experiences by themselves do not necessarily defeat certification. *E.g., Stitt v. San Francisco Mun. Transportation Agency*, No. 12-CV-3704 YGR, 2014 WL 1760623, at *6 (N.D. Cal. May 2, 2014); *Brown v. Abercrombie & Fitch Co.*, No. 14-CV-1242-JGB(VBKX), 2015 WL 9690357, at *18 (C.D. Cal. July 16, 2015). The evidence of a uniform policy was stronger in those cases than it is here. Also, as *Stitt* points out, Plaintiffs must still be able to show "how . . . damages could be calculated for all of Plaintiffs' claims on a class-wide basis." *Stitt*, 2014 WL 1760623, at *5. As explained above, Plaintiffs have not made that showing.

instructed her concerning, or even discussed the subject of rest breaks. ECF No. 87-1 at 457. Even descriptions of supervisor behavior are not consistent. ECF No. 77-3 at 626 ("Sometimes we took no breaks at all because our supervisors would refuse to permit any breaks."); 676 ("I was told to take a rest break whenever possible, but due to the nature of my routes I often could not rest."); 654 (stating that although she could not take rest breaks "whenever [she] wanted," she was typically allowed a "ten minute rest break during the day"). Plaintiffs do not attempt to harmonize these statements.

This evidence, taken as a whole, does not describe a uniform unofficial policy. Rather, it suggests a variety of experiences that differed from employee to employee. *See Wilson v. Practiv LLC*, 5:20-cv-01691-SB-KK, 2021 WL 5818492, at *8 (C.D. Cal. Dec. 3, 2021) ("Without evidence of a uniform or consistently applied policy or practice, individual inquiries predominate"); *Braun v. Safeco Ins. Co. of Am.*, No. CV 13-00607 BRO (PLAx), 2014 WL 9883831, at *14 (C.D. Cal. Nov. 7, 2014) (finding no uniform practice where "[t]he record reflects a wide variety of experiences among putative class members with respect to meal and rest breaks").

The Court denies certification of a rest break class.

### iii. Off-the-Clock Work Class and Sub-Classes

California law requires employers to provide employees with accurate wage statements that show "gross wages earned" and "total hours worked by the employee." Cal. Lab. Code § 226(a). To prove an off-the-clock claim, "plaintiffs must demonstrate that class members worked hours for which they were not paid and [defendants were] aware, or should have been aware, that class members were performing work for which they were not paid." *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695, at *11 (N.D. Cal. Nov. 12, 2014); *Brinker*, 53 Cal. 4th at 1051 (employer's liability for off-the-clock work "is contingent on proof [the employer] knew or should have known off-the-clock work was occurring"). Where plaintiffs allege an unofficial company policy that prohibited off-the-clock work, plaintiffs must provide "substantial evidence of a systematic company policy to pressure or require employees to work off-the-clock." *Brinker*, 53 Cal. 4th at 1051. Being clocked out "creates a presumption

[employees] are doing no work," which plaintiffs must rebut. *Id.*

Plaintiffs claim that First Students' unofficial policies led to time spent working off-the-clock without pay. ECF No. 77 at 23-28. Plaintiffs seek certification of an off-the-clock class as well as two subclasses—the bus clock-in/clock-out subclass and a split shift sub-class. *Id.* Defendants oppose certification of these classes because Plaintiffs have not demonstrated a violation capable of class-wide proof and have not demonstrated that First Student "knew or should have known off the clock work was occurring." ECF No. 84 at 28 (citing *Brinker*, 53 Cal. 4th at 1051). Plaintiffs contend that because First Student did not keep accurate records, the burden shifts to Defendants "to rebut a presumption that [they] failed to pay for all hours worked." ECF No. 94 at 13. They do not address Defendants' other arguments.

As explained above, a party alleging inaccurate or incomplete time records must still allege the existence of a uniform unofficial policy. But that is not what the evidence in the record shows. Instead, that evidence suggests that off-the-clock violations, if any, varied greatly among employees and from supervisor to supervisor. For example, one class member testified that under certain managers, time was incorrectly reported, but under others "everything was perfect." ECF No. 87-1 at 381-385. Another testified that she filled in her paperwork before clocking in, but she had never been instructed to do so by anyone else. *Id.* at 104, 107. And yet a third submitted a declaration that she "was frequently required to finish [her] mileage and post-trip inspection duties even though [she] was no longer 'on-the-clock;'" that she "[f]requently . . . had to write out an incident report on the Driver Bus Report when something happened with a student"; and that "the hours that [she] was recording on [her] Driver Bus Report were *never* reflected on [her] actual paychecks." ECF No. 77-3 at 677. In her deposition, however, she testified that, in fact, she was compensated for her post-trip duties and for completing Driver Bus Reports, and that the statements to the contrary in her declaration were false. ECF No. 87-1 at 513-14.

Because Plaintiffs fail to articulate a uniform, company-wide policy, the Court finds that individualized issues predominate as to this issue. *See Wilson*, 2021 WL 5818492, at *8; *Braun*, 2014 WL 9883831, at *14. The motion to certify the off-the-clock work class and subclasses is therefore denied.

