Shaun Setareh (SBN 204514)
  shaun@setarehlaw.com
William M. Pao (SBN 219846)
  william@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
BARBARA GALVAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BARBARA GALVAN and CYNTHIA PROVENCIO, on behalf of themselves, all others similarly situated, <br><br>        *Plaintiffs*, <br><br>       vs. <br><br> FIRST STUDENT MANAGEMENT, LLC, a Delaware limited liability company; FIRST STUDENT, INC., a Delaware corporation; FIRSTGROUP AMERICA, INC., a Delaware corporation; FIRST TRANSIT, INC., a Delaware corporation; and DOES 1 through 50, inclusive, <br><br>       *Defendants*. | Case No. 4:18-CV-7378-JST <br><br> Assigned For All Purposes to the Honorable Jon S. Tigar, Courtroom 6 <br><br> **NOTICE OF MOTION AND FIRST MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT INCLUDING PRELIMINARY APPROVAL OF ATTORNEYS FEES AND COSTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Date**:       February 15, 2024 <br> **Time**:       2:00 p.m. <br> **Courtroom**:   6 |

Mark R. Thierman, Cal SB# 72913
Joshua D. Buck, Cal SB# 258325
Leah L. Jones, Cal SB# 276488
Joshua R. Hendrickson, Cal SB# 282180
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
Tel: (775) 284-1500
Email: mark@thiermanbuck.com
Email: josh@thiermanbuck.com
Email: leah@thiermanbuck.com
Email: joshh@thiermanbuck.com

Ryan F. Stephan (pro hac vice)
James B. Zouras (pro hac vice)
Teresa M. Becvar (pro hac vice)
STEPHAS ZOURAS, LLP
100 North Riverside Plaza, Suite 2150
Chicago, IL 60606
Tel: (312) 233-1550
Email: rstephan@stephanzouras.com
Email: jzouras@stephanzouras.com
Email: tbecvar@stephanzouras.com

David J. Cohen (pro hac vice)
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA 19106
Tel: (215) 873-4836
Email: dcohen@stephanzouras.com

Attorneys for Plaintiffs
GERMAINE SCOTT and SPYNSIR TUCKER

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

Plaintiffs Barbara Galvan, Germaine Scott, and Spynsir Tucker ("Plaintiffs") hereby gives Notice that on Thursday, February 15, 2024 at 2:00 p.m., in Courtroom 6 of the 2nd Floor of the Ronald V. Dellums Federal Building & United States Courthouse located at 1301 Clay Street, Oakland, California 94612 in the District Court for the Northern District of California, Plaintiffs will move for the first time, and hereby does move the Court to enter the concurrently filed [Proposed] Order seeking the following:

(1) Granting preliminary approval of the proposed class action settlement, including the amount of the settlement; the amount and methodology pertaining to distributions to the class; the procedure for giving notice to class members; the procedure for allowing class members to opt out of the settlement; and the amounts allocated to incentive payments, attorney fees and costs, and administrative costs;

(2) Provisionally certifying the proposed Class for settlement purposes only;

(3) Approving the form and content of the class notice and directing the distribution of the class notice;

(4) Appointing Joseph Lavi and Vincent Granberry from Lavi & Ebrahimian, LLP; Shaun Setareh and William Pao from Setareh Law Group; Mark Thierman and Josh Buck from Thierman Buck LLP; and Ryan Stephan and James Zouras from Stephan Zouras, LLP as Class Counsel and named Plaintiffs Barbara Galvan, Germaine Scott, and Spynsir Tucker as Class Representatives;

(5) Appointing ILYM Group, Inc. as settlement administrator; and

(6) Setting a Final Approval Hearing and hearing on Class Counsel's Attorney Fees and Cost award and Class Representative's Enhancement Payment for a date on or after June 13, 2024[1] or as soon thereafter as is acceptable and convenient to the Court.

---

[1] A June 13, 2024 hearing date or later accommodates the following: (1) "45 calendars days" (i.e., from preliminary approval for the Settlement Administrator to mail Notice Packets to the putative class (Granberry Dec. Ex. 1, § 80); (2) 60 calendar days from mailing for putative class members to submit objections/requests for exclusion (*id.,* Ex. 1, § 60); (3) 35 days' notice for the motion for final approval of class action settlement (N.D. Cal. Civ. R. 7-2(a)).

As part of Plaintiffs' motion, Plaintiffs specifically seek preliminary approval of the requested Attorney Fees and Costs pursuant to Federal Rules of Civil Procedure Rule 23(h) and 54(d)(2) to provide the Class Members notice of the basis of Plaintiffs' request for attorneys' fees and costs. *Mercury Interactive Corp. Sec. Litig. V. Mercury Interactive Corp.,* 618 F.3d 988, 993-995 (9th Cir. 2010).

Plaintiffs' motion is based on this Notice, the stipulation for settlement, memorandum of points and authorities; and Declarations of Vincent C. Granberry, Shaun Setareh, Josh Buck, and David Cohen concurrently filed herewith; all other pleadings and papers on file in this action; and any other argument or other matter that may be considered by the Court.

Dated: December 7, 2023                    Respectfully submitted,
                                           **LAVI & EBRAHIMIAN, LLP**
                                           **SETAREH LAW GROUP**
                                           **THIERMAN BUCK LLP**
                                           **STEPHAN ZOURAS, LLP**


                                           By: */s/ Vincent C. Granberry*
                                               Joseph Lavi, Esq.
                                               Vincent C. Granberry, Esq.
                                               Shaun Setareh, Esq.
                                               Josh Buck, Esq.
                                               David Cohen, Esq.
                                               Attorneys for PLAINTIFFS
                                               BARBARA GALVAN, GERMAINE SCOTT,
                                               SPYNSIR TUCKER, and Other Class Members

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 2

      A.   The Galvan Action ........................................................................................... 2

      B.   The Provencio Action ....................................................................................... 2

      C.   The Consolidated Action ................................................................................... 3

      D.   The Scott/Tucker Action ................................................................................... 3

      E.   The Mediation, Exchange of Formal Discovery and Directly Relevant Informal
           Discovery, and Legal Analysis By Parties' Counsel ........................................ 4

      F.   Overview of the Proposed Settlement ............................................................... 5

           1. Proposed Form of Notice to the Class ...................................................... 11

           2. ILYM Group, Inc. as Settlement Administrator ....................................... 13

III.  THE    SETTLEMENT    MERITS    PRELIMINARY    APPROVAL    AND
      CONDITIONAL CLASS CERTIFICATION ........................................................... 13

      A.   Plaintiffs' Claims Merit Class Action Treatment ............................................ 14

           1. Numerosity ................................................................................................ 15

           2. Commonality .............................................................................................. 15

           3. Typicality ................................................................................................... 17

           4. Adequate Representation ............................................................................ 17

           5. Predominance of Common Questions ........................................................ 18

           6. Superiority .................................................................................................. 19

           7. Ascertainability .......................................................................................... 20

      B.   The Settlement Merits Preliminary Approval .................................................. 20

           1. The    Settlement    Was    the    Product    of    Informed    Non-Collusive
              Negotiations .............................................................................................. 21

           2. The Settlement Has No Obvious Deficiencies ........................................... 21

           3. The Settlement Does Not Grant Preferential Treatment to Plaintiffs or
              Segments of the Class ................................................................................ 21

           4. The Settlement Falls Within the Range of Possible Approval ................... 23

           5. Attorneys' Fees Above the Ninth Circuit's Benchmark of Twenty-Five
              Percent of the Common Fund Are Justified ............................................... 25

6. Plaintiffs' Fee Request is Reasonable Under the Lodestar Method ................... 25

C.    The Notice to the Class Is Sufficient............................................................. 26

IV.    CONCLUSION........................................................................................................ 26

