Shaun Setareh (SBN 204514)
  shaun@setarehlaw.com
William M. Pao (SBN 219846)
  william@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
BARBARA GALVAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BARBARA GALVAN and CYNTHIA PROVENCIO, on behalf of themselves, all others similarly situated, <br><br>         *Plaintiffs*, <br><br>         vs. <br><br> FIRST STUDENT MANAGEMENT, LLC, a Delaware limited liability company; FIRST STUDENT, INC., a Delaware corporation; FIRSTGROUP AMERICA, INC., a Delaware corporation; FIRST TRANSIT, INC., a Delaware corporation; and DOES 1 through 50, inclusive, <br><br>         *Defendants*. | Case No. 4:18-CV-7378-JST <br><br> Assigned For All Purposes to the Honorable Jon S. Tigar, Courtroom 6 <br><br> **DECLARATION OF VINCENT C. GRANBERRY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT INCLUDING PRELIMINARY APPROVAL OF ATTORNEYS' FEES** <br><br> **Date**:       February 15, 2024 <br> **Time**:       2:00 p.m. <br> **Courtroom**:  6 |

Mark R. Thierman, Cal SB# 72913
Joshua D. Buck, Cal SB# 258325
Leah L. Jones, Cal SB# 276488
Joshua R. Hendrickson, Cal SB# 282180
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
Tel: (775) 284-1500
Email: mark@thiermanbuck.com
Email: josh@thiermanbuck.com
Email: leah@thiermanbuck.com
Email: joshh@thiermanbuck.com

Ryan F. Stephan (pro hac vice)
James B. Zouras (pro hac vice)
Teresa M. Becvar (pro hac vice)
STEPHAS ZOURAS, LLP
100 North Riverside Plaza, Suite 2150
Chicago, IL 60606
Tel: (312) 233-1550
Email: rstephan@stephanzouras.com
Email: jzouras@stephanzouras.com
Email: tbecvar@stephanzouras.com

David J. Cohen (pro hac vice)
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA 19106
Tel: (215) 873-4836
Email: dcohen@stephanzouras.com

Attorneys for Plaintiffs
GERMAINE SCOTT and SPYNSIR TUCKER

1

## __DECLARATION OF VINCENT GRANBERRY__

2   I, Vincent Granberry, declare:

3      1.      I am an attorney licensed to practice law in the state of California and have been

4   admitted to practice before this Court. I am an attorney with the law firm Lavi & Ebrahimian, LLP,

5   Counsel for Plaintiffs Barbara Galvan, Germaine Scott, and Spynsir Tucker ("Plaintiffs") in this

6   action, and I am an attorney assigned to work on this case. I have personal knowledge of the matters

7   stated herein and if called and sworn as a witness, I would and could competently testify under oath

8   thereto. I am a member in good standing of the bar of the State of California and all U.S. District

9   Courts in California.

10     2.      This Declaration is submitted in support of Plaintiffs' Motion for Preliminary

11  Approval of Class Action Settlement, including preliminary approval of attorneys' fees and costs.

12                          CLASS COUNSEL'S INVESTIGATION

13     3.      On November 6, 2018, Plaintiff Barbara Galvan filed a civil Complaint against

14  Defendants First Student Management, LLC, FirstGroup America, Inc., and First Transit, Inc., in

15  the San Mateo County Superior Court entitled Barbara Galvan, on behalf of herself, all others

16  similarly situated, v. First Student Management, LLC, et al., Case Number 18CIV06012, alleging

17  the following claims: (1) failure to provide meal periods, (2) failure to provide rest periods, (3)

18  failure to pay hourly wages, (4) failure to provide accurate written wage statements, (5) failure to

19  timely pay all final wages, and (6) unfair competition.

20     4.      On December 8, 2018, Defendants First Student Management, LLC, FirstGroup

21  America, Inc., and First Transit, Inc. removed the action to the United States District Court,

22  Northern District of California as Case Number 18-CV-07378-JST ("the "Galvan Action").

23     5.      On June 14, 2019, Plaintiff Barbara Galvan filed a First Amended Complaint against

24  Defendants First Student Management, LLC, FirstGroup America, Inc., and First Transit, Inc., in

25  the United States District Court, Northern District of California, alleging the following claims: (1)

26  failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay hourly wages,

27

28

1     (4) failure to provide accurate written wage statements, (5) failure to timely pay all final wages, (6)

2     unfair competition, and (7) civil penalties (i.e., PAGA).

3         6.     On June 3, 2019, Plaintiff Cynthia Provencio filed a civil Complaint against

4     Defendants First Student, Inc. and First Student Management, LLC in the Alameda County Superior

5     Court entitled Cynthia Provincio, on behalf of herself and others similarly situated, v. First Student,

6     Inc., et al., Case Number RG19021391, alleging the following claims: (1) failure to pay wages for

7     all time worked at minimum wage, (2) failure to pay proper overtime wages for daily overtime

8     hours worked and all hours worked, (3) failure to indemnify for employment-related

9     losses/expenditures, (4) failure to provide complete and accurate wage statements, (5) failure to

10     timely pay all earned wages and final paychecks due at time of separation of employment, and (6)

11     unfair business practices.

12         7.     On July 30, 2019, Defendants First Student, Inc. and First Student Management,

13     LLC removed the action to the United States District Court, Northern District of California as Case

14     Number 19-CV-04152-SK ("the "Provencio Action").

15         8.     On August 8, 2019, Plaintiff Cynthia Provencio filed a civil Complaint against

16     Defendants First Student, Inc. and First Student Management, LLC in the Los Angeles County

17     Superior Court entitled Cynthia Provencio v. First Student, Inc., et al., Case Number

18     19STCV28179, alleging single cause of action for: Civil Penalties Pursuant to the Private Attorneys

19     General Act of 2004 ("PAGA") (the "Provencio PAGA Action").

20         9.     On April 22, 2020, Plaintiffs Barbara Galvan and Cynthia Provencio filed a

21     Consolidated Complaint against Defendants First Student Management, LLC, First Student, Inc.,

22     FirstGroup America, Inc., and First Transit, Inc. in the United States District Court, Northern

23     District of California under Case No. 18-CV-07378-JST ("the "Consolidated Action"), combining

24     the claims from the Galvan Action, Provencio Action, and Provencio PAGA Action, and seeking

25     class certification. Subsequently, Plaintiff Provencio dismissed without prejudice the separate

26     Provencio Action on April 23, 2020, and dismissed without prejudice the separate Provencio PAGA

27     Action on April 24, 2020.

28

10.     On August 23, 2022, the Court denied class certification on the Consolidated Action.

11.     On July 28, 2022, Plaintiffs Germaine Scott and Spynsir Tucker filed a civil Complaint against First Student, Inc. in San Francisco County Superior Court, assigned Case Number CGC-22-600961, alleging: (1) rest period violations under the California Labor Code, (2) failure to pay minimum wages in violation of the California Labor Code, (3) failure to provide accurate wage statements in violation of the California Labor Code, (4) failure to timely pay all wages due and owing in violation of the California Labor Code, (5) unfair business practices, and (6) Private Attorneys General Act violations.

12.     On September 6, 2022, Defendant First Student, Inc. removed this action to the United States District Court for the Northern District of California where it was assigned Case Number 22-cv-5057 ("the Scott/Tucker Action").

13.     On August 10, 2023, the Parties participated in a mediation with Todd Smith, Esq., a highly respected mediator of wage and hour class and PAGA actions.  At the mediation, the Parties agreed to the principal terms of a settlement of the Consolidated Action as well as the Scott/Tucker Action, which was memorialized in a Confidential Memorandum of Understanding ("MOU") signed by the Parties on August 10, 2023.

14.     As stipulated in the MOU, Plaintiffs filed a First Amended Consolidated Complaint ("FACC") in the Consolidated Action on October 13, 2023 addressing the following:

     a.     Plaintiff Cynthia Provencio was dismissed as a Plaintiff from the action.

     b.     Plaintiff Germaine Scott was added as a Named Plaintiff to the FACC.

     c.     Plaintiffs dismissed Defendant First Transit, Inc. from the action without prejudice.

     d.     Plaintiffs identified Defendant First Management Services, LLC as a defendant to the action.

     e.     Plaintiffs redefined the class to include all non-exempt employees of First Student, Inc. and/or First Management Services, LLC and added non-drivers to the PAGA claim.

f.      Plaintiffs added allegations of failure to properly calculate the regular rate of pay for purposes of overtime, meal and rest period premiums, and California sick pay.

15.     Class Counsel represent that they have conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of the Class Members' claims against Defendants, including research of the applicable law and the potential defenses and review of relevant documents and data.

16.     Plaintiffs and Class Counsel concluded, after taking into account the sharply disputed factual and legal issues involved in this action, the risks attending further prosecution, and the benefits to be received pursuant to the compromise and settlement of the action as set forth in this agreement, that settlement on the terms set forth herein is in the best interest of the representative Plaintiff and the Class Members and is fair and reasonable.

THE SETTLEMENT IS FAIR, JUST AND REASONABLE

17.     To assist the Court with determining if the proposed settlement is within a range that is fair, reasonable, and adequate, Plaintiffs' counsel analyzed the value of pleaded class allegations. As stated above, the settlement was reached only after exchanging informal discovery prior to mediation and conducting legal analysis of both Plaintiffs' and Defendants' theories.

18.     <u>Failure to Provide Meal Periods</u>: Plaintiffs argued that Defendants failed to provide them and all other similarly situated individuals with meal periods. Plaintiffs contend that Defendants maintained a policy or practice of not providing Plaintiffs and other similarly situated individuals with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code section 512 and the applicable Wage Order. Plaintiffs estimate **$5,042,480** in meal period damages (1,008,496 Workweeks x 5 days per Workweek x 10% violation rate x $10 hourly rate of pay = $5,042,480).

19.     <u>Failure to Provide Rest Breaks</u>: Plaintiffs argued that Defendants failed to provide them and all other similarly situated individuals with rest breaks. Plaintiffs contend that Defendants maintained a policy or practice of not providing Plaintiffs and other similarly situated

individuals with uninterrupted, duty-free meal periods for at least ten (10) minutes for each four (4) hour work period, as required by Labor Code section 226.7 and Section 12 of the applicable Wage Order. Plaintiffs estimate **$5,042,480** in rest period damages (1,008,496 total Workweeks x 5 days per Workweek x 10% violation rate x $10 hourly rate of pay = $5,042,480).

20.   <u>Failure to Pay Hourly Wages</u>: Plaintiffs argued that Defendants failed to pay them and all other similarly situated individuals for all time that they were under the control of Defendants, including time to research and plan their routes, to perform "dry runs" of their routes, to retrieve their keys and start their buses, to perform "child checks" at the end of their routes, as well as other trainings and meetings. Based on Plaintiffs' expert's analysis, Plaintiffs estimate that approximately 200,000 hours were unpaid due to these violations across all Class Members, resulting in approximately **$2,000,000** in unpaid hourly wages (200,000 hours x $10 hourly rate of pay).

21.   <u>Failure to Indemnify</u>: Plaintiffs argued that Defendants failed to indemnify them and all other similarly situated individuals for necessary expenditures they incurred in the discharge of their duties. Plaintiffs contend that Defendants required Plaintiffs and other similarly situated individuals to use their personal cell phones and/or personal computers to research and plan their routes, to use their personal vehicles to make "dry runs" of routes, to purchase cleaning supplies at their own expense to clean their busses, and to use their personal cellphones during their routes, for example, to receive calls and messages regarding updates and changes to their daily routes and to contact clients at stops if they were not waiting for them upon arrival. Plaintiffs estimate **$1,175,718.75** in indemnification damages (940,575 Driver Workweeks / 4 Workweeks per month x $5 per month cost = $1,175,718.75).

22.   <u>Wage Statement Penalties</u>: Based on the above alleged violations, Plaintiffs argued that Defendants failed to provide employees with complete and accurate wage statements. Plaintiffs estimate a maximum of $33,676,000 in wage statement statutory penalties (8,419 total Class Members x $4,000 maximum penalty = $33,676,000). Defendants could argue that California law only requires that the wage statements reflect what was actually paid to the

employees and does not set forth a remedy derivative of what the Plaintiffs allege should have legally been paid. *See Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1334-1335 (2018) (in evaluating whether an injury occurred based on inaccurate wage statements, court found that employer was to provide wage statements reflecting the amount of actual wages paid during the pay period). Defendants could also argue that Plaintiffs could not demonstrate that the Defendants knowingly and intentionally provided employees with inaccurate wage statements. Based on this risk, a 90% reduction in total damages for this category is appropriate, resulting in maximum damages of approximately **$3,367,600**.

23.     <u>Failure to Timely Pay All Final Wages</u>: Based on the above alleged violations, Plaintiffs argued that Defendants failed to timely pay employees all wages earned and unpaid before termination or resignation. Plaintiffs estimate a maximum of $16,228,800 in damages due to these unpaid wages (6,762 total Class Members who are former employees x $10 hourly rate of pay x 8 hours per day x 30 days = $16,228,800). However, these damages are dependent on the above claims for unpaid meal and rest periods, unreimbursed expenses, and unpaid hourly wages. Thus, a discount of 50% is applied given the uncertainty of proving the precedent alleged claims, resulting in potential damages of **$8,114,400**.

24.     Defendants' estimated maximum potential exposure would be approximately **$24,742,678.75**.  The case settled for $3,500,000, which is approximately 14 percent of the potential damages. However, if Plaintiffs continued litigating this matter, Class Members potentially could have received nothing if the Court had agreed with Defendants' positions especially in light of the volatility of this area of law and the aforementioned defenses. As such, Plaintiffs' decision to settle this matter was in the best interest of the Class Members. The Maximum Payment is reasonable in light of the risks involved in this case—including the prospect of a potential adverse summary adjudication ruling, defenses to the case, the outcome at trial, potential appeal, and elements of willfulness and/or injury required for certain penalties.

25.     Plaintiffs' Counsel is convinced that the proposed settlement is in the best interest of the class based on the negotiations and a detailed knowledge of the issues present in this action. The

length and risks associated with a ruling on the cross motions for summary adjudication, potential decertification, trial, and other normal perils of litigation that may have impacted the value of the claims and were all weighed in reaching the proposed settlement. In addition, the affirmative defenses asserted by Defendants, the prospect of a potential adverse summary adjudication or decertification ruling and pending cases before the California Supreme Court, uncertainty and difficulties of complex litigation, the lengthy process of establishing specific damages and various possible delays and appeals, were also carefully considered by Class Counsel in agreeing to the proposed settlement. In light of the above, the proposed Settlement is well within the "ballpark" of reasonableness and should be granted preliminary approval.

26.     The settlement will pay Driver Class Members an average payment of approximately $229.25 ($1,940,761.05 X 0.9 ÷ 7,619 = $229.25) and Non-Driver Class Members an average payment of approximately $168.76 ($1,940,761.05 X 0.1 ÷ 1,150 = $168.76). Other substantial benefits also include that it distributes the amount to class members without the class members having to submit a claim form. In addition, funds for any settlement checks remaining uncashed after one hundred and eighty (180) days shall be sent to the California Unclaimed Property Fund administered by the California State Controller's Office in the name of the authorized Eligible Class Member. This is a fair and reasonable result which will not require employees, many of them current employees, to: risk retaliation, have to file their own action, have to find an attorney, have to participate in the action, and have to incur the risk of costs if the action is unsuccessful. The class members' release is also limited to the claims based on the facts asserted in the complaint. The class members will also be given notice of this settlement and an opportunity to object.

<u>EXPERIENCE OF COUNSEL</u>

27.     Lavi & Ebrahimian, LLP is experienced and qualified to evaluate the claims in this case, to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses.

28.     I, and the law firm of Lavi & Ebrahimian, LLP, have almost exclusively practiced in the area of labor and employment law.

29.     I graduated from Sandra Day O'Connor College of Law at Arizona State University in 2010. I have been in practice since 2011 and with the law firm of Lavi & Ebrahimian, LLP since April 2014, focusing almost exclusively in the area of employment law. Over the last nine years, my practice has focused nearly exclusively on wage and hour class action litigation with a handful of consumer class actions. Super Lawyers Magazine has selected me as a Southern California Rising Star in 2016 through 2023 and as a Super Lawyers Rising Star Up-And-Coming 100 in my field in 2018, 2020, 2021, 2022, and 2023.

