UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA GALVAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FIRST STUDENT MANAGEMENT, LLC, et al., <br><br> Defendants. | Case No. 18-cv-07378-JST <br><br> **ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** <br><br> Re: ECF No. 118 |

Before the Court is a motion for preliminary approval of class action settlement filed by Plaintiffs Barbara Galvan, Spynsir Tucker, and Germaine Scott. ECF No. 118. Defendants First Student Management, LLC, First Group America, Inc., and First Transit, Inc. ("Defendants") do not oppose the motion. The Court will deny the motion.

**I.   BACKGROUND**

   **A.   Factual and Procedural Background**

Defendants provide transportation services to school districts and related clients. Named Plaintiffs Barbara Galvan, Spynsir Tucker, and Germaine Scott worked for Defendants as bus drivers at various points between 2001 and 2021. ECF No. 114 ¶¶ 27–29.

Plaintiff Galvan initiated this action in San Mateo County Superior Court on November 6, 2018, and Defendants removed it to federal court on December 7, 2018. ECF Nos. 1, 1-1. A later-filed case, *Provencio v. First Student, Inc.*, No. 19-cv-04152-JST, was related to Galvan's case because it asserted similar claims against Defendants. ECF No. 119 ¶ 6. Plaintiffs Galvan and Provencio then filed a consolidated amended complaint on April 22, 2020. ECF No. 54.

Plaintiffs moved for class certification on October 21, 2021. ECF No. 77. The Court denied the motion, finding that Plaintiffs failed to demonstrate the predominance required by Rule

23 of the Federal Rules of Civil Procedure. ECF No. 99. Among other things, the Court noted that Plaintiffs relied on an expert report setting forth calculations of meal break, rest break, and off-the-clock violations, but that report was based on employer records that "[t]he parties agree . . . are incomplete and inadequate to demonstrate whether Defendants complied with the Labor Code." *Id.* at 6 (quoting ECF No. 84 at 16–17) (internal quotation marks omitted). In their reply supporting the motion for class certification, Plaintiffs made no attempt to defend the completeness or utility of the records, arguing instead that that their motion should be granted solely "[b]ecause of the intrinsic flaws in First Student's FOCUS records." ECF No. 94 at 7 n.4.

The Court rejected this argument. The Court acknowledged that "'where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" ECF No. 99 at 6–7 (alteration in original) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). Accordingly, "in certain situations, 'a representative sample may be used to establish classwide liability.'" *Id.* at 7 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455, 460 (2016)). "In *Tyson Foods*, '[t]he Supreme Court allowed the plaintiffs to rely on a representative sample to establish hours worked because the sample could have sustained a reasonable jury finding as to hours worked in each employee's individual action.'" *Id.* (quoting *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG, 2021 WL 4818945, at *2 (N.D. Cal. Oct. 15, 2021) (additional internal quotation marks omitted)). But, the Court observed, Plaintiffs did not submit sample evidence of that quality:

> James Toney's expert report does not attempt to obtain a representative sample and then extrapolate from that sample to determine the likely injury to each individual class member. Moreover, variations in the declarations submitted by Plaintiffs, as discussed in more detail below, make the prospect of a reliable average even more unlikely. "In determining whether a sample is representative of a class, courts ask whether each member of the class could have relied on the evidence obtained from the representative sample to establish liability in his or her own individual action." *Briggs v. Adel*, No. CV-18-02684-PHX-EJM, 2020 WL 4003123, at *18 (D. Ariz. July 15, 2020) (citing *Tyson*

2

*Foods*, 577 U.S. at 455). Toney's report would not allow the Court
or a jury to determine liability as to any individual plaintiff in this
case or, by extension, as to the class.

*Id.* at 8 (footnote omitted).