### iv.     Expense Reimbursement Class

California Labor Code section 2802(a) requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." The duty to reimburse is triggered only if an employer "either know[s] or ha[s] reason to know that the employee has incurred an expense." *Wilson v. La Jolla Grp.*, 61 Cal. App. 5th 897, 919 (2021) (affirming denial of class certification for reimbursement claims where plaintiff failed to demonstrate that the employer "had any policy or practice requiring [employees] to incur expenses" or that the employer knew or should have known of expenditures incurred); *see also Dugan v. Ashley Furniture Indus., Inc.*, No. CV 16-1125-PA (FFMx), 2016 WL 9173459, at *4-5 (C.D. Cal. Nov. 29, 2016) (denying certification of cell phone reimbursement claim because the question of whether using a personal cell phone, rather than a company-provided phone was necessary, required individualized inquiries regarding each call).

Plaintiffs allege that they and the expense reimbursement class regularly used personal cell phones and personal vehicles for work purposes and were never reimbursed. ECF No. 77 at 21. According to Plaintiffs, the common questions that drive this litigation are (1) "whether First Student knew or should have known that its drivers were incurring business expenses and owes them for it"; and (2) "whether a given expense . . . is 'necessary.'" ECF No. 94 at 16. To support these claims, Plaintiffs provide declarations from class members who state that they were not reimbursed for expenses related to use of personal cell phones and personal vehicles for work purposes. ECF No. 77-3.

Plaintiffs have not demonstrated that the questions of necessity or knowledge can be answered with common evidence. As evidence of the existence of an unofficial policy, they offer five declarations from class members, only three of whom suggest that Defendants were aware that employees were incurring unreimbursed business expenses. ECF No. 77-3 at 622, 636, 649. The remainder of Plaintiffs' class member declarants do not mention the issue, raising a doubt as to the existence of a uniform, unofficial policy. Moreover, Plaintiffs offer no way of determining when, or to what extent, class members incurred unreimbursed business expenses. Instead,

Plaintiffs merely assert that liability "can be determined based on a survey and/or other reliable methods." ECF No. 94 at 16.  But they offer no such survey or other "reliable method," and the Court finds that liability would need to be determined on a class-member-by-class-member basis. *See Dilts v. Penske Logistics, LLC*, No. 08-cv-318-CAB (BLM), 2014 WL 866954, at *7 (S.D. Cal. Feb. 19, 2014) (decertifying a class after finding that the "determination of whether class members were wrongfully required to buy tools . . . involves too many individualized questions for class-wide resolution.  For instance, who purchased tools, did they inform Penske, and did they seek reimbursement? Were the tools the employees bought to supplement tools provided by Penske in fact *necessary* for installation[?]"); *see also Chavez v. Lumber Liquidators*, No. CV-09-4812 SC, 2012 WL 1004850, at *10 (N.D. Cal. Mar. 26, 2012) ("[T]o assess the merits of Plaintiffs' reimbursement claim, the Court would need to scrutinize each class member's claimed expenses.  Specifically, the Court would need to make individualized factual determinations concerning: (1) whether the claimed expenses were 'necessary' and incurred in direct consequence of the discharge of the employee's duties; (2) whether the employee actually sought reimbursement from LLI for the expenses; and (3) whether LLI reimbursed the employee for the expense.").

The Court therefore denies class certification of an expense reimbursement class.

### C. Trial Plan

In twelve lines of argument at the conclusion of their opposition, Defendants argue that class certification should be denied because Plaintiffs have failed to provide the Court with a manageable trial plan. ECF No. 84 at 31.  They contend that "[a] court should not certify a class unless it has before it a trial plan that ensures manageability of the action and protects due process rights." *Id.*  But "[n]othing in Rule 23 requires Plaintiff[s] to submit a formal trial plan along with [their] motion for class certification." *Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 365 (N.D. Cal. 2010); *see also In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 580 (C.D. Cal. 2014) ("[T]he Ninth Circuit has held that '[n]othing in the Advisory Committee Notes [to Rule 23] suggests grafting a requirement for a trial plan onto the rule.'" (quoting *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005)).

Defendants' reliance on *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) is unavailing. In *Zinser*, the plaintiff sought to certify "a nationwide class for which the law of forty-eight states potentially applie[d]." *Id.* The Ninth Circuit affirmed the district court's decision to decline certification after concluding that "there was no manageable trial plan adequate to deal with individualized issues and variances in state law." *Id.* at 1190. By contrast, no multi-state manageability issue is implicated here because only California law applies. *See Stickles v. Atria Senior Living, Inc.*, No. C 20-9220 WHA, 2022 WL 718563, at *1 (N.D. Cal. March 10, 2022) (distinguishing *Zinser* on this basis).

The Court rejects Defendants' argument that a trial plan is required as a basis for certification in this case.

### D.  First Transit, Inc.

In their opposition, Defendants submitted correspondence between counsel in which Plaintiffs' counsel agreed to dismiss Defendant First Transit, Inc. ECF No. 84 at 7 n.1; ECF No. 87-1 at 330. Plaintiffs do not respond to this point in their reply brief. Either the parties should submit a stipulation, or Defendants should file a motion, if First Transit, Inc. is not a proper party to this case.

## CONCLUSION

Because Plaintiffs have failed to demonstrate predominance, the Court denies Plaintiffs' motion for class certification.[7] The Court sets a further case management conference for October 11, 2022 at 2:00 p.m. An updated joint case management statement is due October 4, 2022

**IT IS SO ORDERED.**

Dated: August 23, 2022

JON S. TIGAR
United States District Judge

---

[7] In light of this conclusion, the Court need not address the questions of typicality or adequacy.

17