# <u>TABLE OF AUTHORITIES</u>

**Pages**

## Cases

*Amchem Products Inc. v. Woodward,*
    521 U.S. 591 (1997). ................................................................................ 20

*Baldwin & Flynn v. Nat'l Safety Associates,*
    149 F.R.D. 598 (N.D. Cal. 1993) ............................................................. 15

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015) ....................................................... 22, 25

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975)........................................................ 15, 16, 19

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ................................................................................ 25

*Busby v. JRHBW Realty, Inc.,*
    513 F.3d 1314 (11th Cir. 2008) ............................................................... 15

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,*
    917 F.2d 1171 (9th Cir. 1990) ................................................................. 17

*Churchill Village, L.L.C. v. General Electric,*
    361 F.3d 566 (9th Cir. 2004) ................................................................... 26

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ................................................................. 14

*In re Computer Memories Sec. Litig.,*
    111 F.R.D. 675 (N.D. Cal. 1986) ............................................................. 15

*Dent v. ITC Serv. Grp., Inc.,*
    No. 12-cv-00009-JCM-VCF, 2013 U.S. Dist LEXIS 139363 (D. Nev. Sept. 27,
    2013)........................................................................................................ 23

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ................................................................................ 15

*Glass v. UBS Fin. Servs., Inc.,*
    No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .......... 22, 25

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9thCir. 1998)........................................................ 14, 15, 17, 19

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ................................................................... 17

*Harris v. Vector Mktg. Corp.,*
    No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, (N.D. Cal. Apr. 29, 2011).............. 23

*Hendricks v. Starkist Co.,*
    No. 13-cv-00729-HSG, 2016 U.S. Dist. LEXIS 134872 (N.D. Cal. Sept. 29, 2016) .......... 21

*Lewis v. Gross,*
  663 F.Supp. 1164 (E.D. N.Y. 1986)...................................................................... 15

*Leyva v. Medline Indus.,*
  716 F.3d 510 (9th Cir. 2013).............................................................................. 19

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
  244 F.3d 1152 (9th Cir. 2001)............................................................................ 17

*Lusby v. Gamestop Inc.,*
  297 F.R.D. 400 (N.D. Cal. Mar. 25, 2013) ......................................................... 24

*Ma v. Covidian Holding, Inc.,*
  No. SACV 12-02161-DOC (RNBx), 2014 U.S. Dist. LEXIS 13296 (C.D. Cal. Jan.
  31, 2014)........................................................................................................... 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 13

*O'Sullivan v. AMN Servs., Inc.,*
  No. 12-cv-2125-JCS, ECF No. 92 (N.D. Cal. Feb. 7, 2014)................................ 24

*In re Omnivision Techs., Inc.,*
  559 F.Supp.2d 1036 (N.D. Cal. Dec. 6, 2007) ................................................... 25

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) .......................................................................................... 19

*Ross v. U.S. Bank Nat. Ass'n,*
  No. C 07-02951 SI, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) ... 22

*Rutti v. Lojack Corp.,*
  No. SACV 06-350 DOC (JCx), 2012 U.S. Dist. LEXIS 107677 (C.D. Cal. July 31,
  2012).................................................................................................................. 22

*Satchell v. Fed. Exp. Corp.,*
  No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ......... 21

*Schwartz v. Dallas Cowboys Football Club, Ltd.,*
  157 F. Supp. 2d 561, 570 n 12 (E.D. Pa. 2001) ................................................. 14

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003)............................................................................. 22

*In re Tableware Antitrust Litig.,*
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................. 14

*Valentino v. Carter-Wallace,*
  97 F.3d 1227 (9th Cir. 1996).............................................................................. 19

*Van Bronkhorst v. Safeco Corp.,*
  529 F.2d 943 (9th Cir. 1976).............................................................................. 14

*Van Vranken v. Atl. Richfield Co.,*
  901 F. Supp. 294 (N.D. Cal. 1995) .................................................................... 22

*Vietnam Veterans of Am. v. C.I.A.*,
    288 F.R.D. 192 (N.D. Cal. 2012 .................................................................................... 20

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...................................................................................... 25

*Wang v. Chinese Daily News*,
    231 F.R.D. 602 (C.D. Cal. 2005) .................................................................................. 15

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1188 (9th Cir. 2001) ...................................................................................... 18

**Statutes and Rules**

Fed. R. Civ. P.
    Rule 23(a)(4) ................................................................................................................ 17
    Rule 23(b)(3) ................................................................................................. 15, 19, 20
    Rule 23(e) ..................................................................................................................... 13

**Other**

Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2012)
    § 10:571 ........................................................................................................................ 15

Manual for Complex Litigation (Third) (1995)
    § 30.41 .......................................................................................................................... 13

Manual for Complex Litigation (Fourth) (2004)
    §§ 21.632-21.635.......................................................................................................... 13

Newberg on Class Action (4th ed. 2002)
    § 11.22 .......................................................................................................................... 14
    § 11.41 .................................................................................................................... 14, 21

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Barbara Galvan, Germaine Scott, and Spynsir Tucker ("Plaintiffs") respectfully submit this memorandum in support of their motion for preliminary approval of the proposed no claims and non-reversion class action settlement (the "Settlement Agreement") with Defendant FIRST STUDENT MANAGEMENT, LLC, a Delaware limited liability company; FIRST STUDENT, INC., a Delaware corporation; FIRSTGROUP AMERICA, INC., a Delaware corporation; and FIRST MANAGEMENT SERVICES, LLC, a Delaware limited liability corporation (hereinafter collectively referred to as "Defendants"). Plaintiffs seek entry of a proposed order granting preliminary approval of the Settlement Agreement which: (1) preliminarily approves the proposed settlement of the class action; (2) approves the form and method for providing notice and directs that notice be given to Class Members; (3) preliminarily certifies the class for settlement purposes only; and (4) schedules a final approval hearing date.

As consideration for this no claims made and non-reversionary settlement, Defendant shall pay $3,500,000 (the "Maximum Settlement Amount") to fund a settlement to be distributed to current employees and former employees. (Granberry Dec. Ex. 1, § 40.) The Maximum Settlement Amount is inclusive of payments to those Class Members who do not exclude themselves, the approved attorney fees and costs, approved Class Representative Enhancement Payments, and the Settlement Administration Costs. (*Id.*)

The Net Settlement Amount is the portion of the Maximum Settlement Amount remaining after deductions of the Court-approved Attorneys' Fees of up to $1,166,666.66 in fees as well as additional costs requested by Class Counsel (currently estimated at $60,672.29), the Court-approved PAGA Settlement Amount (requested at $250,000), Court-approved Settlement Administration Costs not to exceed $61,900, and the Court-approved class representative enhancement payments of no more than $20,000 total. (Granberry Dec. Ex. 1, § 42.) If all requested amounts are approved, the amount to be distributed to the Class Members is estimated to be $1,940,761.05, of which 90% shall be allocated to members of the Driver Class and 10% shall be allocated to members of the Non-Driver Class. (Granberry Dec. Ex. 1, § 76.c.) Each Class Member shall be paid a proportional share

1  based on the number of workweeks worked by each Class Member during the respective Class

2  Period (either Driver or Non-Driver). (*Id.*)

3      Defendants estimate there are 7,619 Driver Class Members and 1,150 Non-Driver Class

4  Members. Accordingly, Plaintiffs estimate that Driver Class Members will receive an average

5  payment of $229.25 ($1,940,761.05 X 0.9 ÷ 7,619 = $229.25), and Non-Driver Class Members will

6  receive an average payment of $168.76 ($1,940,761.05 X 0.1 ÷ 1,150 = $168.76). As set forth

7  below, Plaintiffs believe this is a fair result for the Class Members. (Granberry Dec. ¶ 26.)