30.     I am also familiar with the practice of Lead Counsel Joseph Lavi having worked as an associate with Lavi & Ebrahimian, LLP since April 2014, which has often included reviewing Mr. Lavi's declarations in support of motions for attorneys' fees and/or to seek appointment as Class Counsel. Mr. Lavi graduated from law school in 2000 and has handled numerous cases in all aspects of employment and labor law, including state and federal class actions, wrongful termination, discrimination, harassment and retaliation cases. Mr. Lavi has tried employment cases in State and Federal court, and has argued before various Courts of Appeals, on employment issues such as validity of Arbitration Agreements, Application of Res Judicata in class action cases, and other employment issues. Mr. Lavi has been a panelist and/or speaker for various Employment Law Continuing Legal Education Panels on issues of employment law trials, how to proceed and conduct trials, and proving and winning punitive damages. Mr. Lavi has been named a Southern California Super Lawyer in the area of Plaintiff's employment litigation for Class Actions from 2011-2024. Mr. Lavi has settled dozens of wage and hour class and representative actions and is currently Plaintiff's counsel in many other cases. Some of the class actions that Mr. Lavi has handled against employers on wage and hour issues and have been approved as class counsel include cases against the following: Kaiser Permanente which settled for $6,510,000.00; Hustler Casino which settled for $980,000.00; Chevron Stations Inc., which settled for $4,500,000.00; Commerce Casino which settled for $1,575,000.00; BP West Cost Products, which settled for $4,000,000.00; Kaiser Permanente which settled for $3,600,000.00, Fuddruckers (as lead counsel) which settled for $900,000.00; Movado Retail Group, Inc. (as lead counsel) which settled for

**DECLARATION OF VINCENT C. GRANBERRY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT INCLUDING PRELIMINARY APPROVAL OF ATTORNEYS' FEES; Case No. 4:18-CV-7378-JST**

8

1    $728,000.00, Chuck-E-Cheese's (as lead counsel) which settled for $1,900,000.00; Aero-Electric

2    Connector, Inc. (as lead counsel) which settled for $1,500,000.00; Clougherty Packing, LLC (as

3    lead counsel) which settled for $4,250,000.00; and Gruma Corporation (as lead counsel) which

4    Defendant's petition to the United States Supreme Court in the matter was denied and the matter

5    settled for $2,300,000.00. Mr. Lavi has been approved as class counsel by both Federal and

6    California Courts. Mr. Lavi and the other attorneys at Lavi & Ebrahimian who are available to

7    assist me in this case if needed are fully capable of adequately and fairly representing Plaintiffs and

8    the proposed class in this matter.

9        31.    Eve Howe, an associate of Lavi & Ebrahimian who performed work on this case,

10   graduated from Harvard Law School in 2021, and has been practicing law since May 2023. Ms.

11   Howe has been practicing exclusively employment law since joining Lavi & Ebrahimian in July

12   2023.

13       32.    Antonia McKee, an associate of Lavi & Ebrahimian who performed work on this

14   case, graduated from Southwestern Law School in 2021 and has been practicing since 2022. Ms.

15   McKee has been practicing exclusively employment law since joining Lavi & Ebrahimian in March

16   2023.

17       33.    Lavi & Ebrahimian, LLP, and has been appointed Class Counsel in over fifty

18   contested proceedings including the following:

19       a.    *Ischak v. Kaiser Foundation Hospitals, Inc.*, Los Angeles Superior Court

20   Case No. BC343535;

21       b.    *Santana v. El Pollo Loco, Inc.*, Los Angeles Superior Court Case No.

22   BC369846;

23       c.    *Edlin, et al. v. Fuddruckers, Inc.,* United States District Court, Central

24   District of California, Case No. CV-07-3678-ABC;

25       d.    *Chavez, et al. vs. CEC Entertainment, Inc. d/b/a Chukee-Cheeses,* Los

26   Angeles Superior Court Case No. BC380996;

27       e.    *Bustamante, et al. v. Teamone Employment Specialists*, Los Angeles Superior

28

1   Court Case No. BC383266;

2        f.     *Cervantes, et al. v. Kaiser Foundation Hospitals, Inc.*, Alameda Superior

3   Court Case No. RG 0265835;

4        g.     *Seng Savang v. Club One Casino*; Fresno Superior Court Case No.

5   05CECG02189;

6        h.     *Norman, et al. v. Movado Retail Group, Inc.,* United States District Court,

7   Central District of California, Case No. CV08-06691 SVW (PLA)

8        i.     *Shand v. G.A.L.A., Inc. dba Giorgio Armani*, Los Angeles Superior Court

9   Case No. BC342588;

10       g.     *Solis v. Plycraft Industries, Inc.*, Los Angeles Superior Court Case No.

11  BC374816;

12       h.     *Campos v. HWB Carwash, Inc.*, Los Angeles Superior Court Case No.

13  BC378990;

14       i.     *Acosta, et al. v. Texwood Industries*, United States District Court, Central

15  District of California, Case No. CV07-3237-DDP (PLAX);

16       h.     *Arevalo v. Gruma Corporation*, Los Angeles Superior Court Case No.

17  BC410322;

18       j.     *Burrola v. American Promotional Events*, Los Angeles Superior Court Case

19  No. BC412315;

20       k.     *Cortez v. Trader Distribution Services*, Los Angeles Superior Court Case No.

21  BC397208;

22       l.     *Cueva v. Allied Industries, Inc.*, Los Angeles Superior Court Case No.

23  BC399431;

24       m.     *Del Toro v. Petco Animal Supplies, Inc.*, San Diego Superior Court Case No.

25  37-2009-00103626-CU-OE-CTL;

26       n.     *Garcia v. Home Cooking, Inc.*, Los Angeles Superior Court Case No.

27  BC451148;

28

o.    *Alcantar v. Amerimax Building Products, Inc.*, United States District Court, Central District of California, Case No. CV 10-8916 DDP (CWx);

p.    *Arancivias v. Clougherty Packaging, LLC dba Farmer John*, Los Angeles Superior Court Case No. BC432406;

q.    *Barajas v. Menzies Aviation, Inc.,* United States District Court, Central District of California, Case No CV-10-02315-JEM;

r.    *Barrera v. BHFC Operating, LLC dba Bottega Louie*, Los Angeles Superior Court Case No. BC462603;

s.    *Camacho v. American Textile Maintenance Co.*,    Los Angeles Superior Court Case No. BC452570;

t.    *Cortes v. Monsanto Company*, Ventura Superior Court Case No. 56-2010-00366952-CU-OE-VTA;

u.    *Escobar v. Aero-Electric Connector, Inc.*, Los Angeles Superior Court Case No. BC421009;

v.    *Gomez v. Bacara Resort & Spa*, Santa Barbara Superior Court Case No. 1341987;

w.    *Gonzalez v. Ashley Furniture Industries, Inc.*, Los Angeles Superior Court Case No. BC425708

x.    *Gonzalez v. Burrtec Waste Industries, Inc.*, Los Angeles Superior Court Case No. BC436879;

y.    *Gutierrez v. Visterra Credit Union*, Riverside Superior Court Case No. RIC10020183;

z.    *Hernandez v. Kruse & Son, Inc.*, Los Angeles Superior Court Case No. BC411849;

aa.    *Lopez v. Tecno Industrial Engineering*, Los Angeles Superior Court Case No. BC411134;

bb.    *Lowanga v. Continental Currency Services, Inc*., Orange County Superior

1    Court Case No. 30-2011-0044011-CU-OE-CXC;

2              cc.    *Aguilar v. PLS Financial Services, Inc.,* United States District Court, Central

3    District of California, Case No. CV 10-0415 ODW (FMOx)

4              dd.    *Lozada v. Classic Party Rentals, Inc.*, Los Angeles Superior Court Case No.

5    BC443792;

6              ee.    *Madrid v. OPI Products, Inc.*, Los Angeles Superior Court Case No.

7    BC451489;

8              ff.    *Martinez v. J. Fletcher Creamer & Son, Inc.*, United States District Court

9    Case No. CV 10-0968-PSG-FMOX;

10             gg.    *Martinez v. Administaff Companies II, L.P.*, Los Angeles Superior Court Case

11   No. BC425799;

12             hh.    *Martinez v. Morgans Hotel Group Management, LLC*, Los Angeles Superior

13   Court Case No. BC446744;

14             jj.    *Sanchez v. La Brea Bakery, Inc.*, Los Angeles Superior Court Case No.

15   BC456420;

16             ii.    *Montenegro v. Ruggeri Marble and Granite, Inc.*, United States District

17   Court, Central District of California, Case No. CV-10-00711 JFW (PLAx);

18             kk.    *Reed v. 99 Cents Only Stores,* Los Angeles Superior Court Case No.

19   BC436793;

20             ll.    *Santos v. Noble Management Group-California, LLC*, United States District

21   Court, Central District of California, Case No. CV 10-2594 DSF (VBKx)

22             mm.    *Taylor v. U.S. Healthworks Holding Company, Inc.*, Orange County Superior

23   Court Case No. 30-2011-00473505;

24             nn.    *Valencia Diaz v. Gene Wheeler Farms, Inc.*, Los Angeles Superior Court

25   Case No. BC436235;

26             oo.    *Zad-Behtooie v. Valley Village,* Los Angeles Superior Court Case No.

27   BC451490;

28
**DECLARATION OF VINCENT C. GRANBERRY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT INCLUDING PRELIMINARY APPROVAL OF ATTORNEYS' FEES;**
**Case No. 4:18-CV-7378-JST**

12

1          pp.     *Bell v. Aidells Sausage Company, Inc.*, Alameda Superior Court Case No.

2  RG10523946;

3          qq.     *Negrete v. Cenveo, Inc.*, United States District Court, Central District of

4  California, Case No. CV 11-09543 DSF (MRWx);

5          rr.     *Bejar v. Exopack-Ontario, Inc.*, Orange County Superior Court Case No. 30-

6  2011-00518396-CU-OE-CXC;

7          ss.     *Aguilar v. PLS Financial Services, Inc.*, United States District Court, Central

8  District of California, Case No. CV 10-0415 ODW (FMOx);

9          tt.     *Sparks v. Larry Flynt dba Hustler Casino*, Los Angeles Superior Court Case

10  No. BC320172;

11          uu.     *Morris v. Chevron Stations, Inc.*, Los Angeles Superior Court Case No.

12  BC361380;

13          vv.     *Marino v. BP West Coast Products, LLC*, Los Angeles Superior Court Case

14  No. BC357987.

15  <u>EXPERIENCE OF ILYM GROUP, INC.</u>

16      34.    ILYM Group, Inc. is an experienced and qualified class action claims administrator

17  who provides class action administrative services. ILYM Group, Inc. is a provider of notice and

18  settlement class action administration services since 2010 and has been appointed as a third-party

19  administrator by all major courts in California and a number of United States District Courts.

20  <u>ATTORNEYS' COSTS</u>

21      35.    Our firm maintains all records regarding costs expended on each case. I have reviewed

22  the records of costs expended in this matter. According to our records, our firm has incurred

23  approximately $3,554.97 in costs in this matter so far in litigation. Based on discussions with co-

24  counsel, Setareh Law Group has incurred approximately $53,809.35 in costs, Stephan Zouras, LLP

25  has incurred approximately $1,682.52 in costs, and Thierman Buck LLP has incurred approximately

26  1,625.45 in costs, resulting in a total cost for all Plaintiffs' counsel of $60,672.29. All costs were

27  reasonably incurred in prosecution of the lawsuit and paid on a contingency basis. A large portion of

28

these costs were associated with filing and complex fees for this case, and the remainder was reasonably incurred in prosecution of the lawsuit.

EXHIBITS

36.     Attached as Exhibit 1 to this declaration is a true and correct copy of the settlement agreement and class notice.

37.     Attached as Exhibit 2 to this declaration is a true and correct copy of the costs for Lavi & Ebrahimian, LLP.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: December 7, 2023                          /s/ Vincent Granberry
                                                                Vincent Granberry

# "EXHIBIT 1"

Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
William M. Pao (SBN 219846)
william@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
BARBARA GALVAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BARBARA GALVAN and CYNTHIA PROVENCIO, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> vs. <br><br> FIRST STUDENT MANAGEMENT, LLC, a Delaware limited liability corporation; FIRST MANAGEMENT SERVICES, LLC, a Delaware limited liability corporation; FIRST STUDENT, INC., a Delaware corporation; FIRST TRANSIT, INC., a Delaware corporation; FIRSTGROUP AMERICA, INC., a Delaware corporation; and DOES 1 through 50, inclusive, <br><br> *Defendants*. | Case No. 4:18-CV-7378-JST <br><br> **JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE BETWEEN PLAINTIFFS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED AND AGGRIEVED, AND DEFENDANTS** <br><br> Complaint Filed:      November 6, 2018 |

Mark R. Thierman, Cal SB# 72913
Joshua D. Buck, Cal SB# 258325
Leah L. Jones, Cal SB# 276488
Joshua R. Hendrickson, Cal SB# 282180
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
Tel: (775) 284-1500
Email: mark@thiermanbuck.com
Email: josh@thiermanbuck.com
Email: leah@thiermanbuck.com
Email: joshh@thiermanbuck.com

Ryan F. Stephan (pro hac vice)
James B. Zouras (pro hac vice)
Teresa M. Becvar (pro hac vice)
STEPHAS ZOURAS, LLP
222 W. Adams Street, Suite 2020
Chicago, IL 60606
Tel: (312) 233-1550
Email: rstephan@stephanzouras.com
Email: jzouras@stephanzouras.com
Email: tbecvar@stephanzouras.com

David J. Cohen (pro hac vice)
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA 19106
Tel: (215) 873-4836
Email: dcohen@stephanzouras.com

Attorneys for Plaintiffs
GERMAINE SCOTT and SPYNSIR TUCKER


David J. Dow (SBN 179407)
ddow@littler.com
Jocelyn D. Hannah (SBN 224666)
jhannah@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 232-0441 Fax: (619) 232-4302

Attorneys for Defendants
FIRST STUDENT MANAGEMENT, LLC;
FIRST MANAGEMENT SERVICES, LLC;
FIRST STUDENT, INC.; AND
FIRSTGROUP AMERICA, INC.

## JOINT STIPULATION OF CLASS ACTION SETTLEMENT

This Joint Stipulation of Class Action Settlement ("Agreement" or "Settlement Agreement") is made and entered into by and between Plaintiffs Barbara Galvan, Germaine Scott, and Spynsir Tucker ("Plaintiffs" or "Class Representatives"), as individuals and on behalf of all others similarly situated and aggrieved, and Defendants First Student Management, LLC; First Management Services, LLC; First Student, Inc.; and FirstGroup America, Inc. ("Defendants") (collectively with Plaintiffs, the "Parties").

This settlement shall be binding on Plaintiffs and the settlement classes and aggrieved employees Plaintiffs purport to represent and (i) Defendants; (ii) each of Defendants' respective past, present and future parents, subsidiaries, and affiliates including, without limitation, any corporation, limited liability company, partnership, trust, foundation, and non-profit entity which controls, is controlled by, or is under common control with Defendants; (iii) the past, present and future shareholders, directors, officers, agents, employees, attorneys, insurers, members, partners, managers, contractors, agents, consultants, representatives, administrators, payroll service providers, fiduciaries, benefit plans, transferees, predecessors, successors, and assigns of any of the foregoing; and (iv) any individual or entity which could be jointly liable with any of the foregoing, subject to the terms and conditions hereof and the approval of the Court.

## RECITALS

1.     On November 6, 2018, Plaintiff Barbara Galvan filed a civil Complaint against Defendants First Student Management, LLC, FirstGroup America, Inc., and First Transit, Inc., in the San Mateo County Superior Court entitled *Barbara Galvan, on behalf of herself, all others similarly situated, v. First Student Management, LLC, et al.,* Case No. 18CIV06012, alleging the following claims: (1) failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay hourly wages, (4) failure to provide accurate written wage statements, (5) failure to timely pay all final wages, and (6) unfair competition.

2.     On December 8, 2018, Defendants First Student Management, LLC, FirstGroup America, Inc., and First Transit, Inc. removed the action to the United States District Court, Northern District of California as Case No. 4:18-CV-7378-JST ("the *Galvan* Action").

3.     On June 14, 2019, Plaintiff Barbara Galvan filed a First Amended Complaint against Defendants First Student Management, LLC, FirstGroup America, Inc., and First Transit, Inc., in the United States District Court, Northern District of California, alleging the following claims: (1) failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay hourly wages, (4) failure to provide accurate written wage statements, (5) failure to timely pay all final wages, (6) unfair competition, and (7) civil penalties (i.e., PAGA).