The Court found that Plaintiffs' other method of demonstrating predominance—attempting to show that Defendants' alleged unlawful employment practices rose to the level of an unofficial policy—also failed. "Courts generally hold that sufficient evidence of an unofficial policy exists where the plaintiff offers multiple declarations from employees attesting to the uniform application of the policy." *Campbell v. Vitran Express Inc*, No. CV 11-5029 RGK (SHx), 2015 WL 7176110, at *7 (C.D. Cal. Nov. 12, 2015) (citing cases); *Huerta v. CSI Elec. Contractors, Inc.*, No. 18-cv-06761-BLF, 2021 WL 1323425, at *9 (N.D. Cal. March 12, 2021) (finding declarations from class members sufficient to demonstrate an unofficial policy existed and applied uniformly to all class members). On the other hand, "courts have found insufficient evidence of a uniform policy where employees provide testimony indicating that their experiences varied based on supervisor or work location." *Campbell*, 2015 WL 7176110, at *7 (citing cases); *Flores v. CVS Pharmacy, Inc.*, No. 2:07-cv-05326-JHN-Ex, 2010 WL 3656807, at *5 (C.D. Cal. Sept. 7, 2010), *aff'd sub nom. Flores v. Supervalu, Inc.*, 509 F. App'x 593 (9th Cir. 2013) (finding predominance not met where plaintiff's claim required examination of "a number of human factors and individual idiosyncrasies"); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) (holding that class certification may be denied where "a fact-intensive inquiry into each potential plaintiff's employment situation" is required). The class member declarations Plaintiffs submitted fell squarely in the latter category. *See, e.g.*, ECF No. 99 at 11 ("Nor does Plaintiffs' declaration evidence support the existence of a uniform, unofficial policy, because of the wide variations in the frequency with which class members did not take meal breaks."); *id.* at 13 ("This evidence, taken as a whole, does not describe a uniform unofficial policy. Rather, it suggests a variety of experiences that differed from employee to employee."). Accordingly, the Court denied Plaintiffs' motion for class certification.

On July 28, 2022, Plaintiffs Scott and Tucker filed suit against Defendants in San Francisco County Superior Court asserting substantially the same claims as the *Galvan* action.

1  ECF No. 118 ¶ 11.  Defendants removed that action to federal court on September 6, 2022.  *Id.*
2  ¶ 12.  The *Scott* and *Galvan* cases were consolidated on October 25, 2023.  ECF No. 116.

The operative consolidated complaint, ECF No. 114 at 5–33, alleges that Defendants violated the California Labor Code and Business and Professions Code by: (1) failing to provide employees with their meal periods; (2) failing to provide employees with their rest breaks; (3) failing to pay premium wages to class members when they had not been provided with required meal periods and/or rest breaks; (4) failing to pay at least minimum wages to class members for all time worked; (5) failing to pay the correct overtime rate; (6) failing to pay double-time wages at the correct rate; (7) failing to reimburse class members for all necessary business expenses; (8) failing to maintain accurate written wage statements; and (9) failing to pay full final wages after separation.  ECF No. 114 at 7.

Plaintiffs moved for preliminary approval of a proposed class action settlement on December 7, 2023.  ECF No. 118.  The Court heard argument on the motion on February 15, 2024.  *See* ECF No. 125.

**B.    Terms of the Settlement**

Plaintiffs ask the Court to provisionally certify two subclasses for settlement purposes. The first subclass, termed the "Driver Class," consists of "all individuals employed by First Student, Inc. and/or First Management Services, LLC as non-exempt Drivers in California during the Driver Class Period."  ECF No. 118-1 at 27 ¶ 32.  The "Driver Class Period" refers to the period between November 6, 2014 and November 8, 2023.  *Id.* at 27 ¶ 33.  The second subclass, the "Non-Driver Class," includes "all individuals employed by First Student, Inc. and/or First Management Services, LLC in non-exempt positions other than as Driver in California during the Non-Driver Class Period."  ECF No. 118-1 at 29 ¶ 43.  The "Non-Driver Class Period" refers to the period between August 1, 2019 to November 8, 2023.  *Id.* at 29 ¶ 44.

Under the settlement, Defendants agree to pay $3,500,000 ("Maximum Settlement Amount").  ECF No. 118-1 at 28 ¶ 40.  The Maximum Settlement Amount shall be used to pay individual settlement payments to participating class members, enhancement payments to class representatives and PAGA representatives, settlement administration costs, the PAGA settlement

4

amount, attorney's fees and costs to class counsel. *Id.* This amount "specifically excludes the employer's share of payroll taxes for the portion of the Net Settlement Amount allocated to wages" and is "non-reversionary." *Id.* The Maximum Settlement Amount is subject to an "Escalator Clause" providing that if, once Plaintiffs review a class list, the number of weeks worked by class members is more than 10% higher than the estimate of 1,008,496 workweeks, Plaintiffs may renegotiate a higher payment or nullify the settlement. *Id.* at 50 ¶ 103.