8  **II.    BACKGROUND**

9      **A.    The Galvan Action**

10      On November 6, 2018, Plaintiff Barbara Galvan filed a civil Complaint against Defendants

11  First Student Management, LLC, FirstGroup America, Inc., and First Transit, Inc., in the San Mateo

12  County Superior Court entitled Barbara Galvan, on behalf of herself, all others similarly situated, v.

13  First Student Management, LLC, et al., Case Number 18CIV06012, alleging the following claims:

14  (1) failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay hourly

15  wages, (4) failure to provide accurate written wage statements, (5) failure to timely pay all final

16  wages, and (6) unfair competition. (Granberry Dec. ¶ 3.)

17      On December 8, 2018, Defendants First Student Management, LLC, FirstGroup America,

18  Inc., and First Transit, Inc. removed the action to the United States District Court, Northern District

19  of California as Case Number 18-CV-07378-JST ("the "Galvan Action"). (Granberry Dec. ¶ 4.)

20      On June 14, 2019, Plaintiff Barbara Galvan filed a First Amended Complaint against

21  Defendants First Student Management, LLC, FirstGroup America, Inc., and First Transit, Inc., in

22  the United States District Court, Northern District of California, alleging the following claims: (1)

23  failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay hourly wages,

24  (4) failure to provide accurate written wage statements, (5) failure to timely pay all final wages, (6)

25  unfair competition, and (7) civil penalties (i.e., PAGA). (Granberry Dec. ¶ 5.)

26      **B.    The Provencio Action**

27      On June 3, 2019, Plaintiff Cynthia Provencio filed a civil Complaint against Defendants First

28  Student, Inc. and First Student Management, LLC in the Alameda County Superior Court entitled

1   Cynthia Provincio, on behalf of herself and others similarly situated, v. First Student, Inc., et al.,

2   Case Number RG19021391, alleging the following claims: (1) failure to pay wages for all time

3   worked at minimum wage, (2) failure to pay proper overtime wages for daily overtime hours

4   worked and all hours worked, (3) failure to indemnify for employment-related losses/expenditures,

5   (4) failure to provide complete and accurate wage statements, (5) failure to timely pay all earned

6   wages and final paychecks due at time of separation of employment, and (6) unfair business

7   practices. (Granberry Dec. ¶ 6.)

8        On July 30, 2019, Defendants First Student, Inc. and First Student Management, LLC

9   removed the action to the United States District Court, Northern District of California as Case

10  Number 19-CV-04152-SK ("the "Provencio Action"). (Granberry Dec. ¶ 7.)

11       On August 8, 2019, Plaintiff Cynthia Provencio filed a civil Complaint against Defendants

12  First Student, Inc. and First Student Management, LLC in the Los Angeles County Superior Court

13  entitled Cynthia Provencio v. First Student, Inc., et al., Case Number 19STCV28179, alleging

14  single cause of action for: Civil Penalties Pursuant to the Private Attorneys General Act of 2004

15  ("PAGA") (the "Provencio PAGA Action"). (Granberry Dec. ¶ 8.)

16       **C.      The Consolidated Action**

17       On April 22, 2020, Plaintiffs Barbara Galvan and Cynthia Provencio filed a Consolidated

18  Complaint against Defendants First Student Management, LLC, First Student, Inc., FirstGroup

19  America, Inc., and First Transit, Inc. in the United States District Court, Northern District of

20  California under Case No. 18-CV-07378-JST ("the "Consolidated Action"), combining the claims

21  from the Galvan Action, Provencio Action, and Provencio PAGA Action, and seeking class

22  certification. Subsequently, Plaintiff Provencio dismissed without prejudice the separate Provencio

23  Action on April 23, 2020, and dismissed without prejudice the separate Provencio PAGA Action on

24  April 24, 2020. (Granberry Dec. ¶ 9.)

25       On August 23, 2022, the Court denied class certification on the Consolidated Action.

26  (Granberry Dec. ¶ 10.)

27       **D.      The Scott/Tucker Action**

28       On July 28, 2022, Plaintiffs Germaine Scott and Spynsir Tucker filed a civil Complaint

1    against First Student, Inc. in San Francisco County Superior Court, assigned Case Number CGC-

2    22-600961, alleging: (1) rest period violations under the California Labor Code, (2) failure to pay

3    minimum wages in violation of the California Labor Code, (3) failure to provide accurate wage

4    statements in violation of the California Labor Code, (4) failure to timely pay all wages due and

5    owing in violation of the California Labor Code, (5) unfair business practices, and (6) Private

6    Attorneys General Act violations. (Granberry Dec. ¶ 11.)

7         On September 6, 2022, Defendant First Student, Inc. removed this action to the United States

8    District Court for the Northern District of California where it was assigned Case Number 22-cv-

9    5057 ("the Scott/Tucker Action"). (Granberry Dec. ¶ 12.)

10        **E.**      **The Mediation, Exchange of Formal Discovery and Directly Relevant Informal**

11              **Discovery, and Legal Analysis By Parties' Counsel**

12         On August 10, 2023, the Parties participated in a mediation with Todd Smith, Esq., a highly

13    respected mediator of wage and hour class and PAGA actions.  At the mediation, the Parties agreed

14    to the principal terms of a settlement of the Consolidated Action as well as the Scott/Tucker Action,

15    which was memorialized in a Confidential Memorandum of Understanding ("MOU") signed by the

16    Parties on August 10, 2023. (Granberry Dec. ¶ 13.)

17         As stipulated in the MOU, Plaintiffs filed a First Amended Consolidated Complaint

18    ("FACC") in the Consolidated Action on October 13, 2023 addressing the following:

19         a.     Plaintiff Cynthia Provencio was dismissed as a Plaintiff from the action.

20         b.     Plaintiff Germaine Scott was added as a Named Plaintiff to the FACC.

21         c.     Plaintiffs dismissed Defendant First Transit, Inc. from the action without prejudice.

22         d.     Plaintiffs identified Defendant First Management Services, LLC as a defendant to

23    the action.

24         e.     Plaintiffs redefined the class to include all non-exempt employees of First Student,

25    Inc. and/or First Management Services, LLC and added non-drivers to the PAGA claim.

26         f.     Plaintiffs added allegations of failure to properly calculate the regular rate of pay for

27    purposes of overtime, meal and rest period premiums, and California sick pay.

28         (Granberry Dec. ¶ 14.)

1    Defendants deny all material allegations set forth in the FACC and have asserted numerous

2    affirmative and other defenses.  Notwithstanding, in the interest of avoiding further litigation, the

3    Parties desire to fully and finally settle all actual or potential claims by the Class Members.

4    Plaintiffs' counsel in the FACC diligently investigated the proposed Class Members' claims

5    against Defendants, including all applicable defenses and the applicable law.  The investigation

6    included, inter alia, the exchange of information pursuant to informal discovery methods, review of

7    numerous corporate policies and practices, and review and analysis of voluminous time and payroll

8    records.

9    The settlement discussions before, during and after the mediation were conducted at arm's

10   length and the settlement is the result of an informed and detailed analysis of Defendants' alleged

11   potential liability in relation to the costs and risks associated with continued litigation.

12   Based on the data and documents produced pursuant to informal discovery, as well as

13   Plaintiffs' counsels' own independent investigation and evaluation, and the mediator's efforts,

14   Plaintiffs' counsel believes that the settlement with Defendants for the consideration and on the

15   terms set forth in the proposed Settlement Agreement is fair, reasonable, and adequate and is in the

16   best interest of the Class Members in light of all known facts and circumstances, including the risk

17   of significant delay and uncertainty associated with litigation, various defenses asserted by

18   Defendants, the sharply contested legal and factual issues involved, and numerous appellate issues.

19         **F.      Overview of the Proposed Settlement**

20   Subject to Court approval, the Parties have agreed to settle the lawsuit based on the terms

21   and conditions set forth in the proposed Settlement Agreement, a copy of which is attached to the

22   Declaration of Vincent Granberry as Exhibit "1".

23   A summary of the key terms of the Settlement Agreement is as follows:

24         1.   "Consolidated Action" means *Barbara Galvan and Cynthia Provencio, on behalf of*

25         *themselves, all others similarly situated, v. First Student Management, LLC, et al.*,

26         United States District Court, Northern District of California as Case No. 4:18-CV-7378-

27         JST, including the original, the First Amended Complaint, Consolidated Complaint, and

28         the First Amended Consolidated Complaint. (Granberry Dec. Ex. 1, § 23.)