4.     On June 3, 2019, Plaintiff Cynthia Provencio filed a civil Complaint against Defendants First Student, Inc. and First Student Management, LLC in the Alameda County Superior Court entitled *Cynthia Provincio, on behalf of herself and others similarly situated, v. First Student, Inc., et al.*, Case No. RG19021391, alleging the following claims: (1) failure to pay wages for all time worked at minimum wage, (2) failure to pay proper overtime wages for daily overtime hours worked and all hours worked, (3) failure to indemnify for employment-related losses/expenditures, (4) failure to provide complete and accurate wage statements, (5) failure to timely pay all earned wages and final paychecks due at time of separation of employment, and (6) unfair business practices.

5.     On July 18, 2019, Defendants First Student, Inc. and First Student Management, LLC removed the action to the United States District Court, Northern District of California as Case No. 19-CV-04152-SK ("the *Provencio* Action").

6.     On August 8, 2019, Plaintiff Cynthia Provencio filed a civil Complaint against Defendants First Student, Inc. and First Student Management, LLC in the Los Angeles County Superior Court entitled *Cynthia Provencio v. First Student, Inc., et al.,* Case Number 19STCV28179, alleging single cause of action for: Civil Penalties Pursuant to the

Private Attorneys General Act of 2004 ("PAGA") (the "PAGA Action").[1]

7.    On July 28, 2022, Plaintiffs Germaine Scott and Spynsir Tucker filed a civil Complaint against First Student, Inc. in San Francisco County Superior Court, assigned Case No. CGC-22-600961, alleging: (1) rest period violations under the California Labor Code, (2) failure to pay minimum wages in violation of the California Labor Code, (3) failure to provide accurate wage statements in violation of the California Labor Code, (4) failure to timely pay all wages due and owing in violation of the California Labor Code, (5) unfair business practices, and (6) Private Attorneys General Act violations.

8.    On September 6, 2022, Defendant First Student, Inc. removed this action to the United States District Court for the Northern District of California where it was assigned Case No. 22-cv-5057 ("the *Scott* Action").

9.    On April 22, 2020, Plaintiffs Barbara Galvan and Cynthia Provencio filed a Consolidated Complaint against Defendants First Student Management, LLC, First Student, Inc., FirstGroup America, Inc., and First Transit, Inc. in the United States District Court, Northern District of California under Case No. 4:18-CV-7378-JST ("the Consolidated Action"), combining the claims from the *Galvan* Action and *Provencio* Action and seeking class certification.

10.    Subsequently, on April 23, 2020, Plaintiff Provencio dismissed her separate federal Class action, Case No. 4:19-cv-04152-JST, without prejudice, and on April 24, 2020, Plaintiff Provencio dismissed her separate state PAGA action, Case No. 19STCV28179 without prejudice.

11.    On March 15, 2021, Plaintiff Provencio filed a single-plaintiff lawsuit against First Student, Inc. and other Defendants in San Bernardino County Superior Court, alleging claims for wrongful termination, intentional infliction of emotional distress and defamation.  That case was assigned Case No. CIV SB 2106783.

---

[1] On June 1, 2019, Plaintiff Cynthia Provencio exhausted her administrative remedies pursuant to California Labor Code § 2699, *et seq.* by providing notice to the Labor and Workforce Development Agency ("LWDA").  Plaintiff did not receive a response from the LWDA.

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
CASE NO. 4:18-CV-7378-JST

12.     On January 29, 2023, Plaintiff Provencio entered into an individual settlement agreement with First Student, Inc., the terms of which required dismissal of Case No. CIV SB 2106783 with prejudice and dismissal of Plaintiff Provencio as a named Plaintiff in the Consolidated Action.

13.     On August 23, 2022, the Court denied class certification on the Consolidated Action.

14.     On August 10, 2023, the Parties participated in a mediation with Todd Smith, Esq., a highly respected mediator of wage and hour class and PAGA actions.  At the mediation, the Parties agreed to the principal terms of a settlement of the Consolidated Action, which was memorialized in a Confidential Memorandum of Understanding ("MOU") signed by the Parties on August 10, 2023.

15.     As stipulated in the MOU, Plaintiffs filed a First Amended Consolidated Complaint ("FACC") in the Consolidated Action on October 13, 2023 addressing the following:

    a.   Plaintiff Cynthia Provencio was dismissed as a Plaintiff from the action per the terms of her individual settlement agreement dated January 19, 2023.

    b.   Plaintiffs Germaine Scott and Spynsir Tucker were added as Named Plaintiffs to the FACC.

    c.   Plaintiffs dismissed Defendant First Transit, Inc. from the action without prejudice.

    d.   Plaintiffs identified Defendant First Management Services, LLC as a defendant to the action.

    e.   Plaintiffs redefined the class to include all non-exempt employees of First Student, Inc. and/or First Management Services, LLC and added non-drivers to the PAGA claim.

    f.   Plaintiffs added allegations of failure to properly calculate the regular rate of pay for purposes of overtime, meal and rest period premiums,

and California sick pay.

16.    In the event this Settlement does not receive final approval by the Court, or the Effective Date does not occur, the Parties shall stipulate to the withdrawal of the FACC, and this litigation shall return to the status prior to the execution of the MOU.

17.    Defendants deny all material allegations set forth in the FACC and have asserted numerous affirmative and other defenses.  Notwithstanding, in the interest of avoiding further litigation, the Parties desire to fully and finally settle all actual or potential claims by the Class Members.

18.    Plaintiffs' counsel in the Consolidated Action diligently investigated the proposed Class Members' claims against Defendants, including all applicable defenses and the applicable law.  The investigation included, *inter alia*, the exchange of information pursuant to informal discovery methods, review of numerous corporate policies and practices, and review and analysis of voluminous time and payroll records.

19.    The settlement discussions before, during and after the mediation were conducted at arm's length, and the settlement is the result of an informed and detailed analysis of Defendants' alleged potential liability in relation to the costs and risks associated with continued litigation.

20.    Based on the data and documents produced pursuant to informal discovery, as well as Class Counsel's own independent investigation and evaluation, and the mediator's efforts, Class Counsel believes that the settlement with Defendants for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendants, the sharply contested legal and factual issues involved, and numerous appellate issues.

21.    This Settlement Agreement is made and entered into by and between Plaintiffs, individually and on behalf of all others similarly situated and aggrieved, on the one hand, and Defendants, on the other hand, and is subject to the terms and conditions

hereof, and to the Court's approval.   The Parties expressly acknowledge that this Agreement is entered into solely for the purpose of compromising significantly disputed claims and that nothing herein is an admission of any liability or wrongdoing by Defendants.  If, for any reason this Settlement Agreement is not approved, it will be of no force or effect, and the Parties shall be returned to their original respective positions.

## DEFINITIONS

22.   The following definitions are applicable to this Settlement Agreement. Definitions contained elsewhere in this Settlement Agreement will also be effective:

23.   "Consolidated Action" means *Barbara Galvan and Cynthia Provencio, on behalf of themselves, all others similarly situated, v. First Student Management, LLC, et al.,* United States District Court, Northern District of California as Case No. 4:18-CV-7378-JST, including the original, the First Amended Complaint, Consolidated Complaint, and the FACC.

24.   "Attorneys' Fees and Costs" means attorneys' fees agreed upon by the Parties and approved by the Court for Class Counsel's litigation and resolution of the Consolidated Action, and all costs incurred and to be incurred by Class Counsel in the Consolidated Action, including, but not limited to, costs associated with documenting the Settlement, securing the Court's approval of the Settlement, responding to any objections to the settlement and appeals arising therefrom, administering the Settlement, obtaining entry of a Judgment terminating the Consolidated Action, and expenses for any experts.  Class Counsel will request attorneys' fees not in excess of one-third (1/3) of the Maximum Settlement Amount, or up to One Million One Hundred Sixty-Six Thousand Six Hundred Sixty Six Dollars and Sixty Six Cents ($1,166,666.66).  The Attorneys' Fees and Costs will also mean and include the additional reimbursement of Class Counsel's actual costs associated with Class Counsel's litigation and settlement of the Consolidated Action per Class Counsel's billing statements, subject to the Court's approval.  Defendants do not oppose Class Counsel's request for fees and reimbursement of costs.

25. "Class Counsel" means Setareh Law Group, Lavi & Ebrahimian, LLP, Stephan Zouras, LLP, and Thierman Buck LLP, which will seek to be appointed counsel for the Settlement Class.

26. "Class List" means a complete list of all Class Members that Defendants will diligently and in good faith compile from their records and provide to the Settlement Administrator within thirty (30) calendar days after Preliminary Approval of this Settlement. The Class List will be formatted in a readable Microsoft Office Excel spreadsheet and will include Class Members' names, last-known addresses, last-known telephone numbers, social security numbers, and Workweek and pay period data for the Settlement Administrator to use in calculating the workweeks and pay periods during the Driver Class Period, Driver PAGA Period, Non-Driver Class Period, and/or Non-Driver PAGA Period, respectively.

27. "Class Member(s)" or "Settlement Class" means Plaintiffs and all individuals who are members of the Driver Class and/or Non-Driver Class.

28. "Class and PAGA Representatives" means Plaintiffs Barbara Galvan, Germaine Scott, and Spynsir Tucker, who will seek to be appointed as the representatives for the Settlement Class.

29. "Class and PAGA Representative Enhancement Payments" or "Class Representative Enhancement Payments" means the amounts to be paid to the Class and PAGA Representatives in recognition of their efforts and work in prosecuting the Consolidated Action on behalf of Class Members, negotiating the Settlement, and providing a general release of all claims. Defendants do not oppose Class Counsel's request to pay the Class and PAGA Representatives from the Maximum Settlement Amount up to Ten Thousand Dollars ($10,000.00) for Barbara Galvan, up to Five Thousand Dollars ($5,000.00) for Germaine Scott, and up to Five Thousand Dollars ($5,000.00) for Spynsir Tucker, for their services on behalf of the Class, subject to Court's approval of this Settlement Agreement and subject to the exhaustion of any appeals. Should the Court reduce the Class Representative Enhancement Payments, any

9

such reduction shall revert to the Net Settlement Amount distributed to Participating Class Members.

30.     "Court" means the United States Strict Court for the Northern District of California or any other court taking jurisdiction of the Consolidated Action and FACC.

31.     "Defendants" means First Student Management, LLC; First Management Services, LLC; First Student, Inc.; and FirstGroup America, Inc.

32.     "Driver Class" means all individuals employed by First Student, Inc. and/or First Management Services, LLC as non-exempt Drivers in California during the Driver Class Period.

33.     "Driver Class Period" means the period from November 6, 2014 to November 8, 2023.

34.     "Driver PAGA Group" means all individuals employed by First Student, Inc. and/or First Management Services, LLC as non-exempt Drivers in California during the Driver PAGA Period.

35.     "Driver PAGA Period" means the period from November 6, 2017, to November 8, 2023.

36.     "Effective Date" means the date on which the settlement embodied in this Settlement Agreement shall become effective after all of the following events have occurred: (i) this Settlement Agreement has been executed by all parties and by counsel for the Settlement Class and Defendants; (ii) the Court has given preliminary approval to the Settlement; (iii) notice has been given to the putative members of the Settlement Class, providing them with an opportunity to object to the terms of the Settlement or to opt-out of the Settlement; (iv) the Court has held a formal fairness hearing and entered a final order and judgment certifying the Class and approving this Settlement Agreement; (v) thirty one (31) calendar days have passed from the Court's entry of a final order and judgment certifying the Settlement Class, and approving the settlement; and (vi) no appeal of such final order and judgment has been filed.  If an appeal is filed, then the Effective Date shall be five (5) business days after any appeal, writ or other appellate

proceeding opposing the Settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief and the final order and judgment certifying the Settlement Class and approving the settlement is upheld.

37.    "Individual PAGA Settlement Payment" means each PAGA Group Member's share of the Net PAGA Settlement Amount.

38.    "Individual Settlement Payment" means each Participating Class Member's share of the Net Settlement Amount, to be distributed to the Class Members who do not submit a valid Request for Exclusion.

39.    "LWDA Payment" means Seventy-Five Percent (75%), or One Hundred Eighty Seven Thousand Five Hundred Dollars ($187,500.00), of the PAGA Settlement Amount which will be paid to the California Labor and Workforce Development Agency pursuant to PAGA.

40.    "Maximum Settlement Amount" means the maximum settlement amount of Three Million Five Hundred Thousand Dollars ($3,500,000.00) to be paid by Defendants in full satisfaction of all claims arising from the Consolidated Action, which includes all Individual Settlement Payments to Participating Class Members, the Class and PAGA Representative Enhancement Payments, Settlement Administration Costs to the Settlement Administrator, the PAGA Settlement Amount, the Attorneys' Fees and Costs to Class Counsel, and which specifically excludes the employer's share of payroll taxes for the portion of the Net Settlement Amount allocated to wages.  This Maximum Settlement Amount has been agreed to by Plaintiffs and Defendants based on the aggregation of the agreed-upon settlement value of the claims alleged.  In no event will Defendants be liable for more than the Maximum Settlement Amount except as otherwise explicitly set forth herein.  The Maximum Settlement Amount is non-reversionary.

41.    "Net PAGA Settlement Amount" means the Twenty-Five Percent (25%), or Sixty-Two Thousand Five Hundred Dollars ($62,500.00), of the PAGA Settlement Amount which will be distributed to PAGA Group Members.

42.    "Net Settlement Amount" means the portion of the Maximum Settlement

Amount remaining after deduction of the approved Class and PAGA Representative Enhancement Payments, Settlement Administration Costs, PAGA Settlement Amount, and Attorneys' Fees and Costs.  The Net Settlement Amount will be distributed to Participating Class Members.

43.   "Non-Driver Class" means all individuals employed by First Student, Inc. and/or First Management Services, LLC in non-exempt positions other than as Driver in California during the Non-Driver Class Period.

44.   "Non-Driver Class Period" means the period from August 1, 2019 to November 8, 2023.

45.   "Non-Driver PAGA Group" means all individuals employed by First Student, Inc. and/or First Management Services, LLC in non-exempt positions other than as Drivers in California during the Non-Driver PAGA Period.

46.   "Non-Driver PAGA Period" means the period from August 1, 2022 to November 8, 2023.

47.   "Notice of Objection" means a Class Member's valid and timely written objection to the Settlement Agreement.  For the Notice of Objection to be valid, it must include: (a) the objector's full name, signature, address, telephone number, and the last four digits of the objector's social security number, (b) the dates the objector was employed by Defendants in California, (c) a written statement of all grounds for the objection accompanied by any legal support for such objection, and (d) copies of any papers, briefs, or other documents upon which the objection is based.

48.   "Notice Packet" or "Notice" means the Notice of Class Action Settlement, substantially in the form attached as **Exhibit A**.

49.   "PAGA Group Members" means all individuals who are members of the Driver PAGA Group and/or Non-Driver PAGA Group.

50.   "PAGA Settlement Amount" means the amount that the Parties have agreed to pay to the Labor and Workforce Development Agency ("LWDA") and PAGA Group Members in connection with the Labor Code Private Attorneys General Act of 2004 (Cal.

Lab. Code §§ 2698, *et seq.*, "PAGA"). The Parties have agreed that Two Hundred Fifty Thousand Dollars ($250,000.00) of the Maximum Settlement Amount will be allocated to the resolution of any PAGA Group Members' claims arising under PAGA (i.e., the PAGA Settlement Amount).

51. "Parties" means Plaintiffs and Defendants collectively.

52. "Participating Class Members" means all Class Members who do not submit valid Requests for Exclusion.

53. "Pay Periods" means any Pay Period in which a Driver PAGA Group Member or Non-Driver PAGA Group Member worked at least one day in a Pay Period during the Driver PAGA Period or Non-Driver PAGA Period, excepting those dates/times taken for vacations or leaves of absences.

54. "Plaintiffs" means Plaintiffs Barbara Galvan, Germaine Scott, and Spynsir Tucker.

55. "Preliminary Approval" means the Court order granting preliminary approval of the Settlement Agreement.

56. "Released Claims" means any and all claims, debts, rights, demands, obligations or liabilities of every nature and description, for damages, premiums, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief against the Released Parties arising during the applicable Class Period and alleged in the operative Complaint, or which could have been alleged based on the facts pled in the operative Complaint, including without limitation claims relating to: (i) the alleged failure to pay for all hours worked, (ii) the alleged failure to correctly pay overtime wages, (iii) the alleged failure to provide meal periods or pay meal period premiums at the regular rate of pay, (iv) the alleged failure to provide rest periods or pay rest period premiums at the regular rate of pay, (v) the alleged failure to provide complete and accurate wage statements, and (vi) the alleged failure to timely pay wages during employment, (vii) the alleged failure timely pay all wages owed to employees who quit or are terminated, (vii) the alleged failure to reimburse for business expenses, (ix)

the alleged failure to maintain accurate time and payroll records, (x) the alleged failure to pay minimum wages, and (xi) claims for interest and any other claims and penalties premised on the aforementioned allegations. "Released Claims" includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, premiums, penalties, fines, lines, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages, whether under federal law, California law or any state law or common law, including, without limitations, as violations of the California Labor Code, the Wages Orders, applicable regulations, and any and all claims under the Fair Labor Standards Act.