After the deduction of the attorney's fees and costs, the PAGA settlement amount, enhancement payments, and settlement administration costs, the Net Settlement Amount to be distributed to participating class members is estimated to be $1,940,761.05. ECF No. 118 at 17 (citing ECF No. 118-1 at 28–29 ¶ 42).

Pursuant to the plan of allocation, class members who do not timely opt out of the settlement will receive a check for their calculated settlement amount. ECF No. 118-1 at 39 ¶ 76. The settlement payments will be calculated based on the number of weeks that the class member worked during the relevant Class Period in proportion to the number of weeks worked by the entire class, with 90% of the Net Settlement Amount dedicated to the Driver Class and 10% dedicated to the Non-Driver Class. *Id.* The Settlement Administrator will calculate the weeks worked based on Defendants' records and resolve any disputes submitted by class members as to the number of weeks worked. *Id.* Class members who opt out of the class settlement but qualify for a PAGA payment will receive a check for the PAGA payment only. *Id.* at 38 ¶ 73. If any checks remain uncashed 180 days after distribution, those funds will be sent to the State of California Unclaimed Property Fund in the name of the employee. *Id.* at 43 ¶ 88.

In exchange, the proposed class members will release the following claims against Defendants for any period during the applicable Class Period:

> [A]ny and all claims, debts, rights, demands, obligations or liabilities of every nature and description, for damages, premiums, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief against the Released Parties arising during the applicable Class Period and alleged in the operative Complaint, or which could have been alleged based on the facts pled in the operative Complaint, including without limitation claims relating to: (i) the alleged failure to pay for all hours worked, (ii) the alleged failure to correctly pay overtime

> wages, (iii) the alleged failure to provide meal periods or pay meal period premiums at the regular rate of pay, (iv) the alleged failure to provide rest periods or pay rest period premiums at the regular rate of pay, (v) the alleged failure to provide complete and accurate wage statements, and (vi) the alleged failure to timely pay wages during employment, (vii) the alleged failure timely pay all wages owed to employees who quit or are terminated, (vii) the alleged failure to reimburse for business expenses, (ix) the alleged failure to maintain accurate time and payroll records, (x) the alleged failure to pay minimum wages, and (xi) claims for interest and any other claims and penalties premised on the aforementioned allegations. "Released Claims" includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, premiums, penalties, fines, lines, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages, whether under federal law, California law or any state law or common law, including, without limitations, as violations of the California Labor Code, the Wages Orders, applicable regulations, and any and all claims under the Fair Labor Standards Act. (*Id*. Ex. 1, § 56.)
>
> In addition, Defendants required Plaintiffs to enter into a broader release of all claims they have against Defendants including a California Civil Code 1542 general release. (*See id.* Ex. 1, § 98.)

ECF No. 118 at 19–20 (quoting ECF No. 118-1 at 30 ¶ 56.

The parties have also agreed to settle the PAGA claims for the sum of $250,000. ECF No. 118-1 at 29 ¶ 50. Defendants will pay 75%, or $187,500, of the penalty to the California Labor and Workforce Development Agency ("LWDA"), *id.* at 28 ¶ 39, and the remaining 25%, or $62,500, will be distributed among PAGA-aggrieved individuals, *id.* at 28 ¶ 41. There is no ability to opt out of the PAGA portion of the settlement. *Id.* at 32 ¶ 59, 42 ¶ 84.

## II.  JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(a).

## III.  DISCUSSION

Plaintiff asks the Court to (1) certify the proposed settlement class; (2) grant preliminary approval of the proposed Settlement Agreement; (3) appoint Barbara Galvan, Germaine Scott, and Spynsir Tucker as Class Representatives and appoint proposed Class Counsel as counsel for the class members; (4) approve the proposed notice to class members; (5) appoint ILYM Groups, Inc. as settlement administrator; and (6) schedule a final approval hearing. *See* ECF No. 118 at 3. The Court will deny approval for several reasons.