2.  "Driver Class" means all individuals employed by First Student, Inc. and/or First Management Services, LLC as non-exempt Drivers in California during the Driver Class Period. (*Id.* Ex. 1, § 32.)

3.  "Non-Driver Class" means all individuals employed by First Student, Inc. and/or First Management Services, LLC in non-exempt positions other than as Driver in California during the Non-Driver Class Period. (*Id.* Ex. 1, § 43.)

4.  "Maximum Settlement Amount" means the maximum settlement amount of Three Million Five Hundred Thousand Dollars ($3,500,000.00) to be paid by Defendants in full satisfaction of all claims arising from the Consolidated Action, which includes all Individual Settlement Payments to Participating Class Members, the Class and PAGA Representative Enhancement Payments, Settlement Administration Costs to the Settlement Administrator, the PAGA Settlement Amount, the Attorneys' Fees and Costs to Class Counsel, and which specifically excludes the employer's share of payroll taxes for the portion of the Net Settlement Amount allocated to wages.  This Maximum Settlement Amount has been agreed to by Plaintiffs and Defendants based on the aggregation of the agreed-upon settlement value of the claims alleged.  In no event will Defendants be liable for more than the Maximum Settlement Amount except as otherwise explicitly set forth herein.  The Maximum Settlement Amount is non-reversionary. (*Id.* Ex. 1, § 40.)

5.  "Attorneys' Fees and Costs" means attorneys' fees agreed upon by the Parties and approved by the Court for Class Counsel's litigation and resolution of this Action and the PAGA Action, and all costs incurred and to be incurred by Class Counsel in the Consolidated Action, including, but not limited to, costs associated with documenting the Settlement, securing the Court's approval of the Settlement, responding to any objections to the settlement and appeals arising therefrom, administering the Settlement, obtaining entry of a Judgment terminating this Action, and expenses for any experts. Class Counsel will request attorneys' fees not in excess of one-third (1/3) of the Maximum Settlement Amount, or up to One Million One Hundred Sixty-Six Thousand

1    Six Hundred Sixty Six Dollars and Sixty Six Cents ($1,166,666.66).  The Attorneys'

2    Fees and Costs will also mean and include the additional reimbursement of Class

3    Counsel's actual costs associated with Class Counsel's litigation and settlement of the

4    Consolidated Action per Class Counsel's billing statements, subject to the Court's

5    approval.  Defendants do not oppose Class Counsel's request for fees and reimbursement

6    of costs. (*Id.* Ex. 1, § 24.)

7    6.  "Class and PAGA Representative Enhancement Payments" or "Class Representative

8    Enhancement Payments" means the amounts to be paid to the Class and PAGA

9    Representatives in recognition of their efforts and work in prosecuting the Action on

10   behalf of Class Members, negotiating the Settlement, and providing a general release of

11   all claims.  Defendants do not oppose Class Counsel's request to pay the Class and

12   PAGA Representatives from the Maximum Settlement Amount up to Ten Thousand

13   Dollars ($10,000.00) for Barbara Galvan, up to Five Thousand Dollars ($5,000.00) for

14   Germaine Scott, and up to Five Thousand Dollars ($5,000.00) for Spynsir  Tucker, for

15   their services on behalf of the Class, subject to Court's approval of this Settlement

16   Agreement and subject to the exhaustion of any appeals.  Should the Court reduce the

17   Class Representative Enhancement Payments, any such reduction shall revert to the Net

18   Settlement Amount distributed to Participating Class Members. (*Id.* Ex. 1, § 29.)

19   7.  "Settlement Administration Costs" means the costs payable from the Maximum

20   Settlement Amount to the Settlement Administrator for administering this Settlement,

21   including, but not limited to, printing, distributing, and tracking documents for this

22   Settlement, calculating estimated amounts per Class Member, tax reporting, distributing

23   the appropriate settlement amounts, and providing necessary reports and declarations,

24   and other duties and responsibilities set forth herein to process this Settlement, and as

25   requested by the Parties.  The Settlement Administration Costs will be paid from the

26   Maximum Settlement Amount, including, if necessary, any such costs in excess of the

27   amount represented by the Settlement Administrator as being the maximum costs

28   necessary to administer the settlement.  The Settlement Administration Costs are

currently estimated to be Sixty One Thousand Nine Hundred Dollars ($61,900).  To the extent actual Settlement Administrations Costs are greater than $61,900, such excess amount will be deducted from the Maximum Settlement Amount. (*Id*. Ex. 1, § 62.)

8.   "Net Settlement Amount" means the portion of the Maximum Settlement Amount remaining after deduction of the approved Class and PAGA Representative Enhancement Payments, Settlement Administration Costs, PAGA Settlement Amount, and Attorneys' Fees and Costs.  The Net Settlement Amount will be distributed to Participating Class Members. (*Id*. Ex. 1, § 42.) At present, the Net Settlement Amount is estimated to be:

| | |
|---|---:|
| Maximum Settlement Amount | $3,500,000 |
| (Attorneys' Fees) | ($1,166,666.66) |
| (Attorneys' Costs) | ($60,672.29 |
| (PAGA Settlement Amount) | ($250,000) |
| (Enhancement Payments) | ($20,000) |
| (Settlement Administration Costs) | ($61,900) |
| Distributable Amount | $1,940,761.05 |

9.   <u>Individual Settlement Payment Calculations</u>.  Individual Settlement Payments will be calculated and apportioned from the Net Settlement Amount based on the Workweeks a Participating Class Member worked during the applicable Class Period.  (*Id*. Ex. 1, § 76.) Specific calculations of Individual Settlement Payments will be made as follows:

   a.   The Settlement Administrator will calculate the number of Workweeks per Participating Class Member during the applicable Class Period (Driver or Non-Driver) based on records in Defendants' possession, custody or control. Defendants' Workweek data will be presumed to be correct, unless a particular Class Member proves otherwise to the Settlement Administrator by credible written evidence.  All Workweek disputes will be resolved and decided by the Settlement Administrator in consultation with Class Counsel and counsel for Defendants.  The Settlement Administrator's decision on all

1    Workweek disputes will be final and non-appealable. (*Id*. Ex. 1, § 76.a.)

2    b.    The Settlement Administrator will calculate the total number of Workweeks

3    for each individual Class Member ("Individual Workweeks").  The

4    Settlement Administrator will calculate the total number of Workweeks for

5    all Class Members during the applicable Class Period ("Class Workweeks").

6    (*Id*. Ex. 1, § 76.b.)

7    c.    To determine each Class Member's "Individual Settlement Payment" the

8    Settlement Administrator will use the following formula: Individual

9    Settlement Payment = (Net Settlement Amount ÷ Class Workweeks) x

10   Individual Workweeks for each individual Participating Class Member,

11   provided that 90% of the Net Settlement Amount shall be allocated to Driver

12   Class Members and 10% of the Net Settlement Amount shall be allocated to

13   Non-Driver Class Members. (*Id*. Ex. 1, § 76.c.)

14   d.    The portion of the PAGA Settlement Amount payable to PAGA Group

15   Members will be distributed to PAGA Group Members based on the number

16   of Pay Periods each of them worked during the applicable PAGA Period

17   ("Individual PAGA pay periods") compared to the total number of Pay

18   Periods worked by all PAGA Group Members during the applicable PAGA

19   Period ("Total PAGA Pay Periods").  To determine each PAGA Group

20   Member's Individual PAGA Settlement Payment, the Settlement

21   Administrator will use the following formula: Individual PAGA Settlement

22   Payment = PAGA Settlement Amount payable to PAGA Group Members ÷

23   Total PAGA Pay Periods) x Individual PAGA Pay Periods, provided that

24   90% of the PAGA Settlement Amount payable to PAGA Group Members

25   shall be allocated to Driver PAGA Group Members and 10% shall be

26   allocated to Non-Driver PAGA Group Members. (*Id*. Ex. 1, § 76.d.)