57.     "Released PAGA Claims" means any and all PAGA claims against the Released Parties during the applicable PAGA Period and alleged in the operative Complaint and/or Plaintiffs' letters to the LWDA, or which could have been alleged based on the facts pled in the operative Complaint and/or alleged in Plaintiffs' letters to the LWDA, including without limitation PAGA claims relating to: (i) the alleged failure to pay for all hours worked, (ii) the alleged failure to correctly pay overtime wages, (iii) the alleged failure to provide meal periods or pay meal period premiums at the regular rate of pay, (iv) the alleged failure to provide rest periods or pay rest period premiums at the regular rate of pay, (v) the alleged failure to provide complete and accurate wage statements, and (vi) the alleged failure to timely pay wages during employment, (vii) the alleged failure timely pay all wages owed to employees who quit or are terminated, (vii) the alleged failure to reimburse for business expenses, (ix) the alleged failure to maintain accurate time and payroll records, (x) the alleged failure to pay minimum wages, and (xi) any other PAGA claims premised on the aforementioned allegations.

58.     "Released Parties" means: (i) First Student, Inc., FirstGroup America, Inc., First Student Management Services, LLC, and First Management Services, LLC; (ii) each of their past, present and future parents, subsidiaries, divisions, concepts, related and affiliated companies including, without limitation, any corporation, limited liability company, partnership, trust, foundation, and non-profit entity which controls, is

controlled by, or is under common control with each of them;  (iii) their past, present and future shareholders, directors, officers, agents, employees, attorneys, insurers, members, partners, managers, contractors, agents, consultants, representatives, administrators, payroll service providers, fiduciaries, benefit plans, transferees, predecessors, successors, and assigns of any of the foregoing; and (iv) any individual or entity which could be jointly liable with any of the foregoing.

59.    "Request for Exclusion" means a timely letter submitted by a Class Member indicating a request to be excluded from the class portion of the settlement.  The Request for Exclusion must: (a) be signed by the Class Member; (b) contain the name, address, telephone number, and the last four digits of the Social Security Number of the Class Member requesting exclusion; (c) clearly state that the Class Member received the Notice, does not wish to participate in the class portion of the settlement, and wants to be excluded from the class portion of the settlement; (d) be returned by first class mail or equivalent to the Settlement Administrator at the specified address; and, (e) be postmarked on or before the Response Deadline.  The date of the postmark on the return mailing envelope will be the exclusive means to determine whether a Request for Exclusion has been timely submitted.  A Class Member who does not request exclusion from the class portion of the settlement will be deemed a Participating Class Member and will be bound by all terms of the settlement if the settlement is granted final approval by the Court.  The Parties agree that there is no right for any Class Member to opt out or otherwise exclude himself or herself from the settlement of the PAGA claims.

60.    "Response Deadline" means the deadline by which Class Members must postmark to the Settlement Administrator valid Requests for Exclusion, or file and serve a Notice of Objection.  The Response Deadline will be forty-five (45) calendar days from the initial mailing of the Notice Packet by the Settlement Administrator, unless the 45th day falls on a Sunday or federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open.  The Response Deadline will be extended fifteen (15) calendar days for any Class Member who is re-

mailed a Notice Packet by the Settlement Administrator, unless the 15th day falls on a Sunday or federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open.  The Response Deadline may also be extended by express agreement between Class Counsel and Defendants.  Under no circumstances, however, will the Settlement Administrator have the authority to extend the deadline for Class Members to submit a Request for Exclusion or objection to the settlement.

61.   "Settlement Administrator" means ILYM Group, Inc., or any other third-party class action settlement administrator agreed to by the Parties and approved by the Court for purposes of administering this settlement.  The Parties each represent that they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

62.   "Settlement Administration Costs" means the costs payable from the Maximum Settlement Amount to the Settlement Administrator for administering this Settlement, including, but not limited to, printing, distributing, and tracking documents for this Settlement, calculating estimated amounts per Class Member, tax reporting, distributing the appropriate settlement amounts, and providing necessary reports and declarations, and other duties and responsibilities set forth herein to process this Settlement, and as requested by the Parties.  The Settlement Administration Costs will be paid from the Maximum Settlement Amount, including, if necessary, any such costs in excess of the amount represented by the Settlement Administrator as being the maximum costs necessary to administer the settlement.  The Settlement Administration Costs are currently estimated to be Sixty One Thousand Nine Hundred Dollars ($61,900).  To the extent actual Settlement Administrations Costs are greater than $61,900, such excess amount will be deducted from the Maximum Settlement Amount.

63.   "Workweeks" means the number of weeks of employment for each Class Member as a non-exempt employee during the Driver Class Period and/or Non-Driver Class Period, respectively.  Workweeks are determined by calculating the number of

weeks in which an employee worked at least one day, excepting those days taken for vacations and leaves of absences.

## **CLASS CERTIFICATION**

64.    Solely for purposes of settling the Consolidated Action, and not for purposes of class certification should the matter not be settled or for any other reason, the Parties stipulate and agree that the requisites for establishing class certification with respect to the Settlement Class have been met and are met.  More specifically, the Parties stipulate and agree for purposes of this settlement only that:

(a)    The Settlement Class is ascertainable and so numerous as to make it impracticable to join all Class Members;

(b)    There are common questions of law and fact including, but not limited to, the following:

i.    Whether Defendants violated Labor Code sections 223, 510, 1194, 1194.2, 1197, 1197.1, and 1198 by not paying wages at the minimum wage rate for all time that the Class Members were subject to Defendants' control;

ii.    Whether Defendants violated Labor Code sections 204, 223, 226.7, 512, and 1198, as well as the applicable Wage Order, by employing the Class Members without providing all compliant and/or required meal periods and/or paying meal period premium wages;

iii.    Whether Defendants violated Labor Code section 2802 by failing to reimburse for necessary business expenses;

iv.    Whether Defendants violated Labor Code section 204, 223, 226.7, and 1198 by employing the Class Members without providing all compliance and/or require rest periods and/or paying rest period premium wages;

v.    Whether Defendants violated Labor Code section 226(a) by failing to provide the Class Members with accurate itemized wage statements at the time they received their itemized statements;

vi.      Whether Defendants violated Labor Code section 201, 202, and 203 by failing to provide the Class Members with all their earned wages upon separation of employment within the statutory time period;

vii.      Whether Defendants committed unlawful business acts or practices within the meaning of Business and Professions Code sections 17200 *et seq.*;

viii.      Whether Class Members are entitled to unpaid wages, penalties, and other relief pursuant to their claims;

ix.      Whether, as a consequence of Defendants' alleged unlawful conduct, the Class Members are entitled to restitution and/or equitable relief; and

x.      Whether Defendants' affirmative defenses raise any common issues of law or fact as to Plaintiffs and as to Class Members as a whole.

Should this Settlement not be approved or be terminated, these stipulations shall be null and void and shall not be admissible, in this or any other action, for any purpose whatsoever.

65.     The Class Representatives' claims are typical of the claims of the members of the Settlement Class; should this Settlement not be approved or be terminated, this stipulation shall be null and void and shall not be admissible, in this or any other action, for any purpose whatsoever.

66.     The Class Representatives and Class Counsel will fairly and adequately protect the interests of the Settlement Class; should this Settlement not be approved or be terminated, this stipulation shall be null and void and shall not be admissible, in this or any other action, for any purpose whatsoever.

67.     The prosecution of separate actions by individual members of the Settlement Class would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct; should this Settlement not be approved or be terminated, this stipulation shall be null and void and shall not be admissible, in this or any other action, for any purpose whatsoever.

68.     With respect to the Settlement Class, the Class Representatives believe that

questions of law and fact common to the members of the Settlement Class predominate over any questions affecting any individual member in such Class, and a class action is superior to other available means for the fair and efficient adjudication of the controversy; should this Settlement not be approved or be terminated, this stipulation shall be null and void and shall not be admissible, in this or any other action, for any purpose whatsoever.

## **TERMS OF AGREEMENT**

NOW, THEREFORE, in consideration of the mutual covenants, promises and agreements set forth herein, the Parties agree, subject to the Court's approval, as follows:

69.     Funding of the Maximum Settlement Amount.   Within fourteen (14) calendar days of the Effective Date, the Settlement Administrator will provide the Parties with an accounting of the amounts to be paid by Defendants pursuant to the terms of the Settlement.   Within forty-five (45) calendar days of the Effective Date, Defendants will make a one-time deposit of Three Million Five Hundred Thousand Dollars ($3,500,000.00), plus employer-side taxes, for payment of all Court approved amounts from the Maximum Settlement Amount into a Qualified Settlement Account to be established by the Settlement Administrator.   Within fourteen (14) business days of the funding of the Settlement, the Settlement Administrator will issue payments to (a) Participating Class Members; (b) the Labor and Workforce Development Agency; (c) Plaintiffs; (d) PAGA Group Members; and (e) Class Counsel.   The Settlement Administrator will also issue a payment to itself for Court-approved services performed in connection with the Settlement.

70.     Attorneys' Fees and Costs.  Defendants agree not to oppose or impede any application or motion by Class Counsel for Attorneys' Fees and Costs of one-third (1/3) of the Maximum Settlement Amount, or up to One Million One Hundred Sixty Six Thousand Six Hundred Sixty Six Dollars and Sixty Six Cents ($1,166,666.66), plus the reimbursement of actual costs and expenses associated with Class Counsel's litigation and settlement of the Consolidated Action per Class Counsel's cost records, both of which will be paid from the Maximum Settlement Amount. If the escalator clause is triggered,

and the Maximum Settlement Amount is increased after the Parties' negotiations, Plaintiffs shall have at their discretion the option to request attorneys' fees in the amount of one-third (1/3) of the increased Maximum Settlement Amount, if any.

71.    <u>Class and PAGA Representative Enhancement Payment</u>.  In recognition of Plaintiffs' effort and work in prosecuting the Consolidated Action on behalf of Class Members and PAGA Group Members, negotiating the Settlement, and providing a general release of claims, Defendants agree not to oppose or impede any application or motion for a Class Representative Enhancement Payments of up to Ten Thousand Dollars ($10,000.00) for Plaintiff Barbara Galvan, up to Five Thousand Dollars ($5,000.00) to Plaintiff Germaine Scott, and up to Five Thousand Dollars ($5,000.00) to Plaintiff Spynsir Tucker, subject to the Court's approval.  The Class and PAGA Representative Enhancement Payments, which will be paid from the Maximum Settlement Amount, will be in addition to Plaintiffs' Individual Settlement Payments and Individual PAGA Settlement Payments paid pursuant to the Settlement.  The Settlement Administrator will issue an IRS Form 1099 for the enhancement payments to the Class Representatives, and the Class Representatives shall be solely and legally responsible for correctly characterizing this compensation for tax purposes and for paying any taxes on the amount received.  The Class Representatives agree to indemnify and hold Defendants harmless from any claim or liability for taxes, penalties, or interest arising as a result of the Class and PAGA Representative Enhancement Payments.  Should the Court reduce the Class and PAGA Representative Enhancement Payments, any such reduction shall revert to the Net Settlement distributed to Participating Class Members.

72.    <u>Settlement Administration Costs</u>.  The Settlement Administrator will be paid for the reasonable costs of administration of the Settlement and distribution of payments from the Maximum Settlement Amount, which is currently estimated to be Sixty One Thousand Nine Hundred Dollars ($61,900). These costs, which will be paid from the Maximum Settlement Amount, will include, *inter alia*, the required tax reporting on the Individual Settlement Payments, the issuing of 1099 IRS Forms, distributing the Notice

Packet, calculating and distributing the Maximum Settlement Amount and Attorneys' Fees and Costs, and providing necessary reports and declarations.

73. <u>Labor and Workforce Development Agency Payment</u>.  Subject to Court approval, the Parties agree that the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) of the Maximum Settlement Amount will be designated for satisfaction of Plaintiffs' and Class Members' PAGA claims (i.e., the PAGA Settlement Amount). Pursuant to PAGA, Seventy-Five Percent (75%), or One Hundred Eighty Seven Thousand Five Hundred Dollars ($187,500.00), of the PAGA Settlement Amount will be paid to the California Labor and Workforce Development Agency, and Twenty-Five Percent (25%), or Sixty Two Thousand Five Hundred Dollars ($62,500.00), of the PAGA Settlement Amount will be distributed based on each PAGA Group Member's number of pay periods worked in comparison to the pay periods worked by all PAGA Group Members during the Driver PAGA Period or Non-Driver PAGA Period, respectively, provided that 90% of the total distribution ($56,250.00) shall be allocated towards Driver PAGA Group Members and 10% of the total distribution ($6,250.00) shall be allocated towards Non-Driver PAGA Group Members. Each PAGA Group Member will receive an Individual PAGA Settlement Payment regardless of whether they exclude themselves from the class settlement and release. PAGA Group Members will release the Released PAGA Claims.

74. <u>Net Settlement Amount</u>.  The Net Settlement Amount will be used to satisfy Individual Settlement Payments to Participating Class Members from the Settlement Class in accordance with the terms of this Agreement.

75. <u>Acknowledgement of Potential Administration Cost Increases</u>.  The Parties hereby acknowledge that Settlement Administration Costs may increase above the current estimate of $61,900 and that any such additional Settlement Administration Costs will be taken out of the Maximum Settlement Amount.  Any portion of the estimated or designated Settlement Administration Costs which are not in fact required to fulfill the total Settlement Administration Costs will become part of the Net Settlement Amount.

76.     <u>Individual Settlement Payment Calculations</u>.     Individual Settlement Payments will be calculated and apportioned from the Net Settlement Amount based on the Workweeks a Participating Class Member worked during the applicable Class Period. Specific calculations of Individual Settlement Payments will be made as follows:

a.     The Settlement Administrator will calculate the number of Workweeks per Participating Class Member during the applicable Class Period (Driver or Non-Driver) based on records in Defendants' possession, custody or control. Defendants' Workweek data will be presumed to be correct, unless a particular Class Member proves otherwise to the Settlement Administrator by credible written evidence. All Workweek disputes will be resolved and decided by the Settlement Administrator in consultation with Class Counsel and counsel for Defendants.     The Settlement Administrator's decision on all Workweek disputes will be final and non-appealable.

b.     The Settlement Administrator will calculate the total number of Workweeks for each individual Class Member ("Individual Workweeks").     The Settlement Administrator will calculate the total number of Workweeks for all Class Members during the applicable Class Period ("Class Workweeks").

c.     To determine each Class Member's "Individual Settlement Payment" the Settlement Administrator will use the following formula: Individual Settlement Payment = (Net Settlement Amount ÷ Class Workweeks) x Individual Workweeks for each individual Participating Class Member, provided that 90% of the Net Settlement Amount shall be allocated to Driver Class Members and 10% of the Net Settlement Amount shall be allocated to Non-Driver Class Members.  Individual Settlement Payment checks will contain the following printed notice advising Participating Class Members that they are affirmatively opting-in for purposes of the FLSA by cashing, depositing or otherwise negotiating their Individual Settlement Payment checks:  "BY CASHING THIS CHECK YOU ARE AGREEING TO THE TERMS OF THE SETTLEMENT REACHED IN *GALVAN, ET AL. V. FIRST STUDENT MANAGEMENT, LLC, ET AL.*, CASE NO. 4:18-CV-7378-JST, AND AGREE TO OPT-IN TO THE SETTLEMENT

AND TO RELEASE CLAIMS UNDER THE FAIR LABOR STANDARDS ACT PURSUANT TO THE SETTLEMENT."

      d.     The portion of the PAGA Settlement Amount payable to PAGA Group Members will be distributed to PAGA Group Members based on the number of Pay Periods each of them worked during the applicable PAGA Period ("Individual PAGA pay periods") compared to the total number of Pay Periods worked by all PAGA Group Members during the applicable PAGA Period ("Total PAGA Pay Periods"). To determine each PAGA Group Member's Individual PAGA Settlement Payment, the Settlement Administrator will use the following formula: Individual PAGA Settlement Payment = PAGA Settlement Amount payable to PAGA Group Members ÷ Total PAGA Pay Periods) x Individual PAGA Pay Periods, provided that 90% of the PAGA Settlement Amount payable to PAGA Group Members shall be allocated to Driver PAGA Group Members and 10% shall be allocated to Non-Driver PAGA Group Members.