First, Plaintiffs fail to address, much less remedy, the significant problems with

1    predominance that resulted in the denial of their motion for class certification.  Second, this
2    failure—despite clear guidance from the Court about the evidence that would allow Plaintiffs to
3    demonstrate predominance—combined with Plaintiffs' general failure to undertake the discovery
4    necessary to prove their claims, show that Plaintiffs' counsel are inadequate.  Third, Plaintiffs fail
5    to accurately estimate the Defendants' maximum potential exposure at trial, making it impossible
6    to evaluate the fairness and adequacy of the settlement.  Fourth, the proposed settlement treats all
7    members of the class the same as to certain claims when their injuries are markedly different.

### A.  Class Certification

#### 1.  Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs class certification.  "Rule 23(a) provides that a class action is proper only if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 370 (N.D. Cal. 2021) (citing Fed. R. Civ. P. 23(a)(1)–(4)).  In addition, the proposed class must satisfy one of the three requirements set forth in Rule 23(b).  *LaCasse v. Wash. Mut., Inc.*, 198 F. Supp. 2d 1255, 1260 (W.D. Wash. 2002).  Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting individual class members, and that a class action is superior to other available methods . . . ."  Fed. R. Civ. P. 23(b)(3).

"Even if the parties have agreed to settle a case on a class-wide basis, the court must determine whether the proposed class satisfies all the requirements of Rule 23(a) (numerosity, typicality, commonality, and adequacy of representation) and either Rule 23(b)(1), (2), or (3)."  Manual for Complex Litigation § 22.921 (4th ed.) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997)); *see* Fed. R. Civ. P. 23(e)(1)(B) (requiring court to direct notice of settlement "if giving notice is justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the propos[ed] [settlement]").  In the settlement context, "a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial."  *Amchem Prods., Inc.*, 521 U.S. at 620 (citing Fed. Rule Civ. Proc. 23(b)(3)(D)).  Even so, "other specifications of [

7

] Rule [23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Id.*; *accord In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019) (noting that "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial. On the other hand, in deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses.").

### 2. Analysis

#### a. Predominance

Plaintiff seeks provisional certification of the settlement class under Rule 23(b)(3). This rule requires that questions common to all class members "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Common questions must predominate as to each cause of action for which the moving party seeks class certification. *See Berrien v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355, 361 (N.D. Cal. 2011). As noted above, the Supreme Court has established that the predominance requirement applies with equal, or "even heightened," force to the provisional certification of a settlement class. *Amchem Prods., Inc.*, 521 U.S. at 620; *accord id.* at 622–25 (affirming the holding that a proposed settlement class could not be certified because it lacked predominance).

Once again, Plaintiffs make no effort to satisfy this requirement. Their motion starts by stating, incorrectly, that "the action was previously certified for litigation purposes under Rule 23(b)(3) which requires that plaintiff show questions of law or fact common to class members predominate over questions affecting individual class members and that the class action is superior to other available methods." ECF No. 118 at 24. In fact, as recited above, the opposite is true—the Court denied certification because the Plaintiffs failed to show predominance. ECF No. 99. Plaintiffs then recite a litany of questions they argue are common to the class and conclude by stating, "Considerations of judicial economy obviously favor litigating these common issues once in a class action instead of hundreds of times in separate lawsuits." *Id.* at 27–28. Plaintiffs do not mention, much less analyze, the Court's prior order denying certification on predominance grounds.

Plaintiffs cannot expect to obtain a different result based on an unchanged record.[1] They offer no new evidence to fill the gaps identified in this Court's previous order, ECF No. 99, nor do they cite authority suggesting that the Court's prior order was in error. Surprisingly, they made no effort to gather additional fact discovery or expert testimony that would have remedied the deficiencies in their original certification motion, even though the Court's prior order identified precisely the evidence that was required. The only material development since the Court last considered this issue is that Defendants no longer oppose class certification. That change is not enough. The Court again finds that the need for individualized determinations regarding the violations that each putative class member might have experienced would overshadow classwide common issues. *See* ECF No. 99 at 5–16. Plaintiffs' motion is denied on that basis.

### b. Adequacy

Plaintiffs' motion for preliminary approval also fails because Plaintiffs' counsel is inadequate to represent the class.