27   ///

28   ///

10. <u>Uncashed Settlement Checks</u>.  Any checks issued by the Settlement Administrator to Participating Class Members will expire 180 calendar days from the date the check was issued.  Upon the expiration of 180 calendar days, uncashed settlement award checks will not be re-issued, except for good cause and as mutually agreed upon by the Parties in writing.  All uncashed checks will be sent to the State of California Unclaimed Property Fund in the name of the employee. (*Id*. Ex. 1, § 88.)

11. <u>Release of Claims by Class Members</u>. Upon the Effective Date, Plaintiffs and all Participating Class Members will be deemed to have fully, finally and forever released, settled, compromised, relinquished, and discharged with respect to all of the Released Parties and any and all Released Claims.  The Settlement Class and each member of the Class who has not submitted a valid Request for Exclusion, fully releases and discharges the Released Parties for the Released Claims for any period during the applicable Class Period. (*Id*. Ex. 1, § 96.)

> "Released Claims" means any and all claims, debts, rights, demands, obligations or liabilities of every nature and description, for damages, premiums, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief against the Released Parties arising during the applicable Class Period and alleged in the operative Complaint, or which could have been alleged based on the facts pled in the operative Complaint, including without limitation claims relating to: (i) the alleged failure to pay for all hours worked, (ii) the alleged failure to correctly pay overtime wages, (iii) the alleged failure to provide meal periods or pay meal period premiums at the regular rate of pay, (iv) the alleged failure to provide rest periods or pay rest period premiums at the regular rate of pay, (v) the alleged failure to provide complete and accurate wage statements, and (vi) the alleged failure to timely pay wages during employment, (vii) the alleged failure timely pay all wages owed to employees who quit or are terminated, (vii) the alleged failure to reimburse for business expenses, (ix) the

alleged failure to maintain accurate time and payroll records, (x) the alleged

failure to pay minimum wages, and (xi) claims for interest and any other claims

and penalties premised on the aforementioned allegations.  "Released Claims"

includes all types of relief available for the above-referenced claims, including

any claims for damages, restitution, losses, premiums, penalties, fines, lines,

attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory

relief, or liquidated damages, whether under federal law, California law or any

state law or common law, including, without limitations, as violations of the

California Labor Code, the Wages Orders, applicable regulations, and any and

all claims under the Fair Labor Standards Act.

(*Id*. Ex. 1, § 56.) In addition, Defendants required Plaintiffs to enter into a broader

release of all claims they have against Defendants including a California Civil Code

1542 general release. (*See id.* Ex. 1, § 98.)

### 1.  Proposed Form Of Notice To The Class

Notice of Settlement: Within thirty (30) calendar days of Preliminary Approval, Defendants

will provide the Class List to the Settlement Administrator. (*Id.* Ex. 1, § 79.) Within forty-five (45)

calendar days of Preliminary Approval, the Settlement Administrator will mail a Notice Packet to

all Class Members via regular First-Class U.S. Mail, using the most current, known mailing

addresses identified in the Class List.  (*Id.* Ex. 1, § 80.) Prior to mailing, the Settlement

Administrator will perform a search based on the National Change of Address Database for

information to update and correct for any known or identifiable address changes.  Any Notice

Packets returned to the Settlement Administrator as non-deliverable on or before the Response

Deadline will be sent promptly via regular First-Class U.S. Mail to the forwarding address affixed

thereto and the Settlement Administrator will indicate the date of such re-mailing on the Notice

Packet.  If no forwarding address is provided, the Settlement Administrator will promptly attempt to

determine the correct address using a skip-trace, or other search using the name, address and/or

Social Security number of the Class Member involved, and will then perform a single re-mailing.

Those Class Members who receive a re-mailed Notice Packet, whether by skip-trace or by request,

will have the later of (a) an additional fifteen (15) calendar days or (b) the Response Deadline to fax or postmark a Request for Exclusion, or file and serve an objection to the Settlement. (*Id.* Ex. 1, § 81.)

The proposed Notice Packet is intended to effectively reach the Class based on their contact information provided to Defendants during their employment and following appropriate updating of that information through review of the United States Postal Service National Change of Address List for all Class Members to determine the most up to date addresses. The proposed Notice Packet will be sent in plain language in English (with Spanish Translation) to explain the class settlement process and will provide the Class Members with information about the settlement including: the maximum amount of settlement; the maximum amount of requested attorneys' fees and costs; the maximum amount of requested enhancement awards; the amount to pay administration costs; the claims that will be released if the employee does not opt out; how the employee may opt out; how the employee may object; how the employee may participate; and the date and time of the Final Approval Hearing. (*See id.* Ex. 1, Ex. A.)

Request for Exclusion Procedures.  Any Class Member wishing to opt-out from the class portion of the Settlement Agreement must sign and postmark a written Request for Exclusion to the Settlement Administrator within the Response Deadline.  The date of the postmark on the return mailing envelope will be the exclusive means to determine whether a Request for Exclusion has been timely submitted.  All Requests for Exclusion will be submitted to the Settlement Administrator, who will certify jointly to Class Counsel and Defendants' Counsel the Requests for Exclusion that were timely submitted.  Any Class Member who submits a Request for Exclusion shall be prohibited from objecting to the Settlement Agreement.  The Parties agree that there is no right for any Class Member to opt out or otherwise exclude himself or herself from the Settlement of the PAGA claims in the Consolidated Action. (*Id.* Ex. 1, § 84.)

Objection Procedures.  To object to the Settlement Agreement, a Class Member shall file a valid Notice of Objection with the Settlement Administrator on or before the Response Deadline. The Settlement Administrator shall serve all objections as received on Class Counsel and Defendants' Counsel, as well as file all such objections with the Court.  The Notice of Objection

1   shall be signed by the Class Member and contain all information required by this Settlement

2   Agreement.  The postmark date of the filing and service will be deemed the exclusive means for

3   determining that the Notice of Objection is timely.  At no time will any of the Parties or their

4   counsel seek to solicit or otherwise encourage Class Members to object to the Settlement

5   Agreement or appeal from the Order and Judgment.  Class Counsel will not represent any Class

6   Members with respect to any such objections to this Settlement.  The Parties agree that there is no

7   right for any Class Member to object to the Settlement of the PAGA claims in the Consolidated

8   Action. (*Id.* Ex. 1, § 86.)

9              **2.  ILYM Group, Inc. as Settlement Administrator**

10         ILYM Group, Inc. is an experienced and qualified class action claims administrator who

11  provides class action administrative services. ILYM Group, Inc. is a provider of notice and

12  settlement class action administration services since 2010 and has been appointed as a third-party

13  administrator by all major courts in California and a number of United States District Courts.

14  (Granberry Dec. ¶ 34)

15  **III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL AND CONDITIONAL**

16  **CLASS CERTIFICATION**

17         A class action may not be dismissed, compromised, or settled without the approval of the

18  Court. Fed. R. Civ. P. 23(e). Federal Rules of Civil Procedure, Rule 23(e) sets forth a "two-step

19  process in which the Court first determines whether a proposed class action settlement deserves

20  preliminary approval and then, after notice is given to class members, whether final approval is

21  warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal.