77.    <u>Settlement Awards Do Not Trigger Additional Benefits</u>. All settlement awards to Class Members shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members. It is expressly understood and agreed that the receipt of such individual settlement awards will not entitle any Class Member to additional compensation or benefits under any company bonus, commission or other compensation or benefit plan or agreement in place during the period covered by the Settlement, nor will it entitle any Class Member to any increased retirement, 401K benefits or matching benefits, or deferred compensation benefits. It is the intent of this Settlement that the individual settlement awards provided for in this Settlement are the sole payments to be made by Defendants to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the individual settlement awards (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

78.    <u>Settlement Administration Process</u>. The Parties agree to cooperate in the

administration of the settlement and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement.

79.     Delivery of the Class List.  Within thirty (30) calendar days of Preliminary Approval, Defendants will provide the Class List to the Settlement Administrator.

80.     Notice by First-Class U.S. Mail.  Within forty-five (45) calendar days of Preliminary Approval, the Settlement Administrator will mail a Notice Packet to all Class Members via regular First-Class U.S. Mail, using the most current, known mailing addresses identified in the Class List.

81.     Confirmation of Contact Information in the Class Lists.  Prior to mailing, the Settlement Administrator will perform a search based on the National Change of Address Database for information to update and correct for any known or identifiable address changes.  Any Notice Packets returned to the Settlement Administrator as non-deliverable on or before the Response Deadline will be sent promptly via regular First-Class U.S. Mail to the forwarding address affixed thereto and the Settlement Administrator will indicate the date of such re-mailing on the Notice Packet.  If no forwarding address is provided, the Settlement Administrator will promptly attempt to determine the correct address using a skip-trace, or other search using the name, address and/or Social Security number of the Class Member involved and will then perform a single re-mailing.  Those Class Members who receive a re-mailed Notice Packet, whether by skip-trace or by request, will have the later of (a) an additional fifteen (15) calendar days or (b) the Response Deadline to fax or postmark a Request for Exclusion, or file and serve an objection to the Settlement.

82.     Notice Packets.  All Class Members will be mailed a Notice Packet.  Each Notice Packet will be substantially in the form attached hereto as **Exhibit A**.

83.     Disputed Information on Notice Packets.  Class Members will have an opportunity to dispute the information provided in their Notice Packets.  To the extent Class Members dispute the number of Workweeks he/she worked during the applicable Class Period, or the amount of their Individual Settlement Payment, Class Members may

produce evidence to the Settlement Administrator showing that such information is inaccurate. Absent evidence rebutting Defendants' records, Defendants' records will be presumed determinative. However, if a Class Member produces evidence to the contrary, the Settlement Administrator will evaluate the evidence submitted by the Class Member in consultation with Class Counsel and counsel for Defendants and will make the final decision as to the Individual Settlement Payment to which the Class Member may be entitled.

84. <u>Request for Exclusion Procedures</u>. Any Class Member wishing to opt-out from the class portion of the Settlement Agreement must sign and postmark a written Request for Exclusion to the Settlement Administrator within the Response Deadline. The date of the postmark on the return mailing envelope will be the exclusive means to determine whether a Request for Exclusion has been timely submitted. All Requests for Exclusion will be submitted to the Settlement Administrator, who will certify jointly to Class Counsel and Defendants' Counsel the Requests for Exclusion that were timely submitted. Any Class Member who submits a Request for Exclusion shall be prohibited from objecting to the Settlement Agreement. The Parties agree that there is no right for any Class Member to opt out or otherwise exclude himself or herself from the Settlement of the PAGA claims in the Consolidated Action.

85. <u>Settlement Terms Bind All Class Members Who Do Not Opt-Out</u>. Any Class Member who does not affirmatively opt-out of the class portion of the Settlement Agreement by submitting a timely and valid Request for Exclusion will be bound by all of its terms, including those pertaining to the Released Claims and Released PAGA Claims, as well as any Judgment that may be entered by the Court if it grants final approval to the Settlement.

86. <u>Objection Procedures</u>. To object to the Settlement Agreement, a Class Member shall file a valid Notice of Objection with the Settlement Administrator on or before the Response Deadline. The Settlement Administrator shall serve all objections as received on Class Counsel and Defendants' Counsel, as well as file all such objections

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
CASE NO. 4:18-CV-7378-JST

with the Court. The Notice of Objection shall be signed by the Class Member and contain all information required by this Settlement Agreement. The postmark date of the filing and service will be deemed the exclusive means for determining that the Notice of Objection is timely. At no time will any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to object to the Settlement Agreement or appeal from the Order and Judgment. Class Counsel will not represent any Class Members with respect to any such objections to this Settlement. The Parties agree that there is no right for any Class Member to object to the Settlement of the PAGA claims in the Consolidated Action.

87. <u>Certification Reports Regarding Individual Settlement Payment Calculations</u>. The Settlement Administrator will provide Defendants' counsel and Class Counsel a weekly report which certifies: (a) the number of Class Members who have submitted valid Requests for Exclusion; and (b) whether any Class Member has submitted a challenge to any information contained in their Notice Packet. Additionally, the Settlement Administrator will provide to counsel for both Parties any updated reports regarding the administration of the Settlement Agreement as needed or requested.

88. <u>Uncashed Settlement Checks</u>. Any checks issued by the Settlement Administrator to Participating Class Members will expire 180 calendar days from the date the check was issued. Upon the expiration of 180 calendar days, uncashed settlement award checks will not be re-issued, except for good cause and as mutually agreed upon by the Parties in writing. All uncashed checks will be sent to the State of California Unclaimed Property Fund in the name of the employee.

89. <u>Certification of Completion</u>. Upon completion of administration of the Settlement, the Settlement Administrator will provide a written declaration under oath to certify such completion to the Court and counsel for all Parties.

90. <u>Administration Costs if Settlement Fails</u>. If the Settlement is voided or rejected by the Court, any costs incurred by the Settlement Administrator will be paid equally by the Parties (half by Defendants and half by Class Counsel), unless otherwise

specified in this Agreement.

91.   <u>Treatment of Individual Settlement Payments</u>.   All Individual Settlement Payments will be allocated as follows: of each Individual Settlement Payment, 35% will be allocated as alleged unpaid wages, 30% will be allocated as alleged unpaid interest, and the remaining 35% will be allocated as alleged unpaid civil penalties and reimbursement.  The 35% of each Individual Settlement Payment allocated as wages will be reported on an IRS Form W-2 by the Settlement Administrator.  The remaining 65% of each Individual Settlement Payment allocated as interest, penalties and reimbursement will be reported on an IRS Form 1099 by the Settlement Administrator. Individual PAGA Settlement Payments will be designated 100% penalties and be reported on an IRS Form 1099.

92.   <u>Administration of Taxes by the Settlement Administrator</u>.   The Settlement Administrator will be responsible for issuing to Plaintiffs, Participating Class Members, PAGA Group Members, and Class Counsel any W-2, 1099, or other tax forms as may be required by law for all amounts paid pursuant to this Agreement.   Within seven (7) business days after the Effective Date, the Settlement Administrator will provide the Parties with an accounting of the amounts to be paid by Defendants pursuant to the terms of the Settlement, including the amount of the employer contribution for payroll taxes to be paid separate from the Maximum Settlement Amount.  The Settlement Administrator will also be responsible for timely forwarding all payroll taxes and penalties to the appropriate government authorities.

93.   <u>Tax Liability</u>.  Defendants make no representation as to the tax treatment or legal effect of the payments called for hereunder, and Plaintiffs, Participating Class Members, and Class Counsel are not relying on any statement, representation, or calculation by Defendants or by the Settlement Administrator in this regard.  Plaintiffs and Participating Class Members understand and agree that they will be solely responsible for the payment of any taxes and penalties assessed on the payments described herein and will defend, indemnify, and hold Defendants free and harmless from

and against any claims resulting from treatment of such payments as non-taxable damages.

94.  <u>Circular 230 Disclaimer</u>.  EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR WILL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO THIS AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

95.   <u>No Prior Assignments</u>.  The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right herein released and discharged.

96.   <u>Release of Claims by Class Members</u>. Upon the Effective Date, Plaintiffs and all Participating Class Members will be deemed to have fully, finally and forever released, settled, compromised, relinquished, and discharged with respect to all of the Released Parties and any and all Released Claims.  The Settlement Class and each member of the Class who has not submitted a valid Request for Exclusion, fully releases and discharges the Released Parties for the Released Claims for any period during the applicable Class Period.

97.   <u>Release of PAGA Claims by PAGA Group Members</u>. Upon the Effective Date, Plaintiffs, the State of California and all PAGA Group Members will be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged any and all Released PAGA Claims with respect to all of the Released Parties. The Parties agree that there is no right for any Class Member to opt out or otherwise exclude himself or herself from the Settlement of the PAGA claims in the Consolidated Action.

98.   <u>Release by Plaintiffs Barbara Galvan, Germaine Scott, and Spynsir Tucker</u>. As of the Effective Date, Plaintiffs Barbara Galvan, Germaine Scott, and Spynsir Tucker (on their own behalf and on behalf of each of their heirs, executors, administrators, and assigns), but not on behalf of other Class Members, knowingly and voluntarily releases and forever discharges the Released Parties from any and all claims, known and unknown, asserted and unasserted, that each of them had or may have had against Defendants or any of the Released Parties.  Such claims include, but are not limited to:  breaches of contract, whether written, oral or implied; violations of any public policy; tort claims, including but not limited to intentional infliction of emotional distress and negligent infliction of emotional distress, defamation, misrepresentation, and fraud; retaliation

claims; common law claims; any other claims for damages, costs, fees, or other expenses, including attorneys' fees; and any violations of the following statutes, laws, and regulations:  Fair Labor Standards Act, 29 U.S.C. §§ 200, *et seq.,* Title VII of the Civil Rights Act of 1964, as amended; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Americans with Disabilities Act of 1990, as amended; The Age Discrimination in Employment Act of 1967, as amended; the Older Workers Benefit Protection Act; the Employment Retirement Income Security Act of 1974, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Family and Medical Leave Act of 1993, as amended; the Fair Labor Standards Act; the California Fair Employment and Housing Act – Cal. Gov't Code § 12900 *et seq.*; the California Family Rights Act – Cal. Gov't Code § 12945.2 *et seq.*; the California Unruh Civil Rights Act – Civ. Code § 51 *et seq.*; the California Whistleblower Protection Law – Cal. Lab. Code § 1102.5; the California Occupational Safety and Health Act, as amended – Cal. Lab. Code § 6300 *et seq.*, and any applicable regulations thereunder; the California Business and Professions, Civil, Government and Labor Code; the Labor Code Private Attorneys General Act of 2004 – Cal. Lab. Code § 2698 *et seq.*; and any other federal, state, or local civil employment law, statute, regulation, or ordinance capable of being released by them, excluding any claims that cannot be released as a matter of law.  To the extent the foregoing release is a release to which California Civil Code section 1542 or similar provisions of other applicable law may apply, Barbara Galvan, Germaine Scott, and Spynsir Tucker each expressly waives any and all rights and benefits conferred upon them by the provisions of California Civil Code section 1542 or similar provisions of applicable law which are as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM**

**OR HER MUST HAVE MATERIALLY AFFECTED HIS OR**

**HER SETTLEMENT WITH THE DEBTOR.**

Thus, notwithstanding the provisions of California Civil Code section 1542, and to implement a full and complete release and discharge, Barbara Galvan, Germaine Scott, and Spynsir Tucker each expressly acknowledge this Settlement is intended to include in its effect, without limitation, all known and unknown claims, including any claims each of them does not know or suspect to exist in her favor against the Released Parties at the time of signing this Settlement, and that this Settlement contemplates the extinguishment of any such claim or claims.  Barbara Galvan, Germaine Scott, and Spynsir Tucker each acknowledge they may later discover facts different from or in addition to those they now know or believe to be true regarding the matters released or described in this Settlement, and nonetheless agrees that the releases and agreements contained in this Settlement shall remain fully effective in all respects notwithstanding any later discovery of any different or additional facts.  Barbara Galvan, Germaine Scott, and Spynsir Tucker each assume any and all risks of any mistake in connection with the true facts involved in the matters, disputes, or controversies described in this Settlement or with regard to any facts now unknown to them relating to such matters.

99.  <u>Dismissal of the *Scott* Action</u>. Upon the Effective Date, Plaintiffs Germaine Scott and Spynsir Tucker shall dismiss the *Scott* Action with prejudice.

100.  <u>Duties of the Parties Prior to Court Approval</u>. Following execution of this Agreement the Parties shall do the following:

      a.  Class Counsel shall file an amended Notice with the LWDA to include PAGA claims on behalf of non-drivers and identifying First Management Services, LLC as an employer of Plaintiffs and other allegedly aggrieved employees.  In the event the LWDA timely notifies Plaintiff that it intends to investigate the claims in the Amended PAGA Notice this Settlement Agreement shall be null and void.

      b.  Plaintiffs will timely give notice of the settlement to the LWDA in

accordance with Labor Code § 2699(l)(2).

     c.  Defendants will timely give notice of the settlement in accordance with 28 U.S.C. § 1715(b).

101.  <u>Preliminary Approval Motion</u>.  Class Counsel shall prepare and file a Motion for Preliminary Approval of the Settlement, which motion shall not be scheduled to be heard until at least 65 days following the filing of the amended PAGA notice described above.  Plaintiffs shall request the Preliminary Approval of the Settlement Agreement, and the entry of a Preliminary Approval Order: (a) approving the Settlement subject only to the objections of Class Members and final review by the Court, (b) certifying the Settlement Class, (c) approving, as to form and content, the proposed Notice, (d) approving the manner and method for Class Members to request exclusion from the Settlement as contained herein and within the Notice, (e) directing the mailing of the Notice, by first class mail to the Class Members, (f) scheduling a fairness hearing on the question of whether the proposed Settlement, including but not limited to, payment of attorneys' fees and costs, and the Class Representative Enhancement Payments, should be finally approved as fair, reasonable, and adequate as to the members of the Settlement Class, and (g) enjoining Plaintiffs and all Class Members from filing or prosecuting any claims, suits or administrative proceedings (including filing claims with the California Division of Labor Standards Enforcement and the Labor and Workforce Development Agency) regarding the Released Claims unless and until such Class Members have filed valid Requests for Exclusion with the Settlement Administrator.  In conjunction with the Preliminary Approval hearing, Plaintiff will submit this Settlement Agreement, which sets forth the terms of this Settlement, and will include the proposed Notice Packet attached as **<u>Exhibit A</u>**.  Class Counsel will be responsible for drafting all documents necessary to obtain preliminary approval.  Defendants agree not to oppose the Motion for Preliminary Approval

102.  <u>Final Settlement Approval Hearing and Entry of Judgment</u>.  Upon expiration of the Response Deadline, and with the Court's permission, a Final Approval/Settlement

Fairness Hearing will be conducted to determine the Final Approval of the Settlement Agreement along with the amounts properly payable for (a) Individual Settlement Payments and Individual PAGA Settlement Payments; (b) the LWDA Payment; (c) the Attorneys' Fees and Costs; (d) the Class Representative Enhancement Payments; (e) all Settlement Administration Costs; and (f) the employer's share of payroll taxes for wages paid in connection with the Individual Settlement Payments.   The Final Approval/Settlement Fairness Hearing will not be held earlier than thirty (30) calendar days after the Response Deadline.   Class Counsel will be responsible for drafting all documents necessary to obtain final approval, including responding to any objections and appeals arising therefrom.   Class Counsel will also be responsible for drafting the attorneys' fees and costs application to be heard at the final approval hearing. The Settlement Administrator shall maintain on its website a section for this Settlement which includes a copy of the Motion for Preliminary Approval, along with any accompanying exhibits, and the operative Complaint.  It shall be updated after Judgment is entered with a copy of the final Judgment.

103.   <u>Escalator Clause and Rescission or Renegotiation of Settlement Agreement by Plaintiffs</u>.  The Settlement is based in part on Defendants' representation that through the end of the Driver Class Period, Driver Class Members worked approximately 940,575 Workweeks, and through the end of the Non-Driver Class Period, Non-Driver Class Members worked approximately 67,921 Workweeks (1,008,496 Workweeks in total). These calculations are based upon the records in Defendants' possession, custody or control from November 6, 2014 and extrapolated through August 10, 2023.  If it is determined from the Class List that the total number of Workweeks for both the Driver Class and Non-Driver Class combined has increased by more than ten percent (10%) (i.e., beyond 1,109,345.6 total Workweeks), the Parties shall resume negotiations in good faith regarding an increase to the Maximum Settlement Amount or modification of the close of the Class and PAGA Periods.  If the Parties cannot reach final agreement regarding and adjustment to the Maximum Settlement Amount or modification of the close of the

Class and PAGA Periods, the MOU and this Settlement Agreement shall be null and void.