Rule 23(a)(4) provides that named plaintiffs must "fairly and adequately protect the interests of the class." Courts consider two questions to determine adequacy: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Mulderigg v. Amyris, Inc.*, 340 F.R.D. 575, 581 (N.D. Cal. 2021) (quoting *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012)). When assessing the adequacy of class counsel, courts must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable

---

[1] This case resembles *Aronson v. Gannett Publishing Servs., LLC*, No. EDCV19996PSGJEMX, 2022 WL 2285658 (C.D. Cal. June 13, 2022). The court in that case considered plaintiffs' request for certification of a settlement class in a putative wage-and-hour class action. Like this Court, the *Aronson* court had "previously denied class certification for trial purposes because the misclassification inquiry was riddled with individualized issues," *id.* at *3 (citation omitted). And like Plaintiffs in this case, the *Aronson* plaintiff paid only "short shrift to this [predominance] issue in her [motion for preliminary approval] brief, appearing to argue without explanation that this is no longer an issue in the settlement context." *Id.* Applying *Amchem Prods., Inc.*, 521 U.S. at 620, the court determined that the plaintiff's contention failed and denied the motion to certify the class for settlement purposes. *Aronson*, 2022 WL 2285658, at *3.

9

law; and (iv) the resources that counsel will commit to representing the class . . . ." Fed. R. Civ. P. 23(g)(1)(A). In addition, courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . . ." Fed. R. Civ. Pro. 23(g)(1)(B). "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).

Here, Plaintiffs' counsel have shown that they will not, or lack the ability to, "prosecute the action vigorously on behalf of the class." *Mulderigg*, 340 F.R.D. at 581. They failed to perform the fact and expert discovery that would have allowed them to win their class certification motion, and then they presented the same deficient record in their motion for preliminary approval—even though the Court's order denying certification identified the information that Plaintiffs' counsel would need to show predominance. Counsel gave so little thought to their motion for preliminary approval that they contended "the action was previously certified for litigation purposes under Rule 23(b)(3)," ECF No. 118 at 24, when their prior motion was actually denied. The language in the escalator clause, ECF No. 118-1 at 50 ¶ 103,shows that Plaintiffs' counsel have not even bothered to obtain a class list from Defendants, which they could easily have acquired given this district's near-routine practice of granting pre-certification access to information about putative class members. *See Austin v. Foodliner, Inc.*, No. 16CV07185HSGDMR, 2018 WL 1168694, at *2 (N.D. Cal. Mar. 6, 2018). These actions are not the hallmarks of adequate counsel. *See Kim v. Allison*, 87 F.4th 994, 1003 (9th Cir. 2023) ("Kim's failure to make obvious arguments until after they were forfeited calls into question whether she vigorously litigated this case on behalf of the class.").

The recent case of *Lawrence v. Goals Aesthetic & Plastic Surgery*, No. 1:18-CV-8649-GHW, 2024 WL 3742398 (S.D.N.Y. Aug. 9, 2024) is on point. In that case, the court decertified the class in an overtime case against a New York cosmetic surgery office because plaintiffs' counsel failed to seek production of class-wide payroll records even though the court twice extended discovery. This decision left plaintiffs' counsel unable to provide a damages

computation for all class members. *Id.* at *5. Plaintiffs' counsel blamed their failure to provide a damages computation for all class members on their difficulty procuring employee records from a payroll services company or the defendants in the case. "They claimed that they had 'been trying to calculate damages, but [it was] impossible without these records.'" *Id*. The reality, however, was that "Plaintiffs' counsel [did not] pursue[] class-wide timesheet and payroll records for class members at any point during the discovery period, even after the Court twice extended that period," nor "request[] them when the Court reopened discovery following certification of the class and collective." *Id.* at *9. Plaintiffs eventually provided a class-wide damages calculation, but it was untimely, and the court excluded it on that basis. *Id.* at *10.

The *Lawrence* court then granted defendants' motion to decertify the class on grounds that counsel was inadequate. Among other grounds, the court noted that plaintiffs' counsel "never pursued class-wide time and payroll records," even though they "acknowledged in their initial disclosures that such materials were 'minimally' required to prove Plaintiffs' claims." *Id.* at *11. The court also found that "even if Plaintiffs had made a request for class-wide payroll and time records, it is clear from the record that they did not diligently pursue those materials or any of the other materials that they requested." *Id.* at *12. Similarly here, Plaintiffs' counsel failed to procure the evidence needed to demonstrate predominance, dooming both their motion for class certification and the present settlement.