22  2004) (citing Manual for Complex Litigation (Third) § 30.41 (1995). The settlement approval

23  procedure includes the following steps: (1) preliminary fairness review of the proposed Settlement;

24  (2) dissemination of mailed and/or published notice of the Settlement and formal fairness review to

25  all affected class members; and (3) a formal fairness hearing, or final settlement approval hearing,

26  at which class members may be heard and evidence and argument concerning the fairness,

27  adequacy, and reasonableness of the Settlement may be presented. Manual for Complex Litigation

28  (Fourth) §§ 21.632-21.635 (2004).

The primary concern of judicial supervision at this stage of the settlement process is to ensure "(1) the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval."

*In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.,* 157 F. Supp. 2d 561, 570 n 12 (E.D. Pa. 2001)); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) ("*Hanlon*"); *see* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Action* § 11.22 (4th ed. 2002).

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See* 4 *Newberg* § 11.41, at pp. 87-88 (and cases cited therein); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976). These concerns apply in this action where the alleged practice affected thousands of employees. To make this fairness determination, courts must give "proper deference to the private consensual decision of the parties" since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *See Hanlon,* 150 F.3d at 1027. Indeed, because "a settlement is the offspring of compromise," the question upon preliminary approval "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* When examining settlements, a presumption of fairness exists where: (1) settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and court to act intelligently and (3) counsel is experienced in similar litigation. 4 Newberg § 11.41.

## A.    PLAINTIFFS' CLAIMS MERIT CLASS ACTION TREATMENT

Class certification under Rule 23 requires a plaintiff to demonstrate the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. The plaintiff must also

establish that one of the bases for certification in Rule 23(b) is met. Here, the action was previously certified for litigation purposes under Rule 23(b)(3) which requires that plaintiff show questions of law or fact common to class members predominate over questions affecting individual class members and that the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(3). Plaintiff need only make a "prima facie showing" of the requirements under Rule 23. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008); *see* Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10:571 (The Rutter Group 2012). In determining the propriety of class certification, a court may not delve into the underlying merits of the claims. The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974). Accordingly, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack,* 524 F.2d 891, 901 n.17 (9th Cir. 1975). A court "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l Safety Associates,* 149 F.R.D. 598, 600 (N.D. Cal. 1993). Under these governing standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

### 1. Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable." A court may consider "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News,* 231 F.R.D. 602, 606 (C.D. Cal. 2005). "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross,* 663 F.Supp. 1164, 1169 (E.D. N.Y. 1986); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986). Numerosity is satisfied here because the proposed settlement class includes 8,419 potential members, and joinder of an estimated 8,419 individuals would be impracticable.

### 2. Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality requirement must be "construed permissively." *Hanlon,*

150 F.3d at 1019. Plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie*, 524 F.2d at 902.

Here, all class members share several common legal questions:

1. Whether Defendants maintained a policy or practice of failing to provide employees with their meal periods;

2. Whether Defendants maintained a policy or practice of failing to provide employees with their rest breaks;

3. Whether Defendants failed to pay premium wages to class members when they had not been provided with required meal periods and/or rest breaks;

4. Whether Defendants failed to pay minimum and/or overtime wages to class members for all time worked;

5. Whether Defendants failed to properly calculate the regular rate of pay;

6. Whether Defendants failed to reimburse class members for all necessary business expenses incurred during the discharge of their duties;

7. Whether Defendants failed to maintain accurate time and payroll records;

8. Whether Defendants failed to provide class members with accurate written wage statements as a result of providing them with written wage statements with inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked;

9. Whether Defendants applied policies or practices that result in late and/or incomplete final wage payments;

10. Whether Defendants are liable to class members for waiting time penalties under Labor Code section 203;

11. Whether class members are entitled to restitution of money or property that Defendants may have acquired from them through unfair competition;

Any factual variations among class members have no bearing on these common legal

1    questions. All class members share the common interest of determining the answer to these common

2    legal questions.

### 3.  Typicality

Rule 23(a)(3) requires the representative plaintiff have claims "typical of the claims . . . of the class." Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Hanlon*, 150 F.3d at 120. The named plaintiff need not be "identically situated" with all other class members. *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990). Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*

Here, Plaintiffs, like all other class members, were non-exempt hourly employees, employed in California during the class period who were subject to the same policies and procedures in question in the pending action. All class members and Plaintiffs seek the same relief under the Labor Code and Business Professions Code. This lawsuit is based on alleged conduct which is not unique to Plaintiffs, but on a course of conduct that is common to all class members.

### 4.  Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation turns on whether the named plaintiff and his counsel "have any conflicts of interest with other class members," and whether the named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs allege that there are no conflicts of interest between Plaintiffs and class members. Given the similarity of the claims asserted and remedies sought by class members in this case, it is hard to imagine how there could be any conflicts.

Nor are there any conflicts with Plaintiffs' counsel. Plaintiffs' counsel, who have substantial class action experience, can adequately represent the class. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)

1   (adequacy established by mere fact that counsel were experienced practitioners).

2   Plaintiffs' counsel is experienced in employment wage and hour and class action matters.

3   Lavi & Ebrahimian LLP is a well-regarded firm that handles exclusively employment matters (both

4   individual and class). (Granberry Dec. ¶¶27-33.) Lavi & Ebrahimian, LLP, has been approved as

5   class counsel in numerous actions. (*Id.*) Joseph Lavi has been selected as a Southern California Super

6   Lawyer in the area of Plaintiff's employment litigation from 2011-2021. (*Id.*) Vincent C. Granberry

7   has been selected as a Southern California Super Lawyer Rising Star in the area of Plaintiff's

8   employment litigation from 2016-2021 and was named a Super Lawyers Rising Star Up-And-Coming

9   100 in employment law in 2018, 2020, and 2021 and is also experienced in handling employment,

10  wage and hour and class action matters. (*Id.*) Setareh Law Group, Stephan Zouras LLP, and Thierman

11  Buck LLP are also well-regarded firms that have been named class counsel in numerous actions. (*See*

12  *generally* Declaration of Shaun Setareh, Declaration of David Cohen, Declaration of Joshua Buck).

13  Shaun Setareh has been practicing since 1999, David Cohen has been practicing since 1994, and

14  Joshua Buck has been practicing since 2008. (*Id.*) Along with Joseph Lavi and Vincent Granberry,

15  Class Counsel have decades of combined experience in employment and wage and hour matters and

16  are fully qualified to evaluate the class claims and to evaluate settlement versus trial on a fully

17  informed basis, and to evaluate the viability of the defenses.

18  ### 5. Predominance of Common Questions

19  The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant

20  adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d

21  1152, 1162 (9th Cir. 2001). Central to predominance is "the notion that the adjudication of common

22  issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1188,

23  1189 (9th Cir. 2001).

24  Here, Plaintiffs contend that whether Defendants had policies or practices of (1) failing to

25  provide employees with their meal periods; (2) failing to provide employees with their rest breaks;

26  (3) failing to pay premium wages to class members when they had not been provided with required

27  meal periods and/or rest breaks; (4) failing to pay minimum and/or overtime wages to class members

28  for all time worked; (5) failing to properly calculate the regular rate of pay; (6) failing to reimburse

class members for all necessary business expenses incurred during the discharge of their duties; (7) failing to maintain accurate time and payroll records; (8) failing to provide class members with accurate written wage statements as a result of providing them with written wage statements with inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked; and (9) policies or practices that resulted in late and/or incomplete final wage payments, is the central issue that predominates over any individual issues. Considerations of judicial economy obviously favor litigating these common issues once in a class action instead of hundreds of times in separate lawsuits. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification. *Leyva v. Medline Indus.,* 716 F.3d 510, 513-514 (9th Cir. 2013); *Blackie,* 524 F.2d at 905.