104. <u>Rescission of Settlement Agreement by Defendants</u>. If more than ten percent (10%) of Class Members opt-out of the class portion of the Settlement by submitting Request for Exclusion forms, Defendants may, at their option, rescind and void the Settlement and all actions taken in furtherance of it will thereby be null and void. Defendants must exercise this right of rescission, in writing, to Class Counsel within fourteen (14) calendar days after the Settlement Administrator notifies the Parties of the total number of Requests for Exclusion received by the Response Deadline. If the option to rescind is exercised, Defendants shall be solely responsible for all costs of the Settlement Administrator accrued to that point.

105. <u>Nullification of Settlement Agreement</u>. In the event that: (a) the Court does not finally approve the Settlement as provided herein; or (b) the Settlement does not become final for any other reason, then this Settlement Agreement, and any documents generated to bring it into effect, will be null and void. Any order or judgment entered by the Court in furtherance of this Settlement Agreement will likewise be treated as void from the beginning.

106. <u>Termination of Settlement</u>. Subject to the obligation(s) of cooperation set forth herein, either Party may terminate this Settlement if the Court declines to enter the Preliminary Approval Order, the Final Approval Order or final judgment in substantially the form submitted by the Parties, or the Settlement Agreement as agreed does not become final because of appellate court action. The Terminating Party shall give to the other Party (through its counsel) written notice of its decision to terminate no later than ten (10) business days after receiving notice that one of the enumerated events has occurred. Termination shall have the following effects:

a. The Settlement Agreement shall be terminated and shall have no force or effect, and no Party shall be bound by any of its terms;

b. In the event the Settlement is terminated, Defendants shall have no obligation to make any payments to any Party, Class Member or Class Counsel, except that

the Terminating Party shall pay the Settlement Administrator for services rendered up to the date the Settlement Administrator is notified that the settlement has been terminated;

c.     The Preliminary Approval Order, Final Approval Order and Judgment, including any order of class certification, shall be vacated;

d.     The Settlement Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the Consolidated Action prior to the settlement;

e.     Neither this Settlement Agreement, nor any ancillary documents, actions, statements or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Consolidated Action or any other action for any purpose whatsoever.

f.     The FACC shall be withdrawn.

107.   <u>Judgment and Continued Jurisdiction</u>.  Upon final approval of the Settlement by the Court or after the Final Approval/Settlement Fairness Hearing, the Parties will present the Judgment pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to the Court for its approval.  After entry of the Judgment, the Court will have continuing jurisdiction solely for purposes of addressing: (a) the interpretation and enforcement of the terms of the Settlement, (b) Settlement administration matters, and (c) such post-Judgment matters as may be appropriate under court rules or as set forth in this Agreement.

108.   <u>Exhibits Incorporated by Reference</u>.  The terms of this Agreement include the terms set forth in any attached Exhibits, which are incorporated by this reference as though fully set forth herein.  Any Exhibits to this Agreement are an integral part of the Settlement.

109.   <u>Confidentiality</u>.  The Parties and their counsel agree that they will not issue any media or press releases, initiate any contact with the media or press, respond to any media or press inquiry, or have any communication with the media or press about the

fact, amount, or terms of the Settlement.  In addition, the Parties and their counsel agree that they will not engage in any advertising or distribute any marketing materials relating to the Settlement of this case.  The Class Representatives and Class Counsel will not make any public disclosure of the Settlement or the Confidential MOU through the filing of a motion for preliminary approval by the court.  Class Counsel will take all steps necessary to ensure the Class Representatives are aware of, and will instruct the Class Representatives to adhere to, the restrictions set forth in this paragraph.    Any communication about the Settlement to Class Members prior to the Court-approved mailing will be limited to a statement that a settlement has been reached and the details will be communicated in a forthcoming Court-approved notice.  Nothing set forth herein, however, shall prohibit the parties from providing this Agreement to the Court in connection with the Parties' efforts to seek the Court's approval of this Settlement. Neither Plaintiffs nor Class Counsel shall hold a press conference or otherwise seek to affirmatively contact the media about the Settlement.  Plaintiffs and Class Counsel agree not to disparage or otherwise take any action which could reasonably be expected to adversely affect the personal or professional reputation of Defendants or the Settlement.

110.    <u>Other Lawsuits</u>.  To the fullest extent permissible under applicable law, and solely for the purposes of this Settlement Agreement and not for any other purpose, counsel for Plaintiffs represent and warrant on behalf of themselves and all others acting on their behalf, that they: (i) have not been retained by any other individuals with claims against Defendants (other than those of which Defendants and/or its counsel have been advised); and (ii) are not aware of, and have not been informed of, any other plaintiff, class member, or attorney who intends to bring a claim against Defendants including, but not limited to, any claim based on the subject matter of the Consolidated Action.  Nothing in the foregoing is intended to limit or restrict Plaintiffs' counsel's ability to practice law, or to otherwise violate California Rules of Professional Conduct, Rule 1-500.  To the extent any portion of this paragraph is found to violate Rule 1-500, or any other Rule of Professional Conduct, such offending language will be deem stricken and will be treated

as if it is of no force and effect.

111. <u>Entire Agreement</u>.  This Settlement Agreement and any attached Exhibits constitute the entirety of the Parties' settlement terms.  No other prior or contemporaneous written or oral agreements may be deemed binding on the Parties.  The Parties expressly recognize California Civil Code section 1625 and California Code of Civil Procedure section 1856(a), which provide that a written agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence, and the Parties agree that no such extrinsic oral or written representations or terms will modify, vary or contradict the terms of this Agreement.

112. <u>Amendment or Modification</u>.  This Settlement Agreement may be amended or modified only by a written instrument signed by the named Parties and counsel for all Parties or their successors-in-interest.

113. <u>Authorization to Enter Into Settlement Agreement</u>.  Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Settlement Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate its terms and to execute any other documents required to effectuate the terms of this Settlement Agreement.  The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.  If the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may seek the assistance of the Court to resolve such disagreement.

114. <u>Signatories</u>.  It is agreed that because the members of the Class are so numerous, it is impossible or impractical to have each member of the Class execute this Settlement Agreement.  The Notice, attached hereto as **<u>Exhibit A</u>**, will advise all Class Members of the binding nature of the release, and the release shall have the same force and effect as if this Settlement Agreement were executed by each member of the Class.

115. <u>Binding on Successors and Assigns</u>. This Settlement Agreement will be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

116. <u>California Law Governs</u>. All terms of this Settlement Agreement and Exhibits hereto will be governed by and interpreted according to the laws of the State of California.

117. <u>Execution and Counterparts</u>. This Settlement Agreement is subject only to the execution of all Parties. However, the Agreement may be executed in one or more counterparts. All executed counterparts and each of them, including facsimile and scanned copies of the signature page, will be deemed to be one and the same instrument provided that counsel for the Parties will exchange among themselves original signed counterparts.

118. <u>Acknowledgement that the Settlement is Fair and Reasonable</u>. The Parties believe this Settlement Agreement is a fair, adequate, and reasonable settlement of the Consolidated Action and have arrived at this Settlement after arm's-length negotiations and in the context of adversarial litigation, taking into account all relevant factors, present and potential. The Parties further acknowledge that they are each represented by competent counsel and that they have had an opportunity to consult with their counsel regarding the fairness and reasonableness of this Agreement.

119. <u>Invalidity of Any Provision</u>. Before declaring any provision of this Settlement Agreement invalid, the Court will first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Settlement Agreement valid and enforceable.

120. <u>Plaintiffs' Waiver of Right to Be Excluded and Object</u>. Plaintiffs agree to sign this Settlement Agreement and, by signing this Settlement Agreement, are hereby bound by the terms herein. For good and valuable consideration, Plaintiffs further agree that Plaintiffs will not request to be excluded from the Settlement Agreement, nor object to any terms herein. Any such request for exclusion or objection by Plaintiffs will be

void and of no force or effect.  Any efforts by Plaintiffs to circumvent the terms of this paragraph will be void and of no force or effect.

121.  <u>Waiver of Certain Appeals</u>.  The Parties agree to waive appeals and to stipulate to class certification for purposes of this Settlement only; except, however, that Plaintiffs or Class Counsel may appeal any reduction in the Attorneys' Fees and Costs below the amount requested from the Court, and either Party may terminate this Settlement or appeal any Court order which is not in substantially the form submitted by the Parties.

122.  <u>Non-Admission of Liability</u>.  The Parties enter into this Agreement to resolve the dispute that has arisen between them and to avoid the burden, expense and risk of continued litigation.  In entering into this Agreement, Defendants do not admit, and specifically deny, they have violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations or legal requirements; breached any contract; violated or breached any duty; engaged in any misrepresentation or deception; or engaged in any other unlawful conduct with respect to their employees.  Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendants of any such violations or failures to comply with any applicable law.  Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of Defendants or to establish the existence of any condition constituting a violation of, or a non-compliance with, federal, state, local or other applicable law.

123.  <u>Captions</u>.  The captions and section numbers in this Agreement are inserted for the reader's convenience, and in no way define, limit, construe or describe the scope or intent of the provisions of this Agreement.

124.  <u>Waiver</u>.  No waiver of any condition or covenant contained in this Agreement or failure to exercise a right or remedy by any of the Parties hereto will be

considered to imply or constitute a further waiver by such party of the same or any other condition, covenant, right or remedy.

125.   <u>Enforcement Actions</u>.  In the event that one or more of the Parties institute any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Settlement or to declare rights and/or obligations under this Settlement, the successful Party or Parties will be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

126.   <u>Mutual Preparation</u>.  The Parties have had a full opportunity to negotiate the terms and conditions of this Agreement.  Accordingly, this Agreement will not be construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Agreement.

127.   <u>Representation By Counsel</u>.  The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement, and that this Agreement has been executed with the consent and advice of counsel, and reviewed in full.  Further, Plaintiffs and Class Counsel warrant and represent that there are no liens on the Settlement Agreement.

128.   <u>All Terms Subject to Final Court Approval</u>.  All amounts and procedures described in this Settlement Agreement herein will be subject to final Court approval.

129.   <u>Notices</u>.  Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

<u>To Plaintiffs and the Settlement Class</u>:

Shaun Setareh
William M. Pao
SETAREH LAW GROUP

9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212

Joseph Lavi
Vincent C. Granberry
LAVI & EBRAHIMIAN, LLP
8889 West Olympic Boulevard, Suite 200
Beverly Hills, CA 90211

Mark R. Thierman
Joshua D. Buck
Leah L. Jones
Joshua R. Hendrickson
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511

Jim Zouras
STEPHAN ZOURAS, LLP
222 W. Adams Street, Suite 2020
Chicago, IL 60606

<u>To Defendants</u>:

David J. Dow
Jocelyn D. Hannah
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, California 92101

130.  <u>Cooperation and Execution of Necessary Documents</u>.   All Parties will cooperate in good faith and execute all documents to the extent reasonably necessary to effectuate the terms of this Settlement Agreement.

131.  <u>Integration Clause</u>.   This Settlement Agreement contains the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

132.  <u>Binding Agreement</u>.  The Parties warrant that they understand and have full authority to enter into this Agreement, and further intend that this Agreement will be fully enforceable and binding on all parties, and agree that it will be admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding any mediation confidentiality provisions that otherwise might apply under federal or state law.

IN WITNESS WHEREOF, the Parties hereto knowingly and voluntarily executed this Joint Stipulation of Settlement and Release Between Plaintiffs and Defendants as of the date(s) set forth below:

### SIGNATURES

### READ CAREFULLY BEFORE SIGNING

**PLAINTIFF:** Barbara Galvan

Dated: _12/1/2023_ _____

ID BQww39TosV6Ekawp0tsuzeoH

Barbara Galvan

**PLAINTIFF:** Germaine Scott

Dated: _____ _____

Germaine Scott

**PLAINTIFF:** Spynsir Tucker

Dated: _____ _____

Spynsir Tucker

**DEFENDANT:** First Student Management, LLC

Dated: _____ _____

_____

Please Print Name of Authorized Signatory

**DEFENDANT:** First Management Services, LLC

Dated: _____ _____

_____

Please Print Name of Authorized Signatory

IN WITNESS WHEREOF, the Parties hereto knowingly and voluntarily executed this Joint Stipulation of Settlement and Release Between Plaintiffs and Defendants as of the date(s) set forth below:

<u>**SIGNATURES**</u>

**READ CAREFULLY BEFORE SIGNING**

**PLAINTIFF:** Barbara Galvan

Dated: _____

_____
Barbara Galvan

**PLAINTIFF:** Germaine Scott

Dated: 11/21/2023

_____
Germaine Scott

**PLAINTIFF:** Spynsir Tucker

Dated: 11/21/2023

_____
Spynsir Tucker

**DEFENDANT:** First Student Management, LLC

Dated: _____

_____

_____
Please Print Name of Authorized Signatory

**DEFENDANT:** First Management Services, LLC

Dated: _____

_____

_____
Please Print Name of Authorized Signatory

1    IN WITNESS WHEREOF, the Parties hereto knowingly and voluntarily

2  executed this Joint Stipulation of Settlement and Release Between Plaintiffs and

3  Defendants as of the date(s) set forth below:

4                              **SIGNATURES**

5                    **READ CAREFULLY BEFORE SIGNING**

6

7                              **PLAINTIFF:** Barbara Galvan

8  Dated: _____         _____

9                              Barbara Galvan

10                             **PLAINTIFF:** Germaine Scott

11 Dated: _____         _____

12                             Germaine Scott

13                             **PLAINTIFF:** Spynsir Tucker

14 Dated: _____         _____

15                             Spynsir Tucker

16

17                             **DEFENDANT:** First Student Management, LLC

18 Dated:  November 29, 2023        _____

19

20                             Michael Petrucci, SVP, General Counsel & Secretary

21                             Please Print Name of Authorized Signatory

22                             **DEFENDANT:** First Management Services, LLC

23

24 Dated:  November 29, 2023        _____

25

26                             Michael Petrucci, SVP, General Counsel & Secretary

27                             Please Print Name of Authorized Signatory

28

42

1

2     Dated:   November 29, 2023

3

4

5

6

7     Dated:   November 29, 2023

8

9

10

11 **APPROVED AS TO FORM:**

12

13     Dated: _____

14

15

16

17

18     Dated: _____

19

20

21

22

23     Dated: _____

24

25

26

27

28

**DEFENDANT:** First Student, Inc.

_____

Michael Petrucci, SVP, General Counsel & Secretary
Please Print Name of Authorized Signatory

**DEFENDANT:** FirstGroup America, Inc.

_____

Michael Petrucci, SVP, General Counsel & Secretary
Please Print Name of Authorized Signatory

**SETAREH LAW GROUP**

_____

Shaun Setareh
William M. Pao
Attorneys for Plaintiff Barbara Galvan

**LAVI & EBRAHIMIAN, LLP**

_____

Joseph Lavi
Vincent C. Granberry
Attorneys for Plaintiff Cynthia Provencio

**THIERMAN BUCK LLP**

_____

Mark R. Thierman
Joshua D. Buck
Lea L. Jones
Joshua R. Hendrickson
Attorneys for Plaintiffs Germaine Scott and
Spynsir Tucker

43

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT:** First Student, Inc.

Dated: _____     _____

_____
Please Print Name of Authorized Signatory

**DEFENDANT:** FirstGroup America, Inc.

Dated: _____     _____

_____
Please Print Name of Authorized Signatory

**APPROVED AS TO FORM:**

**SETAREH LAW GROUP**

Dated: 12-1-23

Shaun Setareh
William M. Pao
Attorneys for Plaintiff Barbara Galvan

**LAVI & EBRAHIMIAN, LLP**

Dated: _____     _____

Joseph Lavi
Vincent C. Granberry
Attorneys for Plaintiff Cynthia Provencio

**THIERMAN BUCK LLP**

Dated: _____     _____

Mark R. Thierman
Joshua D. Buck
Lea L. Jones
Joshua R. Hendrickson
Attorneys for Plaintiffs Germaine Scott and
Spynsir Tucker

1          **DEFENDANT:** First Student, Inc.

2     Dated: _____     _____

3

4                                        _____

5                                        Please Print Name of Authorized Signatory

6          **DEFENDANT:** FirstGroup America, Inc.