For the foregoing reasons, the proposed settlement class fails to satisfy Rule 23, and Plaintiffs' motion for preliminary approval is therefore denied.

**B.    Preliminary Approval**

In addition to the problems preventing certification under Rule 23, numerous other aspects of the proposed settlement also preclude preliminary approval.[2]

**1.    Amount Offered in Settlement**

To evaluate the adequacy of the relief that a settlement provides, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*

---

[2] Many of these shortcomings further emphasize Plaintiffs' counsel's inadequacy to represent the class.

11

*Antitrust Litig.*, 484 F. Supp. 2d at 1080. "Balancing the class's potential recovery against the amount offered in settlement is 'perhaps the most important factor to consider' in preliminary approval." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 970 (N.D. Cal. 2019) (quoting *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016)).

Here, the proposed settlement provides for a settlement fund of $3,500,000. ECF No. 118 at 10. After deductions for proposed incentive awards, the proposed award of attorney's fees, litigation costs, settlement administrator fees, and the PAGA payment to the LWDA, the estimated Net Settlement Amount would be $1,940,761.05. *Id.* Plaintiff estimates Defendants' maximum exposure to be $24,742,678.75 for all the class claims. ECF No. 118-1 at 8 ¶ 24. Based on this figure, Plaintiffs assert that the $3,500,000 proposed settlement constitutes 14% of "Defendants' estimated maximum potential exposure." *Id.* As explained below, however, this calculation is not supported by the record. Plaintiffs also have not provided the information necessary to evaluate the fairness of the proposed PAGA settlement.

### a. Lack of Factual Basis for Recovery Estimation

To calculate the maximum possible recovery for the failure to provide meal periods, Plaintiffs use the formula "1,008,496 Workweeks x 5 days per Workweek x 10% violation rate x $10 hourly rate of pay" to arrive at an estimate of $5,042,480. ECF No. 118-1 at 6 ¶ 18.

Plaintiffs do not explain why they selected a $10 hourly rate of pay or what relationship that rate bears to putative class members' actual payrates. *See Almanzar v. Home Depot U.S.A., Inc.*, No. 2:20-CV-0699-KJN, 2022 WL 2817435 (E.D. Cal. July 19, 2022) (citing *Ceja-Corona v. CVS Pharmacy, Inc.*, 2014 WL 4472691, at *9 (E.D. Cal. Sept. 11, 2014)). Given that the minimum hourly wage in the state of California exceeded $10 during the majority of the Driver Class Period and the entirety of the Non-Driver Class Period, the selection of this figure is puzzling. *See* ECF No. 118-1 at 27 ¶ 33 (defining Driver Class Period as November 6, 2014 to November 8, 2023); *id.* at 29 ¶ 44 (defining Non-Driver Class Period as August 1, 2019 to November 8, 2023); *2017-2023 $15 Minimum Wage Phase in Requirement Frequently Asked Questions*, Cal. Dep't Indus. Rels. (Dec. 2022), https://www.dir.ca.gov/dlse/SB3_FAQ.htm (showing that the California minimum wage increased incrementally from $12 per hour in 2019 to

1    $15.50 per hour in 2023); *see also* Fed. R. Evid. 201(b)–(c)(1) (permitting the court to take notice

2    "on its own" of facts not in reasonable dispute). There simply is no way that $10 per hour fairly

3    reflects class members' actual wages, and any estimate based on that figure is too low.

4       None of the other coefficients in Plaintiffs' formula is supported by the facts in the record,

5    either. Plaintiffs state that the estimation of 1,008,496 workweeks is based on "Defendants'

6    representation" and "records in Defendants' possession, custody or control from November 6,

7    2014 and extrapolated through August 10, 2023." ECF No. 118-1 at 50 ¶ 103. Although no basis

8    for the "10% violation rate" is specified, it presumably stems from these same records and

9    representations. But

> [t]he parties agree that [Defendant's] records are incomplete and
> inadequate to demonstrate whether Defendants complied with the
> Labor Code. Defendants describe their records as "a patchwork of
> different systems" that are "far from self-explanatory." ECF No. 84
> at 16-17. According to Defendants' own expert, approximately 70
> percent of the records were incomplete. ECF No. 94-2 at 24–25.