### 6. Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. *Culinary/Bartenders Trust Fund,* 244 F.3d at 1163; s*ee also Valentino v. Carter-Wallace,* 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists"). For example, in *Culinary/Bartender Trust Fund*, the Ninth Circuit found superiority was met where class members could recover, at most, $1,330 in damages. Similarly, this case involves multiple claims for relatively small sums and a class action clearly serves as the only method that would "'permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" *Culinary/Bartenders Trust Fun,* 244 F.3d at 1163 (quoting *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985)).

Consideration of the factors listed in Rule 23(b)(3)--(A) interest of members of the class in individually controlling the prosecution/defense of separate actions; (B) extent and nature of litigation already commenced by or against members of the class; (C) desirability/undesirability of

concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action—only bolster this conclusion. However, when a court reviews a class action settlement, the fourth factor does not apply. *Amchem Products Inc. v. Woodward,* 521 U.S. 591, 620 (1997). Here, Plaintiffs assert that the remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification.

First, class members have no particular interest in individually controlling the prosecution of separate actions. Any class member who wants to pursue an individual action and seek compensation in excess of their estimated settlement payment can opt-out of the Settlement.

Second, there will be no competing litigation regarding the statutory violations at issue as the Parties are unaware of any pending related actions.

Finally, it is desirable to concentrate the issues in this forum because the parties reside in California and the class is comprised of employees who worked for Defendants in California. The conclusion to Plaintiffs is inescapable that a class action provides the most efficient mechanism for resolving all the claims of the class members in this case.

### 7. Ascertainability

While not enumerated in Rule 23, "courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Vietnam Veterans of Am. v. C.I.A.,* 288 F.R.D. 192, 211 (N.D. Cal. 2012). A class definition is sufficient if it is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a class member. *Id.* at 211. Here, the class is ascertainable as it is limited to Defendants' non-exempt employees who worked in California during the Driver and Non-Driver Class Periods and can be identified through Defendants' employment records which include the class members' names and last known contact information which will be used by the administrator to send notice to the class.

### B.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

As noted above, when examining settlements, a presumption of fairness exists where: (1) settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and court to act intelligently and (3) counsel is experienced in similar litigation. 4

1    Newberg § 11.41.

2             **1.    The Settlement Was The Product Of Informed Non-Collusive Negotiations**

3             As discussed above, the proposed settlement was the product of arm's length, non-collusive

4    negotiations, following initial formal written discovery, significant motion practice (including

5    Plaintiffs' Motions for Class Certification and Defendants' removal and decertification efforts),

6    Plaintiffs' depositions, the deposition of Defendants' persons most qualified, and additional

7    informal exchange of information. (Granberry Dec. ¶¶3-14; *see also Satchell v. Fed. Exp. Corp.*,

8    2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in

9    the settlement process confirms that the settlement is non-collusive.").) Plaintiffs were well-

10   informed about the strengths and weaknesses of their respective cases after the depositions of

11   Plaintiffs and Defendants' person most qualified, reviewing Defendants' written policies and

12   relevant data, and conducting a damages analysis based on data produced by Defendants.

13   (Granberry Dec. ¶¶17-26.)

14            Plaintiffs and the putative class have been represented by experienced counsel, who

15   demanded the most advantageous terms for the class throughout the litigation. In addition to the

16   total settlement amount, counsel insisted that the settlement payment be non-reversionary (i.e.,

17   maximizing payments to class members and aligning the interests of all parties to a successful

18   settlement administration).

19             **2.    The Settlement Has No Obvious Deficiencies**

20            The settlement will pay an average payment of approximately \$230.52 (\$1,940,761.05 ÷

21   8,419 = \$230.52) per employee. Other than the named Plaintiffs, the class members are releasing

22   only their claims for violations of the Labor Code and Business Professions Code regarding the

23   above alleged violations. *See Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 U.S. Dist.

24   LEXIS 134872, at *4, 8, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) (approving class settlement

25   and scope of the release was limited to "the factual predicate in the operative complaint").

26             **3.    The Settlement Does Not Grant Preferential Treatment To Plaintiffs Or**

27                    **Segments Of The Class**

28            The Settlement will treat class members fairly according to the formula set forth above

1  which provides payment pro rata based on the number of workweeks each Class Member worked

2  for Defendants during the Driver and Non-Driver Class Periods. (Granberry Dec. Ex. 1, § 76.)

3      The Class Representatives' modest Enhancement Payments of $20,000 total are justified

4  under the case law and the facts of this case. *See, e.g., Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th

5  Cir. 2003) (recognizing service awards to named plaintiffs in class actions are permissible and do

6  not render a settlement unfair or unreasonable); *Glass v. UBS Fin. Servs.*, Inc., No. C-06-4068

7  MMC, 2007 U.S. Dist. LEXIS 8476, at *50-52 (N.D. Cal. Jan. 26, 2007) (approving payments of

8  $25,000 to each named plaintiff); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 268 (N.D.

9  Cal. 2015) (awarding named plaintiff in wage and hour class action $10,000 as a service award, and

10  an additional $5,000 award solely for the general release that the named plaintiff executed as part of

11  the settlement agreement); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal.

12  1995) (awarding $50,000 to a lead plaintiff). In *Van Vranken*, the court articulated the following

13  relevant factors to assess the appropriateness of a Class Representative's enhancement: 1) the risk to

14  the class representative in commencing suit, both financial and otherwise; 2) the notoriety and

15  personal difficulties encountered by the class representatives; 3) the amount of time and effort spent

16  by the class representatives; 4) the duration of the litigation, and; 5) the personal benefit (or lack

17  thereof) enjoyed by the class representatives as a result of the litigation. *Id*. at 299. These factors

18  support the need for service payments to the class representative.

19      Plaintiffs experienced risk to their reputation, future job prospects, and likely an

20  employment reference as a result of bringing this case and placing themselves in the public record

21  as individuals willing to sue their employer when they believe their rights are violated. (Declaration

22  of Barbara Galvan  ¶ 11; Declaration of Germaine Scott ¶ 5; Declaration of Spynsir Tucker ¶ 5; *see

23  also Rutti v. Lojack Corp.*, No. SACV 06-350 DOC (JCx), 2012 U.S. Dist. LEXIS 107677, at *14-

24  15 (C.D. Cal. July 31, 2012) (citing research, noting the "strong disincentives for employees to

25  participate in a class action against their current or former employer"); *Ross v. U.S. Bank Nat.

26  Ass'n*, No. C 07-02951 SI, 2010 U.S. Dist. LEXIS 107857, at *6-7 (N.D. Cal. Sept. 29, 2010)

27  (service awards based on "willingness to serve as representatives despite the potential stigma that

28  might attach to them in the banking industry from taking on those roles").) Plaintiffs have also

estimated they have spent approximately 90 hours in total (50 hours for Barbara Galvan, 20 hours each for Germaine Scott and Spynsir Tucker) on this case including, inter alia, searching for an attorney, communicating with their attorneys, responding to Defendants' requests for production of documents, submitting to their depositions, and reviewing and signing the settlement. (Galvan Dec. ¶ 9; Scott Dec. ¶ 4; Tucker Dec. ¶ 4.) The personal benefit Plaintiffs would receive if they were limited to their settlement payments as part of the class would not compensate them for the aforementioned personal costs and risks they have assumed in order to benefit the class. Finally, Plaintiffs are executing a much broader waiver of claims than the other class members, i.e., a general release, which warrants additional compensation. (Granberry Dec. Ex. 1, § 98; *see Dent v. ITC Serv. Grp., Inc.,* No. 12-cv-00009-JCM-VCF, 2013 U.S. Dist LEXIS 139363, at *11 (D. Nev. Sept. 27, 2013) (awarding service payment in part because wage-hour plaintiff signed a general release).)