7     Dated: _____     _____

8

9                                        _____

          Please Print Name of Authorized Signatory

10

**APPROVED AS TO FORM:**

11

12                                       **SETAREH LAW GROUP**

13    Dated: _____     _____

14                                       Shaun Setareh

15                                       William M. Pao

                                         Attorneys for Plaintiff Barbara Galvan

16

17                                       **LAVI & EBRAHIMIAN, LLP**

18    Dated: December 4, 2023            *Joseph Lavi*
                                         871E0169FCF244D...
19                                       Joseph Lavi

                                         Vincent C. Granberry

20                                       Attorneys for Plaintiff Cynthia Provencio

21                                       **THIERMAN BUCK LLP**

22

23    Dated: _____     _____

24                                       Mark R. Thierman

                                         Joshua D. Buck

25                                       Lea L. Jones

                                         Joshua R. Hendrickson

26                                       Attorneys for Plaintiffs Germaine Scott and

                                         Spynsir Tucker

27

28

                                         43

1

**DEFENDANT:** First Student, Inc.

2

Dated: _____

3

_____

4

_____

Please Print Name of Authorized Signatory

5

**DEFENDANT:** FirstGroup American, Inc.

6

7

Dated: _____

_____

8

9

_____

Please Print Name of Authorized Signatory

10

**APPROVED AS TO FORM:**

11

12

**SETAREH LAW GROUP**

13

Dated: _____

_____

14

Shaun Setareh

15

William M. Pao

Attorneys for Plaintiff Barbara Galvan

16

**LAVI & EBRAHIMIAN, LLP**

17

18

Dated: _____

_____

19

Joseph Lavi

Vincent C. Granberry

20

Attorneys for Plaintiff Cynthia Provencio

21

**THIERMAN BUCK LLP**

22

Dated:   11/21/2023   _____

23

C28E777BC5444AC...

Mark R. Thierman

24

Joshua D. Buck

25

Lea L. Jones

Joshua R. Hendrickson

26

Attorneys for Plaintiffs Germaine Scott and

Spynsir Tucker

27

28

43

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

CASE NO. 4:18-CV-7378-JST

1

2  Dated:  ___11/21/2023___

3

4

5

6

7  Dated:  _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STEPHAN ZOURAS, LLP**

*James B. Zouras*

Jim Zouras
Attorneys for Plaintiffs Germaine Scott and
Spynsir Tucker

**LITTLER MENDELSON, P.C.**

_____

David J. Dow
Jocelyn D. Hannah
Attorneys for Defendant
First Student Management, LLC

**STEPHAN ZOURAS, LLP**

Dated: _____

_____
Jim Zouras
Attorneys for Plaintiffs Germaine Scott and
Spynsir Tucker

**LITTLER MENDELSON, P.C.**

Dated: November 29, 2023       *David Dow*

_____
David J. Dow
Jocelyn D. Hannah
Attorneys for Defendants
First Student Management, LLC;
FIRST MANAGEMENT SERVICES, LLC;
FIRST STUDENT, INC.; and
FIRSTGROUP AMERICA, INC.

4884-1510-7988.1 / 070991-1166

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE
CASE NO. 4:18-CV-7378-JST

EXHIBIT A

**COURT-APPROVED NOTICE OF CLASS ACTION SETTLEMENT
AND FINAL APPROVAL HEARING DATE**

GALVAN et al. v. FIRST STUDENT MANAGEMENT, LLC, et al. (CASE NO. 4:18-CV-7378-JST)

*The Federal District Court, Northern District of California authorized this Notice.
Read it carefully!
It is not junk mail, spam, an advertisement, or solicitation by a lawyer. You are not being sued.*

**You may be eligible to receive money** from an employee class action lawsuit titled *Galvan, et al. v. First Student Management, LLC, et al,* for alleged wage and hour violations ("the Action"). The Action was filed by former First Student employees ("Plaintiffs") and seeks payment of: (1) back wages and other relief for two classes of non-exempt employees (collectively, "Class Members") who worked as drivers ("Driver Class Members") and/or non-drivers ("Non-Driver Class Members") for First Student Management, LLC, First Student, Inc., FirstGroup America, Inc. and/or First Management Services, LLC during the Driver Class Period from <u>November 6, 2014</u> to <u>November 8, 2023</u> and during the Non-Driver Class Period from <u>August 1, 2019</u> to <u>November 8, 2023;</u> and (2) penalties under the California Private Attorney General Act ("PAGA") for all non-exempt drivers and non-drivers who worked for First Management Services, LLC during the Driver PAGA Period from <u>November 6, 2017</u> to <u>November 8, 2023</u> and during the Non-Driver PAGA Period from <u>August 1, 2022</u> to <u>November 8, 2023</u> (collectively, "Aggrieved Employees"). For the purposes of this Notice, First Student Management, LLC, First Student, Inc., FirstGroup America, Inc. and First Management Services, LLC shall be referred to here as the "Company."

The proposed Settlement has two main parts: (1) a Class Settlement requiring Company to fund Individual Class Payments, and (2) a PAGA Settlement requiring Company to fund Individual PAGA Payments and pay penalties to the California Labor and Workforce Development Agency ("LWDA").

Based on the Company's records, and the Parties' current assumptions, your estimated payments are as follows:
**Individual Driver Class Payment (less withholding): $_____**
**Individual Non-Driver Class Payment (less withholding): $_____**
**Individual Driver PAGA Payment: $_____**
**Individual Non-Driver PAGA Payment: $_____**

The actual amount you may receive likely will be different and will depend on several factors. (If no amount is stated for either of your Individual PAGA Payments, then according to the Company's records you are not eligible for the respective Individual PAGA Payment under the Settlement because you did not work as either a driver or non-driver during the respective PAGA Period.)

The above estimates are based on the Company's records showing that:
**You worked _____ Workweeks** as a driver during the Driver Class Period;
**You worked _____ Workweeks** as a non-driver during the Non-Driver Class Period;
**You worked _____ Pay Periods** as a driver during the Driver PAGA Period; and
**You worked _____ Pay Periods** as a non-driver during the Non-Driver PAGA Period.

If you believe you worked more workweeks during any of the periods, you can submit a challenge by the deadline date.  See Section **4** of this Notice.

The Court has preliminarily approved the proposed Settlement and this Notice.  The Court has not yet decided whether to grant final approval.  Your legal rights are affected whether you act or not act.  Read this Notice carefully.  You will be deemed to have carefully read and understood it.  At the Final Approval Hearing, the Court will decide whether to finally approve the Settlement and how much of the Settlement will be paid to Plaintiffs and Plaintiffs' attorneys ("Class Counsel").  The Court will also decide whether to enter a judgment that requires the Company to make payments under the Settlement and requires Class Members and Aggrieved Employees to give up their rights to assert certain claims against the Company.

If you worked for the Company during the Class and/or PAGA Periods, you have two basic options under the Settlement:

(1) **Do Nothing**.  You do not have to do anything to participate in the proposed Settlement and be eligible for an Individual Class Payment and/or an Individual PAGA Payment. As a Participating Class Member, though, you will give up your right to assert Class Period wage claims and PAGA Period penalty claims against the Company.

(2) **Opt-Out of the Class Settlement**.  You can exclude yourself from the Class Settlement (opt-out) by submitting the written Request for Exclusion or otherwise notifying the Administrator in writing.  If you opt-out of the Settlement, you will not receive an Individual Class Payment.  You will, however, preserve your right to personally pursue Class Period wage claims against the Company, and, if you are an Aggrieved Employee, remain eligible for an Individual PAGA Payment.  You cannot opt-out of the PAGA portion of the proposed Settlement.

**The Company will not retaliate against you for any actions you take with respect to the proposed Settlement.**

**SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT**

| | |
|---|---|
| **You Do not Have to Do Anything to Participate in the Settlement** | If you do nothing, you will be a Participating Class Member, eligible for an Individual Class Payment and an Individual PAGA Payment (if any). In exchange, you will give up your right to assert the wage claims against the Company that are covered by this Settlement (Released Claims). |
| **You Can Opt-out of the Class Settlement but not the PAGA Settlement**<br><br>**The Opt-out Deadline is** �yellow | If you do not want to fully participate in the proposed Settlement, you can opt-out of the Class Settlement by sending the Administrator a written Request for Exclusion.  Once excluded, you will be a Non-Participating Class Member and no longer eligible for an Individual Class Payment.  Non-Participating Class Members cannot object to any portion of the proposed Settlement. See Section **6** of this Notice.<br><br>You cannot opt-out of the PAGA portion of the proposed Settlement.  The Company must pay Individual PAGA Payments to all Aggrieved Employees and the Aggrieved Employees must give up their rights to pursue Released Claims (defined below). |
| **Participating Class Members Can Object to the Class Settlement but not the PAGA Settlement**<br><br>**Written Objections Must be Submitted by** �yellow | All Class Members who do not opt-out ("Participating Class Members") can object to any aspect of the proposed Class Settlement that they believe is unfair or unreasonable.  See Section **7** of this Notice. |
| **You Can Participate in the** �yellow **Final Approval Hearing** | The Court's Final Approval Hearing is scheduled to take place on �implyellow. You do not have to attend but you do have the right to appear (or hire an attorney to appear on your behalf at your own cost), in person, by telephone or by using the Court's virtual appearance platform.  Participating Class Members can verbally object to the Settlement at the Final Approval Hearing.  See Section **8** of this Notice. |
| **You Can Challenge the Calculation of Your Workweeks/Pay Periods**<br><br>**Written Challenges Must be Submitted by** ▼yellow | The amount of your Individual Class Payment and PAGA Payment (if any) depends on how many Workweeks you worked at least one day in the Class Period(s) and how many Pay Periods you worked at least one day in the PAGA Period(s), respectively.  The number Class Period Workweeks and number of PAGA Period Pay Periods you worked according to the Company's records is stated on the first page of this Notice.  If you disagree with any of these numbers, you must challenge it by ▼yellow.  See Section **4** of this Notice. |

### 1. WHAT IS THE ACTION ABOUT?

Plaintiffs are former Company employees.  The Action accuses the Company of violating California labor laws by failing to pay overtime wages, minimum wages, wages due upon termination and reimbursable expenses and failing to provide meal periods, rest breaks and accurate itemized wage statements.  Based on the same claims, Plaintiffs have also asserted a claim for civil penalties under PAGA.

### 2. WHAT DOES IT MEAN THAT THE ACTION HAS SETTLED?

So far, the Court has made no determination whether the Company or Plaintiffs are correct on the merits. In the meantime, Plaintiffs and the Company hired an experienced, neutral mediator to resolve the Action by negotiating to end the case by agreement (settle the case) rather than continuing the expensive and time-consuming process of litigation.  The negotiations were successful.  By signing a lengthy written settlement agreement ("Agreement") and agreeing to jointly ask the Court to enter a judgment ending the Action and enforcing the Agreement, Plaintiffs and the Company have negotiated a proposed Settlement that is subject to the Court's Final Approval.  Both sides agree the proposed Settlement is a compromise of disputed claims.  By agreeing to settle, the Company does not admit any violations or concede the merit of any claims.

Plaintiffs and Class Counsel strongly believe the Settlement is a good deal for you because they believe that: (1) the Company has agreed to pay a fair, reasonable, and adequate amount considering the strength of the claims and the risk and uncertainty of continued litigation; and (2) Settlement is in the best interests of the Class Members and Aggrieved Employees.  The Court preliminarily approved the proposed Settlement as fair, reasonable and adequate, authorized this Notice, and scheduled a hearing to determine Final Approval.

### 3. WHAT ARE THE IMPORTANT TERMS OF THE PROPOSED SETTLEMENT?

a. The Company Will Pay $3,500,000 as the Gross Settlement Amount ("Gross Settlement").  The Company has agreed to deposit the Gross Settlement into an account controlled by the Administrator of the Settlement.  The Administrator will use the Gross Settlement to pay the Individual Class Payments, Individual PAGA Payments, Class Representative Service Payment, Class Counsel's attorney's fees and expenses, the Administrator's expenses, and penalties to be paid to the California Labor and Workforce Development Agency ("LWDA"). Assuming the Court grants Final Approval, the Company will fund the Gross Settlement not more than 45 days after the Judgment entered by the Court becomes final.

b. Court Approved Deductions from Gross Settlement.  At the Final Approval Hearing, Plaintiffs and/or Class Counsel will ask the Court to approve the following deductions from the Gross Settlement, the amounts of which will be decided by the Court at the Final Approval Hearing:

i. Up to $1,166,666.66 (one-third of the Gross Settlement) to Class Counsel for attorneys' fees and an additional amount for their litigation expenses. To date, Class Counsel have worked and incurred expenses on the Action without payment.

    ii.  Up to $20,000 total as Class Representative Awards to the three Named Plaintiffs for filing the Action, working with Class Counsel and representing the Class. The Class Representative Awards will be the only monies Plaintiffs will receive other than Plaintiffs' Individual Class Payments and any Individual PAGA Payments.

    iii.  Up to $61,900 to the Administrator for services administering the Settlement.

    iv.  Up to $250,000 for PAGA Penalties, allocated:
1. 75% ($187,500) to the LWDA PAGA Payment;
2. 22.5% ($56,250) in Individual PAGA Payments to Aggrieved Employees who were drivers based on their Driver PAGA Period Pay Periods; and
3. 2.5% ($6,250) in Individual PAGA Payments to Aggrieved Employees who were non-drivers based on their Non-Driver PAGA Period Pay Periods.

Participating Class Members have the right to object to any of these deductions, with the exception of the PAGA Penalties.  The Court will consider all objections.

c.  <u>Net Settlement Distributed to Class Members</u>.  After making the above deductions in amounts approved by the Court, the Administrator will distribute the rest of the Gross Settlement (the "Net Settlement") by making Individual Class Payments to Participating Class Members based on their Class Period Workweeks. The Net Settlement shall be allocated 90% to Class Members who were drivers and 10% to Class Members who were non-drivers.

d.  <u>Taxes Owed on Payments to Class Members</u>.  The Settlement shall be broken down as follows:  35% ("Wage Portion") of each Individual Class Payment to taxable wages and 65% ("Non-Wage Portion") to penalties and interest. The Wage Portion is subject to withholding and will be reported on IRS W-2 Forms. The Company will separately pay employer payroll taxes it owes on the Wage Portion. The Individual PAGA Payments are counted as penalties rather than wages for tax purposes. The Administrator will report the Individual PAGA Payments and the Non-Wage Portions of the Individual Class Payments on IRS 1099 Forms. Although Plaintiffs and the Company have agreed to these allocations, neither side is giving you any advice on whether your Payments are taxable or how much you might owe in taxes. You are responsible for paying all taxes (including penalties and interest on back taxes) on any Payments received from the proposed Settlement.  You should consult a tax advisor if you have any questions about the tax consequences of the proposed Settlement.

e.  <u>Need to Promptly Cash Payment Checks</u>.  The front of every check issued for Individual Class Payments and Individual PAGA Payments will show the date when the check expires (the void date).  If you do not cash it by the void date, your check will be automatically cancelled, and the monies will be deposited with the California

Controller's Unclaimed Property Fund in your name. If the monies represented by your check are sent to the Controller's Unclaimed Property, you should consult the rules of the Fund for instructions on how to retrieve your money.

f.   <u>Requests for Exclusion from the Class Settlement (Opt-Outs)</u>.  You will be treated as a Participating Class Member, participating fully in the Class Settlement, unless you notify the Administrator in writing, not later than _____, that you wish to opt-out. The easiest way to notify the Administrator is to send a written and signed Request for Exclusion by the Response Deadline. The Request for Exclusion should be a signed letter from a Class Member setting forth (a) a Class Member's name, present address, telephone number, last four digits of his/her social security number, and (b) a simple statement that the Class Member received the Notice and wants to be excluded from the class portion of the Settlement. Excluded Class Members (i.e., Non-Participating Class Members) will not receive Individual Class Payments but will preserve their rights to personally pursue wage and hour claims against the Company.

g.   You cannot opt-out of the PAGA portion of the Settlement.  Class Members who exclude themselves from the Class Settlement (Non-Participating Class Members) remain eligible for Individual PAGA Payments and are required to give up their right to assert PAGA claims against the Company based on the PAGA Period facts alleged in the Action.

h.   <u>The Proposed Settlement Will be Void if the Court Denies Final Approval</u>.  It is possible the Court will decline to grant Final Approval of the Settlement or decline enter a judgment.  It is also possible the Court will enter a judgment that is reversed on appeal. Plaintiffs and the Company have agreed that, in either case, the Settlement will be void:  the Company will not pay any money and Class Members will not release any claims against the Company.

i.   <u>Administrator</u>.  The Court has appointed a neutral company, ILYM Group, Inc. (the "Administrator") to send this Notice, calculate and make payments, and process Class Members' Requests for Exclusion.  The Administrator will also decide Class Member challenges over Workweeks, mail and re-mail settlement checks and tax forms, and perform other tasks necessary to administer the Settlement.  The Administrator's contact information is contained in Section 9 of this Notice.