ECF No. 99 at 6. Plaintiffs do not explain how records that were inadequate in 2022 somehow

became adequate in 2024, and relying on Defendants' representations—which would be

questionable methodology in the best of circumstances—cannot overcome the inadequacy when

Defendants have already admitted the records are incomplete.[3]

   There is no way for the Court to determine whether the settlement is fair and reasonable

without a reliable estimation of Defendants' maximum exposure. On this record, the estimates of

1,008,496 Workweeks and a 10% violation rate appear to be arbitrary.

### b.  Inclusion of PAGA Payment

   The coefficients in the formula are not its only defects. The Plaintiffs use $3,500,000—the

entire gross settlement amount—as the numerator to produce their 14% recovery estimate for the

class claims. ECF No. 118-1 at 8 ¶ 24. This approach is problematic because the gross settlement

amount includes the $250,000 PAGA payment, but the estimated maximum exposure

contemplates only the potential recovery for the class claims, not the PAGA claims. *See*

---

[3] As the Court stated when it denied class certification, Plaintiffs could have filled gaps in the record with expert testimony, *see* ECF No. 99 at 7 (citing *Tyson Foods, Inc.*, 577 U.S. at 455, 460), but they elected not to do so.

13

*Almanzar*, 2022 WL 2817435 at *11. To avoid artificially inflating the recovery rate, the correct numerator would be $3,250,000.

### c. Compromise Positions

For two of the class claims, Plaintiffs base Defendants' maximum exposure on a compromise position. In other words, Plaintiffs discount their potential recovery in anticipation of Defendants' opposing arguments. For the wage statement penalty claim, after first estimating a maximum recovery of $33,676,000, Plaintiffs reduce that amount by 90% due to Defendants' potential counterarguments,[4] resulting in a revised maximum exposure of $3,367,600. ECF No. 118-1 at 7–8 ¶ 22. Plaintiffs then estimate Defendants' maximum exposure for the failure to pay all timely wages claim at $16,228,800 before discounting that potential recovery by 50%, to a revised maximum exposure of $8,114,400, reasoning that the claim depends on the success of other claims. *Id.* at 8 ¶ 23.

Plaintiffs misunderstand the meaning of the term "maximum" in this context. "It is unsound to use a compromise position to calculate a defendant's 'maximum' liability on any given claim." *Almanzar*, 2022 WL 2817435 at *11. "[F]or the court to judge the adequacy of the settlement amount, it must be presented with plaintiff's best estimate of all claims' maximum verdict value—not their post-compromised value." *Id.*; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (describing how the district court compared the proposed settlement to "the best possible outcome for the class").

Without Plaintiffs' reductions, the denominator for the maximum exposure calculation would be $63,165,478.75. $3,250,000 over $63,165,478.75 equals 5.1%, which figure is significantly less than the 14% rate touted in Plaintiffs' motion and one far less likely to earn court

---

[4] Moreover, one of the two potential defenses that prompt Plaintiffs to reduce their estimated recovery by 90% appears to be foreclosed by California caselaw. Plaintiffs posit that Defendants could argue that there is no derivative remedy for wage statements that do not reflect the payment required by law, citing *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1334–35 (2018). ECF No. 118-1 at 7–8 ¶ 22. In *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93 (2022), however, the California Supreme Court examined *Maldonado* and rejected its holding that "as a matter of law, non-payment of meal and rest break premiums cannot form the basis of derivative claims under [Labor Code] § 203 or § 226," eliminating that anticipated defense. *Almanzar*, 2022 WL 2817435 at *12 (citing *Naranjo*, 13 Cal. 5th at 125–26). Plaintiffs do not acknowledge *Naranjo*. *See* ECF No. 118-1 at 7–8 ¶ 22.

14

approval. *Cf. Kabasele v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2023 WL 2918679, at *3 (E.D. Cal. Apr. 12, 2023) (describing a gross settlement amount constituting 8.3% of projected maximum recovery for wage-and-hour claims as "lower than is typically approved"); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1129, 1132 (N.D. Cal. 2016) (stating that 10% of the verdict value of non-PAGA claims is generally considered "the low end of reasonable recovery"); *see id.* at 1132 n.18 (citing cases that denied approval for 6.56% and 8.82% settlements).