### 4.    The Settlement Falls Within the Range of Possible Approval

The primary inquiry at this stage is whether Plaintiffs' expected recovery absent settlement balances appropriately against the value of the settlement offer. *See Harris v.  Vector Mktg. Corp.*, 2011 WL 1627973, at *9. Courts "preview the factors that ultimately inform final approval:" (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the experience and views of counsel; (7) the presence of a government participant (not applicable here); and (8) the reaction of class members. *Id*

The Maximum Settlement Amount is fair compared to the estimated full relief for Plaintiffs and the class members' claims when considering Defendants' defenses and the risks involved as set forth in more detail in Plaintiffs' Counsel's declaration. (*See* Granberry Dec. ¶¶17-26.) As explained in further detail in Counsel's appended declaration, the estimated value of the claims, according to a comprehensive analysis, is arguably **$24,742,678.75**. (Granberry Dec. ¶ 24.) The $3,500,000 settlement is arguably 14% of the exposure in this case, a fair result when considering Defendants' defenses warranting this Court's approval. Compare this result to *Ma v. Covidian Holding, Inc.*, No. SACV 12-02161-DOC (RNBx), 2014 U.S. Dist. LEXIS 13296, at *12 (C.D. Cal.

Jan. 31, 2014), in which a settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'" *Id.* at *5; *see also O'Sullivan v. AMN Servs., Inc.*, No. 12-cv-2125-JCS, ECF No. 92 (N.D. Cal. Feb. 7, 2014) (approving gross settlement of $3 million for 4,246 class members who filed claims ($478.12 net average payment) where total exposure before penalties and interest was estimated at $108 million, for a recovery of less than 3% of full relief).

In comparison, settlements that have been disapproved are dramatically different from this one. For example, in *Lusby v. Gamestop Inc.*, 297 F.R.D. 400 (N.D. Cal. Mar. 25, 2013), the rejected settlement would have been $750,000 for 13,872 people – paying a *de minimis* $0.26/shift, after fees/costs, etc. were deducted.

With respect to the factors that will apply at the Final Approval stage:

*First*, as discussed above, the amount offered under the proposed settlement provides a fair average per person net recovery for a wage-and-hour class action.

*Second*, Plaintiffs believe their claims on the merits are strong, but risks not certifying a class or having a class decertified. Plaintiffs also face the risk of an unfavorable finding at trial however should the case have progressed beyond contested class certification without settling.

*Third*, the complexity and the expense of a Class trial would be considerable and would almost certainly result in appeals by one or both sides, including possible interlocutory appeals at various stages of the proceedings.

*Fourth*, the risk of failing to maintain class status through trial is substantial.

*Fifth*, the Parties have engaged in formal and informal discovery, including exchanging all information and documents necessary to assess the value of each class member's claims, such as information regarding Defendants' policies and class members' time records and wage statements, etc.

*Sixth*, the firms representing Plaintiffs are experienced in wage and hour class actions, having had wage and hour settlements approved repeatedly by federal and state courts in California. (*See* Granberry Dec., ¶¶ 27-33; Setareh Dec., Cohen Dec., Buck Dec. (detailing counsels' experience)). In the view of undersigned counsel, this Settlement is in the best interests of the Class in light of the risk and delay of a class action trial and appeal, as compared with the immediate and

1    substantial recovery in the Settlement.

2         *Seventh*, there is no governmental entity involved.

3         *Eighth*, the reaction of the class members to the settlement will be better gauged at the final

4    fairness hearing and the close of the opt out deadline.

### 5.   Attorneys' Fees Above the Ninth Circuit's Benchmark of Twenty-Five Percent of the Common Fund Are Justified

7         Before final approval, Plaintiffs' counsel intends to seek, and Defendants will not oppose,

8    final approval of a request for attorneys' fees of thirty-three and one third percent (i.e.,

9    $1,166,666.66) of the $3,500,000 Settlement. Plaintiffs request preliminary approval of the

10   presumptively reasonable thirty-three and one third percent amount. *See, e.g., Bellinghausen v.*

11   *Tractor Supply Co.* 306 F.R.D. 245, 265 (N.D. Cal. Mar. 20, 2015) (25% is presumptively

12   reasonable benchmark amount).

13        The United States Supreme Court "has recognized consistently that a litigant or a lawyer who

14   recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole."

15   *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth Circuit's benchmark for

16   presumptively reasonable fees in this context is twenty-five percent of the Maximum Settlement

17   Amount, and courts that depart from the benchmark should indicate their reasons for doing so.

18   *Glass v. USB Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *44-45 (N.D. Cal.

19   Jan. 26, 2007).

20        Here, Plaintiffs' Counsels' request for thirty-three and one third percent of the common fund,

21   which only slightly above the benchmark fee award of twenty-five percent, is justified by the fair

22   result and the non-reversionary nature of the settlement. Courts consider not only the results

23   achieved, but also the risk of litigation, the contingent nature of the fee and the financial burden

24   carried by the Plaintiff. *See, e.g., In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1046 (N.D.

25   Cal. Dec. 6, 2007).

### 6.   Plaintiffs' Fee Request is Reasonable Under the Lodestar Method

27        In a common fund settlement "[t]he lodestar method is merely a cross-check on the

28   reasonableness of a percentage figure." (Vizcaino v. Microsoft Corp. (9th Cir. 2002) 290 F.3d 1043,

1    1050, n.5.) In this case, consideration of Class Counsels' lodestar as a cross-check to the percentage

2    figure also strongly supports the reasonableness of the requested fee award. The base amount is then

3    adjusted in light of various factors.

4         Here, Plaintiffs' Counsel has spent considerable time on the Action and will provide a detailed

5    lodestar analysis with the motion for final approval.

6    **C.    The Notice to the Class Is Sufficient.**

7         The proposed Notice Packet and proposed method of distribution are appropriate. *See* Fed. R.

8    Civ. P. 23(c)(2)(B); *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir.

9    2004). The proposed form of notice will be sent via first-class mail to the last known mailing

10   address of each class member and, prior to mailing the Notice Packet, an experienced Administrator

11   will consult the United States Postal Service's National Change of Address Database to review and

12   possibly update the class member's mailing address. (Granberry Dec. Ex. 1, §§ 80, 81.) The Notice

13   Packet (Granberry Dec. Ex. 1, Ex. A) will provide the details of the case and the proposed

14   settlement and the specific options available to class members, as described above. The Notice

15   Packet will provide class members with information from which they can make an informed

16   decision about whether to opt out, object, or take no further action and receive a payment from the

17   proposed settlement. (*Id.*) Thus, the proposed Notice Packet is adequate.

18   **IV.    CONCLUSION**

19        The proposed class action settlement is fair, adequate, and reasonable. It will result in fair

20   and immediate payment to Class Members; it is non-collusive; and it was achieved as the result of

21   informed, extensive, and arms' length negotiations conducted by counsel for respective parties who

22   are experienced in wage and hour class action litigation. For the foregoing reasons, the parties

23   respectfully request that the Court grant preliminary approval of the proposed Settlement, sign the

24   proposed Order, approve and authorize mailing of the proposed Class Notice, and set a date for a

25   final approval hearing.

26

27

28

1

Dated: December 7, 2023                    Respectfully submitted,

2                                          **LAVI & EBRAHIMIAN, LLP**
                                           **SETAREH LAW GROUP**

3                                          **THIERMAN BUCK LLP**
                                           **STEPHAN ZOURAS, LLP**

4

5                                          By: */s/ Vincent C. Granberry*
                                                   Joseph Lavi, Esq.

6                                                  Vincent C. Granberry, Esq.

7                                                  Shaun Setareh, Esq.
                                                   Josh Buck, Esq.

8                                                  David Cohen, Esq.
                                                   Attorneys for PLAINTIFFS

9                                                  BARBARA GALVAN, GERMAINE SCOTT,
                                                   SPYNSIR TUCKER, and Other Class Members

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28