## 4.  WHAT CLAIMS ARE BEING RELEASED IN THE SETTLEMENT?

a.   <u>Participating Class Members' Release</u>.  After the Judgment is final and the Company has fully funded the Gross Settlement and separately paid all employer payroll taxes, Participating Class Members will be legally barred from asserting any of the claims released under the Settlement.  This means that unless you opted out by validly excluding yourself from the Class Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Company or related entities for wages based on the Class Period facts and PAGA penalties based on PAGA Period facts, as alleged in the Action, and resolved by this Settlement.  The Participating Class Members will be bound by the following release:

All Participating Class Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from any and all claims, debts, rights, demands, obligations or liabilities of every nature and description, for damages, premiums, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief arising during the applicable Class Period and alleged in the operative Complaint, or which could have been alleged based on the facts pled in the operative Complaint, including without limitation claims relating to: (i) the alleged failure to pay for all hours worked, (ii) the alleged failure to correctly pay overtime wages, (iii) the alleged failure to provide meal periods or pay meal period premiums at the regular rate of pay, (iv) the alleged failure to provide rest periods or pay rest period premiums at the regular rate of pay, (v) the alleged failure to provide complete and accurate wage statements, and (vi) the alleged failure to timely pay wages during employment, (vii) the alleged failure timely pay all wages owed to employees who quit or are terminated, (vii) the alleged failure to reimburse for business expenses, (ix) the alleged failure to maintain accurate time and payroll records, (x) the alleged failure to pay minimum wages, and (xi) claims for interest and any other claims and penalties premised on the aforementioned allegations. "Released Claims" includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, premiums, penalties, fines, lines, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages, whether under federal law, California law or any state law or common law, including, without limitations, as violations of the California Labor Code, the Wages Orders, applicable regulations, and any and all claims under the Fair Labor Standards Act. "Released Parties" means: (i) First Student, Inc., FirstGroup America, Inc., First Student Management Services, LLC, First Management Services, LLC; (ii) each of their past, present and future parents, subsidiaries, divisions, concepts, related and affiliate companies including, without limitation, any corporation, limited liability company, partnership, trust, foundation, and non-profit entity which controls, is controlled by, or is under common control with each of them; (iii) their past, present and future shareholders, directors, officers, agents, employees, attorneys, insurers, members, partners, managers, contractors, agents, consultants, representatives, administrators, payroll service providers, fiduciaries, benefit plans, transferees, predecessors, successors, and assigns of any of the foregoing; and (iv) any individual or entity which could be jointly liable with any of the foregoing.

b. <u>Aggrieved Employees' PAGA Release</u>.  After the Court's judgment is final, and the Company has paid the Gross Settlement (and separately paid the employer-side payroll taxes), all Aggrieved Employees will be barred from asserting PAGA claims against the Company, whether or not they exclude themselves from the Settlement. This means that all Aggrieved Employees, including those who are Participating Class Members and those who opt-out of the Class Settlement, cannot sue, continue to sue, or participate in any other PAGA claim against the Company or its related entities based on the PAGA Period facts alleged in the Action and resolved by this Settlement. The Aggrieved Employees' Releases for Participating and Non-Participating Class

Members are as follows:

All Participating and Non-Participating Class Members who are Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties, from any and all PAGA claims arising during the applicable PAGA Period and alleged in the operative Complaint and/or Plaintiffs' letters to the LWDA, or which could have been alleged based on the facts pled in the operative Complaint and/or alleged in Plaintiffs' letters to the LWDA, including without limitation PAGA claims relating to: (i) the alleged failure to pay for all hours worked, (ii) the alleged failure to correctly pay overtime wages, (iii) the alleged failure to provide meal periods or pay meal period premiums at the regular rate of pay, (iv) the alleged failure to provide rest periods or pay rest period premiums at the regular rate of pay, (v) the alleged failure to provide complete and accurate wage statements, and (vi) the alleged failure to timely pay wages during employment, (vii) the alleged failure timely pay all wages owed to employees who quit or are terminated, (vii) the alleged failure to reimburse for business expenses, (ix) the alleged failure to maintain accurate time and payroll records, (x) the alleged failure to pay minimum wages, and (xi) any other PAGA claims premised on the aforementioned allegations.

## 5. HOW WILL THE ADMINISTRATOR CALCULATE MY PAYMENT?

a. <u>Individual Driver Class Payments</u>.  The Administrator will calculate Individual Driver Class Payments by (a) dividing 90% of the Net Settlement Amount by the total number of Driver Workweeks worked by all Participating Driver Class Members, and (b) multiplying the result by the number of Driver Workweeks worked by each individual Participating Driver Class Member.

b. <u>Individual Non-Driver Class Payments</u>.  The Administrator will calculate Individual Non-Driver Class Payments by (a) dividing 10% of the Net Settlement Amount by the total number of Non-Driver Workweeks worked by all Participating Non-Driver Class Members, and (b) multiplying the result by the number of Non-Driver Workweeks worked by each individual Participating Non-Driver Class Member.

c. <u>Individual Driver PAGA Payments</u>.  The Administrator will calculate Individual Driver PAGA Payments by (a) dividing $56,250 by the total number of Driver PAGA Pay Periods worked by all Aggrieved Employees who were drivers and (b) multiplying the result by the number of Driver PAGA Period Pay Periods worked by each individual Aggrieved Employee who was a driver.

d. <u>Individual Non-Driver PAGA Payments</u>.  The Administrator will calculate Individual Non-Driver PAGA Payments by (a) dividing $6,250 by the total number of Non-Driver PAGA Pay Periods worked by all Aggrieved Employees who were non-drivers and (b) multiplying the result by the number of Non-Driver PAGA Period Pay Periods worked by each individual Aggrieved Employee who was a non-driver.

    e.  <u>Workweek/Pay Period Challenges</u>.  The number of Class Workweeks you worked during the Class Periods and the number of PAGA Pay Periods you worked during the PAGA Periods, as recorded in the Company's records, are stated on the first page of this Notice. You have until _____ to challenge the number of Workweeks and/or Pay Periods credited to you. You can submit your challenge by signing and sending a letter to the Administrator via mail, email, or fax. Section **9** of this Notice has the Administrator's contact information.

        You need to support your challenge by sending copies of pay stubs or other records. The Administrator will accept the Company's calculation of Workweeks and/or Pay Periods based on the Company's records as accurate unless you send copies of records containing contrary information.  You should send copies rather than originals because the documents will not be returned to you. The Administrator will resolve Workweek and/or Pay Period challenges based on your submission and on input from Class Counsel (who will advocate on behalf of Participating Class Members) and the Company's Counsel.  The Administrator's decision is final.  You cannot appeal or otherwise challenge its final decision.

## 6.  HOW WILL I BE PAID?

    a.  <u>Participating Class Members</u>.  The Administrator will send, by U.S. mail, a single check to every Participating Class Member (i.e., every Class Member who does not opt-out) including those who also qualify as Aggrieved Employees.  The single check will combine the Individual Class Payments and the Individual PAGA Payments.

    b.  <u>Non-Participating Class Members</u>.  The Administrator will send, by U.S. mail, a single Individual PAGA Payment check to every Aggrieved Employee who opts out of the Class Settlement (i.e., every Non-Participating Class Member).

**Your check will be sent to the same address as in this Notice.  If you change your address, be sure to notify the Administrator as soon as possible.  Section 9 of this Notice has the Administrator's contact information.**

## 7.  HOW CAN I OPT-OUT OF THE CLASS SETTLEMENT?

Submit a written and signed letter with your name, present address, telephone number, and last four digits of your social security number with a simple statement that you do not want to participate in the class portion of the Settlement. The Administrator will exclude you based on any writing communicating your request be excluded that is signed by you and includes your identifying information (full name, address, telephone number, and last four digits of your social security number for verification purposes). You must identify the action as *Galvan v. First Student Management, LLC*. You must make the request yourself. If someone else makes the request for you, it will not be valid. The Administrator must be sent your request to be excluded by _____, or it will be invalid. Section **9** of the Notice has the Administrator's contact information.

## 8.  HOW CAN I OBJECT TO THE SETTLEMENT?

Only Participating Class Members have the right to object to the Settlement. Before deciding whether to object, you may wish to see what Plaintiffs and the Company are asking the Court to approve. At least _____ days before the _____ Final Approval Hearing, Class Counsel and/or Plaintiffs will file in Court (1) a Motion for Final Approval that includes, among other things, the reasons why the proposed Settlement is fair, and (2) a Motion for Fees, Litigation Expenses and Service Awards stating (i) the amount Class Counsel is requesting for attorneys' fees and litigation expenses; and (ii) the amount Plaintiffs are requesting as Class Representative Service Awards. Upon reasonable request, Class Counsel (whose contact information is in Section **9** of this Notice) will send you copies of these documents at no cost to you. You can also view them on the Administrator's Website _____ or the Court's website _____.

A Participating Class Member who disagrees with any aspect of the class portion of the Agreement, the Motion for Final Approval and/or Motion for Fees, Litigation Expenses and Service Awards may wish to object, for example, that the proposed Settlement is unfair, or that the amounts requested by Class Counsel or Plaintiffs are too high or too low. The deadline for sending written objections to the Administrator is _____. Be sure to tell the Administrator what you object to, why you object, and any facts that support your objection. Make sure you identify the Action as *Galvan v. First Student Management, LLC* and include your full name, current address, telephone number, last four digits of your social security number, the dates you were employed by the Company in California, and sign the objection. Section **9** of this Notice has the Administrator's contact information.

Alternatively, a Participating Class Member can object (or personally retain a lawyer to object at your own cost) by attending the Final Approval Hearing.  You (or your attorney) should be ready to tell the Court what you object to, why you object, and any facts that support your objection. See Section **8** of this Notice (immediately below) for specifics regarding the Final Approval Hearing.

## 9.  CAN I ATTEND THE FINAL APPROVAL HEARING?

You can, but do not have to, attend the Final Approval Hearing on _____ at _____ in Department [ _ ] of the United States District Court, Northern District of California, located at _____.  At the Hearing, the judge will decide whether to grant Final Approval of the Settlement and how much of the Gross Settlement will be paid to Class Counsel, Plaintiffs, and the Administrator. The Court will invite comments from objectors, Class Counsel and Defense Counsel before making a decision. You can attend (or hire a lawyer to attend) either personally or virtually via _____ (_____). Check the Court's website for the most current information.

It is possible the Court will reschedule the Final Approval Hearing. You should check the Administrator's website (_____) beforehand or contact Class Counsel to verify the date and time of the Final Approval Hearing.

**10. WHERE CAN I GET MORE INFORMATION?**

The Agreement sets forth everything the Company and Plaintiffs have promised to do under the proposed Settlement. The easiest way to read the Agreement, the Judgment or any other Settlement documents is to go to the Administrator's website at _____. You can also telephone or send an email to Class Counsel or the Administrator using the contact information listed below or consult the Court website by going to (_____) and entering the Case Number for the Action, Case No. 4:18-CV-07378-JST. You can also make an appointment to personally review court documents in the Clerk's Office at 1301 Clay Street, Oakland, California 94612 or by calling _____.

**YOU SHOULD NOT TELEPHONE THE DISTRICT COURT TO OBTAIN INFORMATION ABOUT THE SETTLEMENT.**

**The Settlement Administrator: is:**

    **Name: ILYM Group, Inc.**

    Email Address:
    Mailing Address:
    Telephone:
    Fax Number:

**Class Counsel are:**

| | |
|---|---|
| Shaun Setareh<br>William M. Pao<br>Setareh Law Group<br>9665 Wilshire Boulevard, Suite 430<br>Beverly Hills, CA 90212<br>Tel.: (310) 888-7771<br>Fax: (310) 888-0109<br>E-Mail: shaun@setarehlaw.com<br>william@setarehlaw.com | Jim Zouras<br>David Cohen<br>Stephan Zouras, LLP<br>222 W. Adams Street, Suite 2020<br>Chicago, IL 60606<br>Tel.: (312) 233-1550<br>Fax: (312) 233-1560<br>E-Mail: jzouras@stephanzouras.com<br>dcohen@stephanzouras.com |
| Joseph Lavi<br>Vincent Granberry<br>Lavi & Ebrahimian, LLP<br>8889 W. Olympic Blvd., Suite 200<br>Beverly Hills, CA 90211<br>Tel.: (310) 432-0000<br>Fax: (310) 432-0001<br>E-Mail: jlavi@lelawfirm.com<br>vgranberry@lelawfirm.com | Mark R. Thierman<br>Joshua D. Buck<br>Leah L. Jones<br>Joshua R. Hendrickson<br>Thierman Buck LLP<br>7287 Lakeside Drive<br>Reno, NV 89511<br>Tel.: (775) 284-1500<br>E-Mail: mark@thiermanbuck.com<br>josh@thiermanbuck.com<br>leah@thiermanbuck.com<br>joshh@thiermanbuck.com |

**11. WHAT IF I LOSE MY SETTLEMENT CHECK?**

If you lose or misplace your settlement check before cashing it, the Administrator will replace it as long as you request a replacement before the void date on the face of the original check. If your check is already void, you should consult the Unclaimed Property Fund for instructions on how to retrieve the funds.

### 12. WHAT IF I CHANGE MY ADDRESS?

To receive your check, you should immediately notify the Administrator if you move or otherwise change your mailing address.

**"Exhibit 2"**

## COSTS AND FEES ADVANCED BY LAVI & EBRAHIMIAN, LLP

| DATE | ITEM | COST |
|---|---|---|
| | **SETTLEMENT AMOUNT** | **$** |
| N/A | Copying | $125.00 |
| N/A | Scanning | $125.00 |
| N/A | Fax | $37.50 |
| N/A | Mail | $29.10 |
| 01/28/2020 | Parking and Mileage Fee | $18.82 |
| | | |
| | **ALAMEDA SUPERIOR COURT** | |
| 06/03/2019 | Summons and Complaint Filing Fee (CLASS) | $1,435.00 |
| 08/08/2019 | Summons and Complaint Filing Fee (PAGA) | $435.00 |
| | | |
| | **LOS ANGELES SUPERIOR COURT** | |
| 11/04/2019 | Filing Receipt for NAR (PAGA) | $1.75 |
| 04/20/2020 | Filing for Plaintiff's Notice of Continuance of Status Conference Hearing and Demurrer (PAGA) | $1.75 |
| | | |
| | **DDS LEGAL SERVICES** | |
| 06/03/2019 | Filing of Summons and Complaint (CLASS) | $238.45 |
| 06/12/2019 | Filing of Notice of Case Assignment (CLASS) | $94.95 |
| 06/14/2019 | Filing of Plaintiff's Notice of Complex Determination Hearing and Case Management Conference (CLASS) | $94.95 |
| 06/18/2019 | Process Service of The Summons and Complaint on Defendant FIRST STUDENT, INC.(CLASS) | $54.90 |
| 06/18/2019 | Process service of the Summons and Complaint on Defendant FIRST STUDENT MANAGEMENT LLC (CLASS) | $37.00 |
| 07/03/2019 | Filing of Proof of Service of The Summons and Complaint (CLASS) | $94.95 |
| 07/22/2019 | Filing of Notice of Complex Determination Hearing (CLASS) | $94.95 |
| 08/08/2019 | Filing of The Summons and Complaint (PAGA) | $26.70 |
| 10/30/2019 | Filing of Case Management Statement (CLASS) | $13.65 |
| 10/31/2019 | Filing of Notice and Acknowledgement of Receipt for FIRST STUDENT MANAGEMENT LLP and FIRST STUDENT, INC. (PAGA) | $13.65 |
| 03/31/2020 | Filing of Plaintiff's Notice of Status Conference Hearing (PAGA) | $13.65 |
| 04/20/2020 | Filing for Plaintiff's Notice of Continuance of Status Conference Hearing and Demurrer (PAGA) | $13.65 |
| 04/21/2020 | Filing for Request for Dismissal (PAGA) | $13.65 |
| 08/22/2022 | Law Firm Delivery Service LITTLER MENDELSON, P.C. (CLS) | $89.95 |
| | | |
| | **DEPARTMENT OF INDUSTRIAL RELATIONS** | |
| 06/03/2019 | PAGA Filling Fee | $75.00 |
| | | |

|  | **COURT CALL** |  |
|---|---|---|
| 01/31/2020 | Status Conference (PAGA) | $94.00 |
| 03/27/2020 | Status Conference (PAGA) | $94.00 |
| 04/27/2020 | Status Conference (PAGA) | $94.00 |
| 07/13/2020 | Status Conference (PAGA) | $94.00 |
|  |  |  |
|  | **Total Costs, fees and expenses** | **$3,554.97** |