### d. Amount Offered for PAGA Claims

Because a PAGA claim is a "representative action on behalf of the state" rather than a "collection of individual claims," *Kim v. Reins Int'l Cal., Inc.*, 9 Cal. 5th 73, 86–87 (2020) (internal quotation marks omitted); *accord Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 855–56 (9th Cir. 2020), PAGA claims "need not satisfy Rule 23 class certification requirements," *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 583 (9th Cir. 2022). However, like class action settlements, settlements of PAGA claims must be approved by the court. Cal. Lab. Code § 2699(*l*)(2). The court applies "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." *Haralson*, 383 F. Supp. 3d at 972.

Neither Plaintiffs' motion nor the supporting declarations contain an estimation of the maximum possible recovery for the PAGA claims if litigation were to proceed to a judgment on the merits. As a result, the Court is unable determine whether a $250,000 PAGA penalty is fair and adequate. *See Nielson v. Sports Auth.*, 2012 WL 5941614, at *6; *Pena*, 2019 WL 13180178, at *5. Plaintiffs also have not stated whether LWDA has objected or otherwise responded to the proposed settlement. *See Almanzar*, 2022 WL 2817435 at *17 (citing *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018); *Mancini v. W. & S. Life Ins. Co.*, 2018 WL 4489590, at *2 (S.D. Cal. Sept. 18, 2018)).

### 2. Equitable Treatment of Class Members

There are additional issues with using a single formula to calculate the shares of the entire proposed Driver Class. Plaintiffs propose calculating the payments owed to the class based on the formula: "Individual Settlement Payment = (Net Settlement Amount ÷ Class Workweeks) x

Individual Workweeks for each individual Participating Class Member, provided that 90% of the Net Settlement Amount shall be allocated to Driver Class Members and 10% of the Net Settlement Amount shall be allocated to Non-Driver Class Members." ECF No. 118-1 at 39 ¶ 76(c). Although counsel are permitted to develop a formula for allocating settlement funds within the class, the Court is concerned that the proposed formula would result in certain inequities that Plaintiffs fail to consider in their motion.

### a. Current Versus Former Employees

First, although Plaintiffs' claim for failure to timely pay final wages under Labor Code §§ 201–203 could only be brought by individuals separated or terminated from Defendants' employ, the proposed formula does not distinguish between current and former employees when calculating putative class members' settlement payments. *Compare* ECF No. 118-1 at 8 ¶ 23 (describing potential recovery for final wages claim)*, with id.* at 39 ¶ 76(c) (formula for calculating settlement payments); *see also id.* at 27 ¶ 32 (definition of Driver Class); *id.* at 29 ¶ 43 (definition of Non-Driver Class). As a result, class members with a claim for late-paid final wages would share the recovery for that claim with current employees, who have not experienced that violation and could not bring such a claim. *See Almanzar*, 2022 WL 2817435 at *15.

### b. Risk of Disproportionate Recovery

Second, Plaintiffs' proposed formula does not account for differences in the number of hours worked per week. Under the current formula, a class member who worked sixty hours in a given week and a class member who worked a single hour that week would both receive credit for one workweek in the calculation of their settlement payment. *See* Ex. A, ECF No. 118-1 ¶ 76. "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015) (quoting *In re Oracle Sec. Litig.,* No. C–90–0931–VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994)). But the proposed formula seems to do the opposite.

### CONCLUSION

"[U]nlike in virtually every other kind of case[,] in class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by

1  the litigation—namely, the class.  Instead, the law relies upon the fiduciary obligations of the class
2  representatives and, especially, class counsel, to protect those interests." *In re Dry Max Pampers*
3  *Litig.*, 724 F.3d 713, 717–18 (6th Cir. 2013) (internal quotation marks and alterations omitted).
4  Plaintiffs' counsel in this case have failed to meet their obligations to the class and are inadequate.
5  The proposed settlement also suffers from many other defects that prevent approval.
6       For the foregoing reasons, Plaintiffs' motion for provisional certification of the settlement
7  class and preliminary approval of the proposed settlement is denied.
8       **IT IS SO ORDERED.**
9       Dated:  August 16, 2024



JON S. TIGAR
United States District Judge

17