1  Shaun Setareh, Esq. (SBN 204514)
2  Thomas Segal, Esq. (SBN 222791)
   Brian Louis, Esq. (SBN 353058)
3  **SETAREH LAW GROUP**
   420 N. Camden Drive, Suite 100
4  Beverly Hills, California 90210
   Telephone: (310) 888-7771
5  Facsimile: (310) 888-0109
   shaun@setarehlaw.com
6  thomas@setarehlaw.com
   brian@setarehlaw.com
7
8  Attorneys for Plaintiff
   BARBARA GALVAN
9
   [Additional Counsel on next page]
10

11          **UNITED STATES DISTRICT COURT**

12          **NORTHERN DISTRICT OF CALIFORNIA**

13

14  BARBARA GALVAN and CYNTHIA          CASE No. 4:18-cv-07378-JST-RMIx
    PROVENCIO, on behalf of themselves, all
15  others similarly situated                **NOTICE OF RENEWED MOTION AND**
                                             **MOTION FOR PRELIMINARY**
16          Plaintiff,                       **APPROVAL OF AMENDED CLASS**
                                             **ACTION AND PAGA SETTLEMENT;**
17          v.                               **MEMORANDUM OF POINTS AND**
                                             **AUTHORITIES; DECLARATION OF**
18  FIRST STUDENT MANAGEMENT, LLC, a         **SHAUN SETAREH IN SUPPORT**
    Delaware limited liability corporation; FIRST  **THEREOF; DECLARATION OF EVE**
19  STUDENT, INC. a Delaware corporation;    **HOWE; DECLARATION OF TERESA**
    FIRSTGROUP AMERICA INC. a Delaware       **BECVAR; DECLARATION OF**
20  corporation, FIRST TRANSIT INC; a        **JOSHUA BUCK DECLARATION OF**
    Delaware corporation;. And DOES 1 through **LISA MULLINS; DECLARATION OF**
21  50, inclusive                            **JEFFREY S. PETERSEN IN SUPPORT**
                                             **THEREOF; [PROPOSED] ORDER**
22          Defendants

23                                           Date: June 26, 2025
                                             Time: 2:00 p.m.
24                                           Courtroom: 6

25

26

27

28
                                             Case No.  4:18-cv-07378

    MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1   Joseph Lavi, Esq. (SBN 209776)
    Vincent C. Granberry, Esq. (SBN 276483)
2    Eve Howe, Esq. (SBN 350007)
3   LAVI & EBRAHIMIAN, LLP
    8889 W. Olympic Blvd., Suite 200
4   Beverly Hills, California 90211
     Telephone: (310) 432-0000
5    Facsimile: (310) 432-0001
    Email:
6    jlavi@lelawfirm.com
7   vgranberry@lelawfirm.com
    ehowe@lelawfirm.com
8   Attorneys for Plaintiff CYNTHIA PROVENCIO

9   Mark R. Thierman, Cal SB# 72913
    Joshua D. Buck, Cal SB# 258325
10  Leah L. Jones, Cal SB# 276488
11  Joshua R. Hendrickson, Cal SB# 282180
    THIERMAN BUCK LLP
12   7287 Lakeside Drive Reno, NV 89511
    Tel: (775) 284-1500
13  Email: mark@thiermanbuck.com
    Email: josh@thiermanbuck.com
14  Email: leah@thiermanbuck.com
15  Email: joshh@thiermanbuck.com

16
    James B. Zouras*
17  Teresa M. Becvar*
18  STEPHAN ZOURAS, LLC
    222 W. Adams Street, Suite 2020
19  Chicago, IL 60606
    (312) 233-1550
20  jzouras@stephanzouras.com
    tbecvar@stephanzouras.com
21
22  David J. Cohen*
    STEPHAN ZOURAS, LLC
23  604 Spruce Street
    Philadelphia, PA 19106
24  (215) 873-4836
    dcohen@stephanzouras.com
25
26  *admitted pro hac vice

27  Attorneys for Plaintiffs
    GERMAINE SCOTT and SPYNSIR TUCKER
28

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on June 26, 2025 at 2:00 P.M., or as soon thereafter as the matter may be heard in Courtroom 6 of this Court, located at 1301 Clay Street in Oakland, California, Plaintiffs Barbara Galvan, Germaine Scott, and Spynsir Tucker, for themselves and all others similarly situated and the general public ("Plaintiffs"), seek an order maintaining this case as a class action for settlement purposes under Federal Rule of Civil Procedure 23 on behalf of a settlement class comprised of Plaintiffs and all other persons similarly-situated, directing notice to the class, and scheduling a Fairness Hearing for final approval of the proposed settlement.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Shaun Setareh, the Declaration of Jeffrey S. Petersen, and all documents and arguments submitted in support thereof.

Plaintiffs request the following relief:

1. Preliminary approval of the Amended Joint Stipulation of Class Action Settlement and Release, ("Settlement") attached as Exhibit 1 to the Declaration of Shaun Setareh ("Setareh Decl."), and all related notice and other deadlines as set forth in the Settlement Agreement or as otherwise ordered by the Court subject to the terms and conditions of the Settlement Agreement so Plaintiffs may then move the Court for Final Approval of the Settlement Agreement;

2. Conditional certification of the Settlement Classes as defined in the Settlement;

3. The appointment of Setareh Law Group, Lavi & Ebrahimian, LLP, Stephan Zouras, LLC, and Thierman Buck LLP as Settlement Class Counsel;

4. The appointment of Plaintiffs Barbara Galvan, Germaine Scott, and Spynsir Tucker as the Class Representatives;

5. An Order directing dissemination of the notice of class action settlement to the Settlement Class, *via* United States First-Class Mail as proscribed by the Settlement;

6. Appointment of ILYM Group Inc. as Settlement Administrator;

7. An Order setting a schedule for the dissemination of notice to the Settlement Class, deadlines for Settlement Class Members to opt-out of the Settlement or object to the settlement, and for a Fairness Hearing to address final approval of the Class Action Settlement Agreement following

the notice period; and

8.     Any other relief the Court deems just and equitable under the circumstances.


DATED:  April _24, 2025                SETAREH LAW GROUP


                                       /s/ Shaun Setareh
                                       SHAUN SETAREH
                                       THOMAS SEGAL
                                       BRIAN LOUIS
                                       Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   PROCEDURAL HISTORY ................................................................ 3

    A.   PLEADINGS ............................................................................ 3

    B.   MOTIONS ................................................................................ 3

    C.   DISCOVERY ........................................................................... 4

    D.   THE PARTIES' MEDIATION EFFORTS ............................... 5

III.  SUMMARY OF SETTLEMENT TERMS ........................................ 5

    A.   THE SETTLEMENT CLASS ................................................... 5

    B.   GROSS SETTLEMENT AMOUNT AND DISTRIBUTIONS ............. 5

    C.   SCOPE OF THE NAMED PLAINTIFFS' AND CLASS
        MEMBERS' RELEASES ........................................................ 6

    D.   NOTICE PROCEDURES ........................................................ 8

    E.   PAYMENT OF SETTLEMENT AMOUNTS ......................... 8

    G.   TAX TREATMENT ................................................................. 9

IV.   LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS
     ACTION SETTLEMENTS IN THE NORTHERN DISTRICT ..................... 9

V.    THE COURT SHOULD PRELIMINARILY APPROVE THE
     SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND
     ADEQUATE" UNDER RULE 23(E) (2) AND THE *CHURCHILL*
     FACTORS ............................................................................... 10

    A.   Named Plaintiffs and Their Counsel Adequately Represented the
        Class .................................................................................... 10

    B.   The Proposals Were Negotiated at Arm's Length ................ 11

    C.   The Relief Provided For the Class Is Adequate ................... 11

        1.   The Relief for the Class is Adequate Given the Risks and
            Delays of a Trial and Appeal ..................................... 11

        2.   The Proposed Method of Distributing Relief to the Class is
            Effective ...................................................................... 16

        3.   The Proposed Award of Attorney Fees is Fair. ........... 17

        4.   Any Agreement Required to be Identified Under Rule
            23(e)(3). ...................................................................... 18

D.    Class Members Will Be Treated Equitably Relative to Each Other.................................................................................. 18

VI.    THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE................. 19

A.    Information About the Settlement ....................................... 19

1.    Differences Between the Settlement Classes and the Plead Classes .......................................................... 19

2.    Differences in the Claims to be Released and the Claims Pled or Certified.................................................. 20

3.    The Class Recovery Under the Settlement................... 20

4.    Other Cases Affected by the Settlement..................... 20

5.    The Proposed Allocation for the Settlement Fund ............. 20

6.    Claim Form ................................................ 20

7.    Reversion to Defendant .................................... 20

B.    Settlement Administration ............................................ 20

C.    Notice ............................................................ 21

D.    Opt-Outs .......................................................... 21

E.    Objections ......................................................... 21

F.    Attorney Fees and Costs ............................................. 21

G.    Service Award...................................................... 21

H.    *Cy Pres* ........................................................... 22

I.    Timeline .......................................................... 22

J.    Class Action Fairness Act (CAFA) and Similar Requirements............ 22

K.    Comparable Outcomes ............................................... 22

L.    Electronic Versions ................................................. 22

M.    Overlapping Cases ................................................. 22

VII.    THE PAGA ALLOCATION IS PROPER.................................... 22

VIII.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES AND APPOINT PLAINTIFFS AND THEIR COUNSEL TO REPRESENT THEM ......................................................... 23

A.    The Settlement Classes Should Be Conditionally Certified For Purposes of Settlement.............................................. 23

1.    Standard for Conditional Class Certification Upon
       Settlement ................................................................. 23

2.    Numerosity ................................................................. 24

3.    Adequacy of Representation ..................................... 24

4.    Typicality ................................................................... 24

5.    Commonality .............................................................. 24

6.    Predominance and Superiority .................................. 25

IX.    CONCLUSION ........................................................................ 25

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u>

3    *Aldapa v. Fowler Packing Co.*, 323 F.R.D. 316 354 n25 (E.D. Cal. 2018) .............. 25

4    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................... 23, 24

5    *Chavez v. Netflix, Inc.,*
       162 Cal. App. 4th 43 (2008) ..................................................................... 17

6
7    *Churchill Vill., L.L.C. v. Gen. Elec.,*
       361 F.3d 566 (9th Cir. 2004) ................................................................... 10

8    *Dilts v. Penske Logistics* (S.D. Cal. 2014) LLC  2014 WL 205039 ............................ 15

9    *Duran v. US Bank Nat'l Ass'n* (2014) 59 Cal.4th 1, 39 & fn. 33 ("Duran") ................ 15

10    *Estrada v. Royalty Carpet Mills, Inc.,* 15 Cal.5th 582, 619 (2024.) ............................. 15

11    *Frlekin v. Apple, Inc.,* 979 F.3d 639 (9th Cir. 2020) ............................................... 16

12    *Gunther v. Alaska Airlines,* 72 Cal.App.5th 334, 355 (2021.) ...................................... 22

13    *In re NVIDIA GPU Litig.,*
       539 F. App'x 822 (9th Cir. 2013) ............................................................... 11
14

15    *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008.) ............................... 9

     *Kastler v. Oh My Green Inc.,* 2021WL 3604714 *10 (N.D. Cal. 2021) ...................... 16
16

17    *Lerwill v. Inflight Motion Pictures, Inc.,*
       582 F.2d 507 (9th Cir. 1978) ................................................................... 11

18    *Miller v. CEVA Logistics U.S.A., Inc.* (E.D. Cal. Feb. 19, 2015) 2015 WL 729638 12

19    *Morillion v. Royal Packing Co.* (2000) 22 Cal. 4th 575 ............................................. 15

20    *Norton v. LVNV Funding, LLC,*
       2021 WL 3129568 (N.D. Cal. 2021) ........................................................... 11
21

22    *NVIDIA GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013) ................................... 11

     *O'Connor v. Uber Technologies, Inc.,* 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016)
23        ..................................................................................................... 23

24    *Parkinson v. Hyundai Motor Am.,*
       258 F.R.D. 580 (C.D. Cal. 2008) ............................................................... 24
25

26    *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008) .............. 24

     *Quantum Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997) .......................... 18
27

28    *Rangel v. PLS Check Cashers of California, Inc.,* 899 F.3d 1106, 1110-1111 (9th Cir.
       2018.) ........................................................................................... 20

*Rodriguez v. West Publishing Corp.* (9th Cir. 2000) 563 F.3d 948 ..........................12

*Saechao v. Landrys, Inc.*,
    2016 WL 3227180 (N.D. Cal. 2016) .........................................................23

*Saechao v. Landrys, Inc.*, 2016 WL 3227180, *3 (N.D. Cal. June 11, 2016)..............23

*Terry v. Hoovestol, Inc.*, 2018 WL 4283420 *4 (N.D. Cal. 2018................................16

*Viceral v. Mistras Group, Inc.*,
    2016 WL5907869 (N.D. Cal. 2016) ...........................................................23

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002).....................................................................17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ..........................17

## Statutes

Cal. Lab. Code § 2699(e)(2) ........................................................................................23

Cal. Lab. Code § 2699(f)(2) .........................................................................................22

Fed. R. Civ. Proc. 23(e)(1)(A) .......................................................................................9

Federal Rule of Civil Procedure 23 .............................................................................23

Federal Rule of Civil Procedure 23(e).......................................................................9, 11

Labor Code § 2699(e)(2) ..............................................................................................23

Labor Code § 2699(f)(2) ...............................................................................................22

Labor Code section 2699 .........................................................................................12, 16

Labor Code section 2699(e)(1) .....................................................................................16

## Rules

Fed. R. Civ. P. 23(a) ...........................................................................................23, 24, 25

Fed. R. Civ. P. 23(a)(2) ................................................................................................24

Fed. R. Civ. P. 23(a)(3) ................................................................................................24

Fed. R. Civ. P. 23(a)(4) ................................................................................................24

Fed. R. Civ. P. 23(e) ...................................................................................................9, 10

Fed. R. Civ. P. 23(e) (2)(C) ...........................................................................................11

Fed. R. Civ. P. 23(e)(1)(A)..............................................................................................9

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................... 10

Fed. R. Civ. P. 23(e)(2) ........................................................................... 10, 11, 18

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................... 11

Fed. R. Civ. P. 23(e)(3) ........................................................................... 10, 11, 18

Fed. R. Civ. Proc. 23(e)(1)(B) .............................................................................. 10

Federal Rule of Civil Procedure 23(e)(2) ............................................................. 10

Rule 23(a) ........................................................................................................ 23, 24

Rule 23(a)(1) ......................................................................................................... 24

Rule 23(a)(4) ......................................................................................................... 24

Rule 23(b)(3) ......................................................................................................... 24

Rule 23(e)(2) ......................................................................................................... 10

Rule 23(e)(2)(D) ................................................................................................... 18

Rule 23(e)(3) ......................................................................................................... 18

1    I.    **INTRODUCTION**

2        After years of litigation, discovery, and motion practice, this renewed Motion seeks

3    preliminary approval of the class action and representative PAGA settlement of these wage-and-hour

4    actions between Barbara Galvan, Germaine Scott, and Spynsir Tucker ("Plaintiffs") and First Student

5    Management, LLC; First Management Services, LLC; First Student, Inc.; and First Group America, Inc.

6    ("Defendants") (collectively, the "Parties").

7        As the result of arm's-length negotiations with the assistance of Todd Smith, Esq., an

8    experienced mediator with expertise in mediating complex wage and hour class actions, the Parties

9    have reached a fair and reasonable settlement of Plaintiffs' claims.

10        The Settlement has been amended to address concerns the Court raised regarding a proposed

11    settlement allocation based on workweeks. The revised Settlement allocates the class fund based on the

12    number of shifts each Class Member worked. Given that the main claim is for off-the-clock work, a

13    shift-based allocation is likely to result in Class Members who experienced more violations receiving a

14    greater share. Additionally, the revised Settlement provides that Class Members who have a potential

15    claim for Labor Code section 203 waiting time penalties receive a greater share.

16        Additionally, the Declaration of Dr. Jeffrey Petersen explains how, for class certification

17    purposes, any individual issues related to Plaintiffs' claims can be managed using a survey conducted

18    with peer-reviewed methods. Federal district courts have certified classes based on both actual surveys

19    conducted by Dr. Petersen, and as here, based on Dr. Petersen's description of how a survey can be

20    used to address potentially individualized issues that would otherwise support trial on a class-wide

21    basis.[1]

22        Pursuant to the Amended Joint Stipulation of Class Action Settlement ("Agreement")[2],

23    Plaintiffs now request that the Court enter an order: (1) preliminarily approving the Agreement; (2)

24    certifying the settlement class only for purposes of settlement under the Agreement; (3) appointing

25

26    _____

27    [1] Dr. Petersen's report is attached to the Declaration of Shaun Setareh as Exhibit 4.
     [2] The executed Agreement between the Parties is attached as Exhibit 1 to the Declaration of Shaun

28    Setareh filed concurrently herewith.

1   Plaintiffs as the Class Representatives; (4) appointing Setareh Law Group, Lavi & Ebrahimian, LLP,

2   Stephan Zouras, LLC, and Thierman Buck LLP as Settlement Class Counsel; (5) appointing ILYM

3   Group, Inc. ("ILYM") as the Settlement Administrator; (6) approving and directing the mailing of the

4   Class Notice and related materials; and (7) scheduling a final approval hearing.

5       The Agreement provides for a Maximum Settlement Amount of **$3,500,000** ("MSA")

6   (Agreement, § 40).) No amount of the MSA shall revert to Defendants. No Class Member will have

7   to submit a claim in order to recover his or her Settlement Share, and checks will be mailed directly to

8   them. After 180 days, any uncashed checks will be sent to the State of California Unclaimed Property

9   Fund in the name of the employee. (*Id.*, § 88.) Defendants estimate there are 7,619 Driver Class

10   Members and 1,150 Non-Driver Class Members (8,769 total).[3] The Class Members worked a total of

11   approximately 1,084,315 workweeks during the relevant period. (Agreement, § 103.)

12       The Net Settlement Amount ("NSA") expected to be paid to Class Members – after all Court-

13   approved deductions from the MSA, *i.e.*, attorney fees of $1,166,666.66 (1/3 of the MSA) and estimated

14   costs of $66,236.90 settlement administration costs estimated to be $61,900.00, Plaintiffs' enhancement

15   awards totaling $20,000.00, and a PAGA claim amount of $187,500.00, which is 75% of the

16   $250,000.00 earmarked for PAGA claims – is **$1,997,696.44**. (Agreement, § 9(c).) This total provides

17   an average estimated Settlement Share for each Class Member of approximately **$227.81**

18   **($1,997,696.44 / 8,769)**.

19       Significant discovery occurred prior to settlement. Defendants produced timekeeping and

20   payroll data, and class contact information. About a dozen depositions were conducted concerning the

21   merits of Plaintiffs' claims and damages, and a motion for class certification was fully briefed before

22   being denied over several specific issues the Court identified, and the Parties have since further

23   explored.

24       . Based upon their evaluation, further analysis, and efforts to address issues this Court

25

---

26   [3] The Non-Driver Class contains individuals employed by First Student, Inc. and/or First Management

27   Services, LLC in non-exempt positions other than as Driver in California from August 1, 2019 to
November 8, 2023. The Driver Class contains individuals employed by First Student, Inc. and/or First

28   Management Services, LLC as non-exempt Drivers in California from November 6, 2014 to
November 8, 2023.

previously raised, Plaintiffs and their counsel have determined that the Settlement is fair, reasonable, adequate and in the best interest of the Class, and they ask this Court to grant preliminary approval of the Amended Settlement Agreement.

## II.    PROCEDURAL HISTORY

### A.    PLEADINGS

This lawsuit was filed on November 6, 2018, in the Superior Court for the State of California, County of San Mateo. ECF No. 1.2, Exh. A. The Complaint pleads causes of action against Defendants for: 1) Failure to provide meal periods; 2) Failure to provide rest periods; 3) Failure to pay hourly wages; 4) Failure to Indemnify; 5) Failure to provide accurate written wage statements; 6) Failure to timely pay all final wages; and 7) Unfair Competition. The Complaint alleges that Defendants failed to pay wages for off-the-clock work because the putative Class Members, who are school bus drivers, would clock in using a device inside the bus, but would have to perform other duties off-the-clock such as picking up bus keys from the office, completing paperwork, and returning bus keys to the office. The Complaint further alleges that Defendants failed to provide lawfully compliant meal and rest breaks under California law.

On June 14, 2019 (following removal to federal court) Plaintiffs filed a First Amended Complaint adding a claim for civil penalties under the California Labor Code Private Attorneys General Act (PAGA.) ECF No. 24.

On November 15, 2019, this Court entered an order deeming this case related to *Provencio v. First Student, Inc.,* Northern District of California Case No. 19-cv-04152.

On October 17, 2023, the Parties submitted a Stipulation to file a First Amended Consolidated Complaint, consolidating this case with *Scott v. First Student, Inc.* 22-cv-05057-JST. ECF No. 115. The First Amended Consolidated Complaint added a claim for failure to reimburse business expenses under Labor Code § 2802 relating to the putative Class Members' use of personal cellphones to perform work-related tasks. On October 25, 2023, this Court granted the stipulation and ordered the cases consolidated. ECF No. 116.

### B.    MOTIONS

1    Defendants removed the case to federal court on December 7, 2018. ECF No. 1.

2    Plaintiffs filed a motion to remand on December 28, 2018. ECF No. 11. Defendants opposed

3    the motion on January 11, 2019. ECF No. 11. Plaintiffs filed a reply brief on January 11, 2019. ECF

4    No. 12.  On March 21, 2019, this Court entered an order denying the motion. ECF. No. 20.

5    On October 19, 2019, Plaintiffs filed a discovery letter brief seeking production of class

6    contact information and timekeeping and payroll data. ECF No. 40. The Parties resolved the dispute

7    after further meeting and conferring. ECF No. 43.

8    On October 14, 2021, Plaintiffs filed a motion for class certification. ECF No. 77. Defendants

9    opposed the motion on February 3, 2022. ECF No. 84. Plaintiffs filed a reply brief on April 28, 2022.

10   ECF No. 94. On August 23, 2022, this Court entered an order denying the motion. ECF No. 99.

11   On September 6. 2022, Plaintiffs filed a Petition for Permission to Appeal pursuant to Fed. R.

12   Civ. P. 23(f).  On December 12, 2022, the Ninth Circuit denied the Petition. ECF No. 105.

13   On December 7, 2023, Plaintiffs filed a motion for preliminary approval of class action

14   settlement. ECF No. 118. On August 16, 2024, this Court entered an order denying the motion. ECF

15   No. 126.

16   **C.    DISCOVERY**

17   Plaintiffs served written discovery that Defendants answered, producing thousands of

18   pages of documents as well as timekeeping and payroll data. Setareh Decl. ¶ 8. Defendants also

19   produced contact information for around 6,641 putative Class Members. *Id.*

20   On July 20, 2021, Plaintiffs deposed Defendants' Rule 30(b)(6) designee Bridgen

21   Summers. *Id.* ¶ 9. On July 23, 2021, and September 16, 2021, Plaintiffs deposed Defendants' Rule

22   30(b)(6) designee Leah Renner. *Id.* ¶ 10. On August 12, 2021, Plaintiffs deposed Defendants'

23   30(b)(6) designee Kim Mingo. Id. ¶ 11. Plaintiff Galvan was deposed on December 17, 2021, and

24   December 22, 2021.  *Id. ¶* 13. Plaintiff Provencio was deposed on December 2, 2021. *Id. ¶* 12.

25   During class certification briefing between October 2021 and February 2022, Defendants

26   deposed six putative Class Members who had submitted declarations in support of class

27   certification - Andrea Robles, Jacqulyn Hogan, John Gray, Lauren Brooks, Nineka Prince, and

28   Stella Ruiz.  *Id.* ¶ 14.

On December 30, 2021, Defendants deposed Plaintiffs' expert James Toney. *Id.* ¶ 15. On April 19, 2022, Plaintiffs deposed Defendants' class certification expert Dr. Robert Speakman, Jr. *Id.* ¶ 16.

### D.     THE PARTIES' MEDIATION EFFORTS

On August 10, 2023, the Parties participated in a mediation with Todd Smith, Esq., a highly respected mediator of wage and hour class and PAGA actions. At the mediation, the Parties agreed to the principal terms of a settlement of the Consolidated Action, which was memorialized in a Confidential Memorandum of Understanding ("MOU") the Parties signed on August 10, 2023. (Agreement, § 14.)

Following the Court's Order Denying Preliminary Approval, the Parties negotiated several amendments to the Settlement Agreement to address the Court's specific concerns.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.     THE SETTLEMENT CLASS

The Driver Class contains individuals employed by First Student, Inc. and/or First Management Services, LLC as non-exempt Drivers in California from November 6, 2014 to November 8, 2023. (Agreement, § 32-33.) The Non-Driver Class contains individuals employed by First Student, Inc. and/or First Management Services, LLC in non-exempt positions other than as Driver in California from August 1, 2019 to November 8, 2023. (*Id*, § 43-44.)

PAGA Group Members are all individuals who are members of the PAGA Groups and/or Non-Driver PAGA Group. (*Id*, § 49.)

### B.     GROSS SETTLEMENT AMOUNT AND DISTRIBUTIONS

Defendant will pay a maximum settlement amount ("MSA") of **$3,500,000.00**, subject to any adjustment based on the final, total number of Class Member workweeks.[4] (Agreement, § 40.)

---

[4] If it is determined from the Class List that the total number of Workweeks for both the Driver Class and Non-Driver Class exceeds 1,109,345 total Workweeks, the Parties will negotiate in good faith to increase the Maximum Settlement Amount or modify the close of the Class and PAGA Periods. (Agreement, § 103).)

Each Class Member's Settlement Share will be determined based on shifts worked. Since this case involves allegations of pre and post shift off-the-clock work, Plaintiffs' Counsel believe that using the shift count is the most accurate and fair way to allocate the settlement funds.

The Settlement Administrator will allocate 90% of the Net Settlement Amount to Driver Class Members and 10% of the Net Settlement Amount to Non-Driver Class Members(Agreement § 76(c).) The Settlement Administrator will then determine the total number of shifts for all Class Members during the Class Period ("Total Class Shifts") and the total number of shifts each individual Class Member worked during the Class Period ("Individual Shifts"). *Id.* The Settlement Administrator will then determine each Class Member's individual Settlement Share, using the following formula:

$$\underline{\textbf{Net Settlement Amount}} \textbf{ x Individual Shifts = Individual Settlement Share}$$
$$\textbf{Total Class Shifts}$$

*Id.* Driver Class Members whose employment was terminated on or after November 6, 2015, and Non-Driver Class Members whose employment was terminated on or after August 1, 2020, will have their Individual Shifts increased by 15% to account for their added entitlement to Labor Code section 203 penalties. *Id.*

For PAGA Group Members, the Settlement Administrator will allocate 90% of the PAGA Settlement Amount to Driver Class Members and 10% of the PAGA Settlement Amount to Non-Driver Class Members, reflecting the factors discussed above (Agreement § 76(c).).  The Settlement Administrator will then determine each PAGA Group Member's individual payment as a *pro rata* share of the total number of Pay Periods each PAGA Group Member worked during the PAGA period ("Individual PAGA Pay Periods") using the same formula described above (Agreement § 76(d).)

## C. SCOPE OF THE NAMED PLAINTIFFS' AND CLASS MEMBERS' RELEASES

The Named Plaintiffs are agreeing to a broad general release that includes a waiver of the protections of Civil Code section 1542. (Agreement § 98.)

The Named Plaintiffs and Settlement Class Members who do not opt-out are releasing all Released Claims as to Released Parties. (Agreement § 96.)

Released Claims are defined as follows:

> [A]ny and all claims, debts, rights, demands, obligations or liabilities of every nature and description, for damages, premiums, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief against the Released Parties arising during the applicable Class Period and alleged in the operative Complaint, or which could have been alleged based on the facts pled in the operative Complaint, including without limitation claims relating to: (i) the alleged failure to pay for all hours worked, (ii) the alleged failure to correctly pay overtime wages, (iii) the alleged failure to provide meal periods or pay meal period premiums at the regular rate of pay, (iv) the alleged failure to provide rest periods or pay rest period premiums at the regular rate of pay, (v) the alleged failure to provide complete and accurate wage statements, and (vi) the alleged failure to timely pay wages during employment, (vii) the alleged failure timely pay all wages owed to employees who quit or are terminated, (vii) the alleged failure to reimburse for business expenses, (ix) the alleged failure to maintain accurate time and payroll records, (x) the alleged failure to pay minimum wages, and (xi) claims for interest and any other claims and penalties premised on the aforementioned allegations. "Released Claims" includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, premiums, penalties, fines, lines, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages, whether under federal law, California law or any state law or common law, including, without limitations, as violations of the California Labor Code, the Wages Orders, applicable regulations, and any and all claims under the Fair Labor Standards Act.

(Agreement § 56.)

The Named Plaintiffs, the State of California, and the PAGA Group Members will release all Released PAGA Claims with respect to all of the Released Parties. (Agreement § 97.) Released PAGA Claims are defined as follows:

> [A]ny and all PAGA claims against the Released Parties during the applicable PAGA Period and alleged in the operative Complaint and/or Plaintiffs' letters to the LWDA, or which could have been alleged based on the facts pled in the operative Complaint and/or alleged in Plaintiffs' letters to the LWDA, including without limitation PAGA claims relating to: (i) the alleged failure to pay for all hours worked, (ii) the alleged failure to correctly pay overtime wages, (iii) the alleged failure to provide meal periods or pay meal period premiums at the regular rate of pay, (iv) the alleged failure to provide rest periods or pay rest period premiums at the regular rate of pay, (v) the alleged failure to provide complete and accurate wage statements, and (vi) the alleged failure to timely pay wages during employment, (vii) the alleged failure timely pay all wages owed to employees who quit or are terminated,

(vii) the alleged failure to reimburse for business expenses, (ix) the alleged failure to maintain accurate time and payroll records, (x) the alleged failure to pay minimum wages, and (xi) any other PAGA claims premised on the aforementioned allegations.

(Agreement § 57.)

### D.    NOTICE PROCEDURES

The Parties propose ILYM Group, Inc. as the Settlement Administrator in this matter. (Agreement § 61.) Within thirty (30) calendar days of Preliminary Approval, Defendants will provide the Class List to the Settlement Administrator. (Agreement § 79.) Within forty-five (40) calendar days of Preliminary Approval, the Settlement Administrator will mail a Notice Packet to Class Members by regular First-Class Mail. (Agreement § 80.) The Notice Packet will be substantially in the form attached to the Settlement Agreement as Exhibit A. (Agreement § 82.)

Prior to mailing the Settlement Administrator will perform a search using the National Change of Address database to update and correct the Class Members' mailing addresses. (Agreement § 81.)

If a Notice Packet is returned as undeliverable with a forwarding address, the Settlement Administrator will send the Notice Packet promptly *via* regular First-Class Mail to the forwarding address with the date of re-mailing indicated on the Notice Packet. (*Id*.)

If a Notice Packet is returned as undeliverable without a forwarding address, the Settlement Administrator will promptly attempt to determine the correct address using a skip-trace or other search, using the name, address, and Social Security Number of each Class Member and, if a new address is found, will then perform a single re-mailing. (*Id.*)

Class Members who received a re-mailed Notice Packet either by skip-trace or request will have the later of (a) an additional fifteen (15) calendar days or (b) the Response Deadline to fax and postmark a Request for Exclusion, or file and serve an objection to the Settlement. (*Id.*)

### E.    PAYMENT OF SETTLEMENT AMOUNTS

Within 45 days of the Effective Date (31 calendar days after entry of final approval if no appeal has been filed, 5 business days after resolution of any appeal (Agreement § 36) Defendant will fund the

Settlement by making a one-time electronic deposit of $3,500,000 plus an additional amount for employer side taxes. (Agreement § 69.)

Within 14 business days of the settlement funding date, the Settlement Administrator will issue payments in the approved amounts to: (a) Class Members who did not opt out; (b) the Labor and Workforce Development Agency; (c) Plaintiffs; (d) PAGA Group Members; (e) Plaintiffs' Counsel; and (f) to itself for Court approved services administering the Settlement. *Id.*

### F.    ESCALATOR PROVISION

If the number of workweeks exceeds 1,109,346 the Parties will negotiate in good faith, either to increase the Maximum Settlement Amount or change the end date of the Class and PAGA Periods. If the Parties cannot reach an agreement on such an adjustment, the Settlement Agreement will be null and void. (Agreement § 103.)

### G.    TAX TREATMENT

All Individual Settlement Payments will be treated 35% as unpaid wages, 30% as unpaid interest, and 35% as unpaid civil penalties and reimbursement. (Agreement § 91.) The Settlement Administrator will report the 35% unpaid wages payments on an IRS Form W-2 (*Id.*). The remaining 65% of each Individual Settlement Payment allocated as interest, penalties, and reimbursement will be reported on an IRS Form 1099. (*Id.*) Individual PAGA Settlement Payments will be designated 100% penalties and be reported on an IRS Form 1099. (*Id.*)

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS IN THE NORTHERN DISTRICT

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

Federal Rule of Civil Procedure 23(e) sets forth a multi-step process for determining whether a proposed class action settlement should be preliminarily approved. The parties must first "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. Proc. 23(e)(1)(A). Then, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal

1   under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R.

2   Civ. Proc. 23(e)(1)(B). Federal Rule of Civil Procedure 23(e)(2), in turn, provides:

> If the proposal would bind class members, the court may approve it
> only after a hearing and only on finding that it is ***fair, reasonable,
> and adequate*** after considering whether:
>> (A) the class representatives and class counsel have
>> adequately represented the class;
>> (B) the proposal was negotiated at arm's length;
>> (C) the relief provided for the class is adequate, taking into
>> account:
>>> (i) the costs, risks, and delay of trial and appeal;
>>> (ii) the effectiveness of any proposed method of
>>> distributing relief to the class, including the method
>>> of processing class-member claims;
>>> (iii) the terms of any proposed award of attorney's
>>> fees, including timing of payment; and
>>> (iv) any agreement required to be identified under
>>> Rule 23(e)(3); and
>> (D) the proposal treats class members equitably relative to
>> each other.[5]

14  *Id.* (emphasis added).  As shown below, the Parties' revised Settlement Agreement meets the Rule

15  23(e) factors and, additionally, comports with the Northern District's Procedural Guidance on Class

16  Action Settlements.

17  **V.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT
18          BECAUSE IT IS "FAIR, REASONABLE AND ADEQUATE" UNDER RULE 23(e)
            (2) AND THE *CHURCHILL* FACTORS**

19          **A.      Named Plaintiffs and Their Counsel Adequately Represented the Class**

---

[5] The Ninth Circuit Court of Appeals has identified eight factors district courts may also consider in evaluating the fairness and adequacy of a pending settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement ("***Churchill Factors***"). *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004).  Factors 1-4 and 6 are duplicative of the Rule 23(e) factors. As to factor 5, as detailed herein there has been extensive discovery. Factor 7 is not applicable, although the LWDA will receive notice of the settlement. Factor 8 will be relevant upon final approval when the class will have had the opportunity to request exclusion or object.

Class representatives are adequate where they have retained experienced counsel and have actively participated in the litigation. *See e.g. Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021) .  Here, class representatives Galvan, Scott and Spynsir were dedicated to this case and spent substantial time and resources assisting Plaintiffs' Counsel throughout this litigation. ECF No. 118-4 Galvan Decl. ¶¶ 3-9; ECF No. 118-5, Scott Decl. ¶¶ 3-5; ECF No. 118-6; Tucker Decl. ¶¶ 3-5.

Counsel representing the class must be qualified, experienced, and capable of conducting the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, Plaintiff's counsel are highly experienced wage and hour class action litigators.   Setareh Decl. ¶¶ 19-26; Howe Decl. ¶¶ 3-8; Becvar Decl. ¶ 3-8; Buck Decl. ¶ 4-7.

**B.    The Proposals Were Negotiated at Arm's Length**

The proposed Settlement arises after years of litigation—and after a series of informed and non-collusive negotiations facilitated by a third-party mediator. *See* Fed. R. Civ. P. 23(e)(2)(B); *see also In re NVIDIA GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013).

**C.    The Relief Provided For the Class Is Adequate**

The relief provided for the Class Members is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3).

*See* Fed. R. Civ. P. 23(e) (2)(C).

**1.    The Relief for the Class is Adequate Given the Risks and Delays of a Trial and Appeal**

Plaintiff's counsel believe the Settlement is in the best interest of the Class Members based on their investigation and discovery, their detailed understanding of the issues raised, and the outcome of extensive settlement negotiations overseen by an experienced mediator.  (Setareh Decl., ¶ 27.)

The following chart provides the estimated potential recovery on a class basis that Plaintiffs

believe they could reasonably achieve *if they were to prevail on all their causes of action*[6]:

| Cause of Action | Estimated Potential Recovery[7] |
|---|---|
| Off-the-Clock Claim (Drivers) | 5 minutes off-the-clock work per shift gives 334,526 off-the-clock hours x $22.76 per hour straight-time rate = $7,613,811. |
| Meal Break Claim (Drivers) | an 11% violation rate gives 441,574 violations x $22.76 per hour straight-time rate = $10,050,224. |
| Meal Break Claim (Non-Drivers) | a 37% violation rate gives 34,915 violations x $22.76 per hour straight-time rate = $794,665. |
| Rest Break Claim (Drivers) | a 10% violation rate gives 401,431 violations x $22.76 per hour straight-time rate = $9,136,569. |
| Rest Break Claim (Non-Drivers) | a 10% violation rate gives 18,417 violations x $22.76 per hour straight-time rate = $419,170. |
| Failure to Reimburse Business Expenses (Drivers) | Assuming an average expense of $5.00 per month x 242,783 months = $1,213,915. |
| **Sub-Total Damages** | **$29,228,354.00** |

---

[6] Civil penalties are estimated and interest is not included in this analysis. This is proper because, first, PAGA penalties are discretionary (see Lab. Code § 2699(e)(2) (the court in its discretion "may award a lesser amount than the maximum civil penalty amount specified by this part…")), and courts evaluate the strength of a proposed settlement without taking potential penalties or interest into consideration. (See *Rodriguez v. West Publishing Corp.* (9th Cir. 2000) 563 F.3d 948, 955; see also *Miller v. CEVA Logistics U.S.A., Inc.* (E.D. Cal. Feb. 19, 2015) 2015 WL 729638, at *7(court utilized calculation of a defendant's exposure exclusive of interest and penalties to determine whether the settlement fell within the range of possible approval).)

[7] All numbers and calculations based on data provided by Defendants and analyzed by an expert retained by Plaintiffs prior to mediation.

| | |
|---|---|
| Labor Code § 203 Penalties (Drivers) | 6,340 terminated Drivers x 8 hours per day x 30 days x $23.37 per hour = $35,559,792.[8] |
| Labor Code § 203 Penalties (Non-Drivers) | 422 terminated Non-Drivers. x 8 hours per day x 30 days x $24.43 per hour = $2,474,270. |
| Labor Code § 226 Penalties (Drivers) | 261,700 Pay Periods x $50 per pay period capped at $4000 per employee gives rise to potential exposure of $7,929,875. |
| Labor Code § 226 Penalties (Non-Drivers) | 3,825 Pay Periods at $50 per violation capped at $4000 per employee gives rise to potential exposure of $141,225. |
| Total Penalties | $46,059,168 |
| **TOTAL WITH PENALTIES INCLUDED** | **$75,561,060.00** |

---

[8] The average hourly rate for purposes of calculating section 203 penalties because a three rather than four-year statute of limitations applies. Generally, a four year statute applies to unpaid wages and other amounts that can be classified as restitution under the Unfair Competition Law, but this would not be applicable to waiting time penalties. *See Cortez v. Purolator Air Filtr. Ptods. Co.,* 23 Cal.4th 163 (2000.)

| | |
|---|---|
| PAGA Penalties (Drivers) | Labor Code 510, 1174 and 1194 penalties.<br>$100 per 261,700 pay periods for each code section *i.e.*<br>$26,170,000 x 3 = $78,510,000<br><br>Labor Code 512 meal break penalties<br>52,000 pay periods x $100 per pay period = $5,200,000<br><br>Labor Code 512 rest break penalties<br>209,000 pay periods x $100 per pay period = $20,900,000<br><br>Labor Code 201/202 penalties for wages owed at termination of employment<br>4,734 pay periods at $100 per pay period = $473,400<br><br>Labor Code 203 penalties for wages owed at termination of employment<br>4,734 pay periods at $100 per pay period = $473,400.<br><br>Labor Code section 2802 penalties<br>120,453 pay periods at $100 per pay period = $12,045,300 |
| PAGA Penalties (Non-Drivers) | Labor Code 512 Meal Break Penalties<br>2,675 pay periods at $100 per pay period = $267,500<br><br>Labor Code 512 Rest Break Penalties<br>3,825 pay periods at $100 per penalty = $382,500<br><br>Labor Code 201/202 penalties for wages owed at termination of employment<br>145 pay periods at $100 per pay period = $14,500<br><br>Labor Code 203 penalties<br>145 pay periods at $100 per pay period = $14,500 |
| Total PAGA Penalties | $118,281,100 |
| *Total if PAGA included* | $193,842,160 |

(Setareh Decl., ¶ 30.)

Despite a total potential recovery of $29,228,354.00 on their unpaid wage, non-penalty class claims, and approximately $75,561,060 on all class claims, including statutory penalties, Plaintiffs recognized the challenges they would have to face establishing liability on the wage and hour claims

and in the case in general considering the motion for class certification was denied. With respect to the claims asserted on behalf of the Settlement Class in this case, there are significant risks that support the reduced compromise amount. These risks include, but are not limited to, the following:

(i)    The risk that Plaintiffs would be unable to prove liability for the unpaid wages they claim, or that this proof would require an individualized inquiry that would prevent these issues from being resolved on a class-wide basis. *See Duran v. US Bank Nat'l Ass'n* (2014) 59 Cal.4th 1, 39 & fn. 33 ("Duran"), *citing Dilts v. Penske Logistics* (S.D. Cal. 2014) LLC  2014 WL 205039 (dismissing certified off-the-clock claims based on proof at trial).  Defendants have contended, for example, that the company unaware of any off-the clock work being performed, so had no reason to know such work was occurring.  *See, e.g.*, *Morillion v. Royal Packing Co*. (2000) 22 Cal. 4th 575, 585 (employer not required to pay employees for time spent performing work of which the employer had no knowledge). Even if such a problem did exist, Defendants contend they did not have such a policy, so do not have a systematic problem across their entire California workforce.

(ii)    The risk that Plaintiffs would not be able to prove liability for Defendants' alleged regular failure to provide compliant meal and rest breaks, or that this proof would require an individualized inquiry that would prevent these issues from being resolved on a class-wide basis.  Defendants have contended that many employees regularly took their full meal and rest breaks and that proving which employees did or did not receive their meal and rest breaks, or how often these breaks were provided, would inherently require individualized inquiries.

(iii)    The risk that Plaintiffs would not recover waiting time and wage statement penalties pursuant to Labor Code sections 203 and 226 because a trier of fact might find Defendants' conduct was not willful.

(iv)    The risk that Defendants' challenged employment policies might not ultimately support class certification or a class-wide liability finding.

(v)    The risk that the Court could limit the PAGA trial to certain locations or groups of employees. *Estrada v. Royalty Carpet Mills, Inc.,* 15 Cal.5th 582, 619 (2024.)

(vi)    The risk that any civil penalties award under PAGA could be reduced by the Court in its discretion could materially impact the recovery by the Aggrieved Employees, *see* Labor Code section 2699(e)(1).

(vii)    The risk that lengthy appellate litigation could ensue as to both liability and certification issues, with associated litigation risk and costs, further enhances the value of a confirmed settlement as opposed to unpredictable litigation.

(viii)    The risk that if the Class prevailed at trial, the Court would require a claims process for distribution of the judgment and would not allow fluid recovery, meaning a significant risk that the payout to the Class would be far less than the amount awarded. *Frlekin v. Apple, Inc.,* 979 F.3d 639 (9th Cir. 2020) ("On remand, the district court shall resolve any relevant factual disputes as part of its ordinary determination of individual remedies, such as by requiring sworn claim forms").

The total class fund is $3,250,0000 ($3,500,000 minus the $250,000 PAGA allocation) which is 11% of the potential non-penalty damages. While the settlement amount is a fraction of the maximum possible non-penalty exposure, it is fair and reasonable in light of the risks associated with achieving class certification, proving class-wide liability, and winning a full-value damages award. For example, the meal break exposure is based on the violation rate in the records of 11% but the trier of fact might find that some percentage of these were a result of Class Members voluntarily skipping or taking late or short meal breaks. A trier of fact could also find that off-the-clock work is less prevalent than Plaintiffs contend.

Therefore, the Parties' proposed settlement is fair, reasonable, and adequate. *See Terry v. Hoovestol, Inc.*, 2018 WL 4283420 *4 (N.D. Cal. 2018): "a cash settlement amounting to only a fraction of the potential exposure does not per se render the settlement inadequate or unfair."; *Kastler v. Oh My Green Inc.,* 2021WL 3604714 *10 (N.D. Cal. 2021): "District courts have found that settlements for substantially less than the plaintiffs' claimed damages were fair and reasonable, especially taking into account the uncertainties involved with litigation." And the settlement is non-reversionary so the entire settlement fund after court approved deductions will be paid to the class.

**2.    The Proposed Method of Distributing Relief to the Class is Effective.**

The settlement provides that Class Members will be mailed checks directly and will not need to submit a claim form. Class Members will have 180 days to cash their settlement checks. Any uncashed settlement checks will be sent to the State of California's Unclaimed Property Fund which the Class Members will be able to claim their payment from.

### 3.    The Proposed Award of Attorney Fees is Fair.

The Ninth Circuit "benchmark" for fees is 25% of the fund, but courts may award a higher percentage when merited. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002). In appropriate cases, state and federal courts applying the percentage-of-recovery method frequently award 1/3 of the common fund. *See, e.g., Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 66 n.11 (2008) (empirical studies show California fee awards generally average around 1/3 of the recovery).

Courts regularly apply a multiplier to the base lodestar to reflect the risks involved, the complexity of the litigation, the length of the case, and other relevant factors. *See Vizcaino*, 290 F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases"). In addition to evaluating "awards made in similar cases," in approving fees to class counsel, courts typically consider: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the Plaintiffs. See *Vizcaino supra* at 1048-50.

Plaintiff's Counsel have shown their dedication to this case by devoting a substantial percentage of their time and resources, and committing to the long-term litigation of this action in the face of great opportunity costs.  Plaintiff's Counsel have committed significant attorney hours to the action. As of the date of the submitted Declarations, the total lodestar Plaintiffs' counsel have accumulated is approximately $782,212, meaning the requested $1,166,666.66 fee currently represents a multiplier of just under 1.5. Setareh Decl. ¶ 33; Becvar Decl. ¶ 11; Buck Decl. ¶ 9.  Of course, if the Court grants preliminary approval, Plaintiffs' counsel will spend additional time on settlement administration and preparing for final approval.

To obtain a class recovery in the case given the Court's denial of class certification, Plaintiffs would have needed either to convince the Court to reconsider its Order or alternatively,

take the case to trial individually (and on the PAGA claim) and appeal the class certification order from the final judgment. Therefore, there was substantial risk, and the result obtained supports the requested fee award.

The fourth factor (*i.e.* "the contingent nature of the fee and the financial burden carried by the Plaintiffs) also clearly weighs in favor of the contemplated attorney fee award. *In re Quantum Health Resources, Inc.* 962 F. Supp. 1254, 1257 (1997). Here, Plaintiffs' Counsel undertook all of the risks of this litigation on a contingent fee basis. They also faced the risks involved in litigating this case for years and spending tens of thousands of dollars in costs, without any guarantee of future pay or reimbursement.

Finally, while Plaintiff's Counsel will seek 33 1/3 % of the common fund as a fee, the amount to be awarded is of course subject to court approval. And the Settlement provides that any amount not awarded in attorney fees will be distributed to the class as part of the Net Settlement Amount. Settlement ¶ 42.

### 4. Any Agreement Required to be Identified Under Rule 23(e)(3).

Other than the Settlement Agreement and Amended Settlement Agreement there are no such agreements. Setareh Decl. ¶ 31.

### D. Class Members Will Be Treated Equitably Relative to Each Other

Rule 23(e)(2)(D) requires a court to determine whether the "proposal treats class members equitably relative to each other." For this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.

Here, the allocation is shift-based, which makes sense given that the primary claim is for off-the-clock work at the beginning and end of shifts, and class members with more shifts are also likely to have more potential meal and rest break violations. The settlement also provides for a greater settlement share for former employees who have a potential claim for Labor Code section 203 penalties. The allocation between drivers and non-drivers (90% and 10) is equitable given not

1    only that there are more driver class members, but additionally, the non-drivers do not have the pre-

2    shift and post-shift off-the-clock claim.

3    **VI.    THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE**

4        **A.    Information About the Settlement**

5            **1.    Differences Between the Settlement Classes and the Plead Classes**

6        The Classes pled in the operative First Amended Consolidated Class Action Complaint

7    ("FACCAC") are as follows:

8        Hourly Employee Class: All persons employed by Defendants and/or any staffing agencies
     and/or any other third parties in hourly or non-exempt positions in California during the
9        Relevant Time Period.

10       Meal Period Sub-Class: All Hourly Employee Class members who worked in a shift in
     excess of five hours during the Relevant Time Period.
11

12       Rest Period Sub-Class: All Hourly Employee Class members who worked a shift of at least
     three and one-half (3.5) hours during the Relevant Time Period.
13

14       Wage Statement Penalties Sub-Class: All Hourly Employee Class members employed by
     Defendants in California during the period beginning one year before the filing of this
15       action and ending when final judgment is entered.

16       Waiting Time Penalties Sub-Class: All Hourly Employee Class members who separated
     from their employment with Defendants during the period beginning three years before the
17       filing of this action and ending when final judgment is entered.

18       Indemnification Class: All current and former hourly non-exempt drivers employed by
19       Defendants in California at any time within the four years prior to the filing of the initial
     complaint in the Provencio Action and through the date notice if mailed to a certified class
20       who did not receive indemnification to reimburse them for the necessary expenditures
     incurred in the discharge of their duty.
21

22       UCL Class: All Hourly Employee Class and Expense Reimbursement Class members
     employed by Defendants in California during the Relevant Time Period.
23   FACCAC ¶ 19.

24       The Settlement Agreement defines two Classes. The "Driver Class" includes: "[A]ll

25   individuals employed by First Student, Inc., and/or First Management Services, LLC, as non-

26   exempt Drivers in California during the Driver Class Period." Agreement § 32. The "Driver Class

27   Period" means "from November 6, 2014 to November 8, 2023." *Id.* § 33. The "Non-Driver Class"

28   includes "all individuals employed by First Student, Inc. and/or First Management Services, LLC

Inc., in non-exempt positions other than as Driver in California during the Non-Driver Class Period." *Id.*

### 2.    Differences in the Claims to be Released and the Claims Pled or Certified

The Released Claims include a release of claims under the Fair Labor Standards Act. Agreement § 56. A class action settlement can release claims under the FLSA even if an FLSA claim is not plead, if the FLSA claim is based on the same predicate facts as the state law wage and hour claims that have been plead. *Rangel v. PLS Check Cashers of California, Inc.,* 899 F.3d 1106, 1110-1111 (9th Cir. 2018.)

### 3.    The Class Recovery Under the Settlement

The Class recovery under the Settlement Agreement is discussed in section III(B) *supra.*

### 4.    Other Cases Affected by the Settlement

Defendants have represented there are no other cases affected by the settlement. Setareh Decl. ¶ 32.

### 5.    The Proposed Allocation for the Settlement Fund

The settlement fund allocation is described in section III(B) and V(D) *supra.*

### 6.    Claim Form

Not applicable. The settlement contemplates mailing checks to settlement Class Members without the necessity of a claim form.

### 7.    Reversion to Defendant

Not applicable. The settlement is non-reversionary. Any residue from uncashed checks will go to the State of California Unclaimed Property Fund to be held for the Class Member.

### B.    Settlement Administration

Lavi & Ebrahimian obtained quotes from five settlement administrators, and the Parties selected ILYM because it provided the lowest "capped" bid. Howe Decl. ¶¶ 9-10.

The qualifications and data protection practices of ILYM are detailed in the Declaration of Lisa Mullins.[9] Also, the Mullins Declarations details the engagements ILYM has had with Setareh Law Group and Lavi & Ebrahimian LLP over the last two years, including 27 class and PAGA cases and eleven *Belaire West* Notices. Mullins Decl. ¶ 4.

### C.    Notice

The Notice of Class Action Settlement is attached as Exhibit 2 to the Declaration of Shaun Setareh. Consistent with section 3 of the Procedural Guidance, the Notice provides: contact information for Plaintiffs' Counsel (*Id.* at ¶10); a website address for settlement Class Members to obtain further information and instructions for obtaining further information on PACER (*Id.* at ¶¶ 8, 10); the date and time of the final approval hearing (*Id.* at ¶¶ 8-9); and instructs Class Members to check the website or PACER to ensure the date and time of the final approval hearing have not changed. (*Id.*)  The Notice also uses the proposed language suggested in the Procedural Guidance regarding receiving more information. *Id.* at ¶ 10.

### D.    Opt-Outs

The Notice advises Class Members they can opt out by mailing a request to the Settlement Administrator. It also advises them of the consequences of opting out, and sets forth information required for identification purposes including name, address, telephone number, and a signature. *Id.* at ¶ 3.

### E.    Objections

The Notice advises Class Members of the deadline to submit objections. *Id.* at ¶ 7. It also instructs Class Members to include their name, address, telephone number, signature and a statement of the grounds of the objection. *Id.*

### F.    Attorney Fees and Costs

See discussion in section (V)(C)(3) *supra.*

### G.    Service Award

---

[9] The Declaration of Lisa Mullins is attached to the Setareh Declaration as Exhibit 3.

The Settlement Agreement provides for awards of $10,000 for Named Plaintiff Galvan and $5,000.00 each for Named Plaintiffs Scott and Tucker.

**H.**   *Cy Pres*

Not applicable. While the settlement is non-reversionary, any uncashed checks will not go to a *cy pres* beneficiary but will, instead, go to the State of California Unclaimed Property Fund to be held in the Class Member's name.

**I.**   **Timeline**

A proposed timeline for the Settlement is included in the proposed Order filed herewith.

**J.**   **Class Action Fairness Act (CAFA) and Similar Requirements**

Defendant will comply with CAFA.  Setareh Decl. ¶ 36. On the date of filing this motion, Plaintiffs' Counsel uploaded a copy of this motion and exhibits including the Settlement Agreements to the LWDA website. Setareh Decl. ¶ 35.

**K.**   **Comparable Outcomes**

The most recent comparable class settlement Plaintiffs' Counsel have worked on that involves claims for off-the-clock work and meal break claims in a class and PAGA case where a class settlement was reached after the denial of class certification is *Figueroa v. Delta Galil, USA Inc.* Northern District of California Case No. 3:18-cv-07796 where the settlement amount was $780,615 for 584 employees. Another comparable settlement that Plaintiffs' Counsel has worked on involving claims for off-the-clock work is *Sephora Wage and Hour Cases,* JCCP No. 4911 which involved 13,908 class members and a $12,750,000 non-reversionary settlement fund.

**L.**   **Electronic Versions**

Upon filing of this motion, Plaintiffs' Counsel will submit Word versions of the Proposed Order and Settlement Notice.

**M.**   **Overlapping Cases**

Defendants have represented there are no other cases affected by the settlement. Setareh Decl. ¶ 32.

**VII.   THE PAGA ALLOCATION IS PROPER**

PAGA provides for a $100 per employee per pay period penalty for the "initial" violation and $200 per employee per pay period for "subsequent" violations. Cal. Lab. Code § 2699(f)(2). The subsequent violation penalty is typically only applied where a court or the Labor Commissioner has notified the employer it was in violation of the Labor Code. *Gunther v. Alaska Airlines,* 72 Cal.App.5[th] 334, 355 (2021.)

The Amended Settlement provides for payment to the LWDA of $187,500 which is 75% of the PAGA allocation under the settlement. (Settlement Agreement ¶ 39.)

Admittedly, the PAGA allocation is a small percentage of the possible exposure (0.15% of what theoretically might be awarded). However, Plaintiffs submit this allocation is appropriate in this case because the settlement of the underlying wage and hour claims is robust, which serves the deterrent purpose of the PAGA statute. *O'Connor v. Uber Technologies, Inc.,* 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016): "By providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of class members as employees but may have a deterrent effect upon the defendant employe and other employers, an objective of PAGA."

Courts have routinely approved similar PAGA allocations. *Viceral v. Mistras Group, Inc.*, 2016 WL5907869 (N.D. Cal. 2016) (0.15%);  *Saechao v. Landrys, Inc.*, 2016 WL 3227180, *3 (N.D. Cal. June 11, 2016) (1.3% ). This result is appropriate here, because the court has broad discretion to reduce the amount of PAGA penalties if the award would be: "unjust, arbitrary and oppressive or confiscatory." Cal. Lab. Code § 2699(e)(2). The PAGA allocation should be approved.

## VIII.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES AND APPOINT PLAINTIFFS AND THEIR COUNSEL TO REPRESENT THEM

### A.    The Settlement Classes Should Be Conditionally Certified For Purposes of Settlement

#### 1.    Standard for Conditional Class Certification Upon Settlement

Parties seeking class certification for settlement purposes must still generally satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To maintain a class action under Rule 23(a), a plaintiff must demonstrate: (1)

numerosity: the class is so numerous that joinder of all members is impracticable, (2) adequacy of representation: the representative parties will fairly and adequately protect the interests of the class, (3) typicality: the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) commonality: there are questions of law or fact common to the class. In addition to these requirements, a plaintiff must satisfy one of the Rule 23(b) prongs to maintain a class action. Under Rule 23(b)(3), the plaintiff must prove: "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." However, in the context of settlement, the Court "need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem supra* at 620.

### 2.    Numerosity

To satisfy the numerosity requirement under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable". *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008). There are 8769 class members. Setareh Decl. ¶ 37.

### 3.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Here, Plaintiffs and their counsel have no conflicts of interest with other Class Members and have and will prosecute the action vigorously on behalf of the class.

### 4.    Typicality

Rule 23(a) likewise requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

Here, Plaintiffs, as class representatives, share with all other Class Members that they were employed as an hourly non-exempt employee by Defendants in California during the relevant time period, they were subjected to the same wage and hour practices being challenged by this litigation, and they alleges that they were in fact negatively affected by those practices. Accordingly, the typicality requirement is satisfied.

### 5.    Commonality

The final requirement under Rule 23(a) is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs alleges Class Members were subjected to common practices in that Defendants: 1) failed to pay for pre-shift and post-shift off-the-clock work (FACCAC ¶¶ 30-35); 2) failed to provide compliant meal breaks. (FACCAC ¶¶ 36-37); 3) failed to provide compliant rest breaks (FACCAC ¶¶ 38-39); 4) required use of personal cellphones without reimbursement, as well as requiring use of personal vehicles for "dry runs" of the school bus routes, and requiring them to purchase cleaning supplies to clean their busses. (FACCAC ¶¶ 40-43); and 5) failed to provide accurate wage statements. (FACCAC ¶¶ 44-48.) The Court accordingly should certify the Settlement Class for purposes of settlement under Rule 23(a).

### 6.    Predominance and Superiority

For settlement purposes common issues regarding the legality of Defendants' wage and hour practices predominate over any individualized issues. The Declaration of Dr. Jeffrey Petersen explains how individualized issues related to the wage and hour claims asserted herein can be effectively managed. Petersen Decl. ¶¶ 69-73.

The survey itself need not be performed prior to class certification. For example, in *Aldapa v. Fowler Packing Co*., 323 F.R.D. 316 354 n25 (E.D. Cal. 2018) the district court certified a claim for off-the-clock work, based in part on Dr. Petersen's explanation of how he would conduct a survey if the case were tried. And in *Aldapa* the district court also certified an expense reimbursement claim based on Dr. Petersen's proposed survey. *Id.* at 344-345: "Whatever method of determining damages may ultimately be employed here, the fact that plaintiffs have proposed statistical modeling at this stage does not defeat certification."

And, given the small size of any individual claims, class treatment is plainly superior to individual adjudication.

### IX.    CONCLUSION

The Settlement is a good result for the class, arrived at with enough litigation and discovery for the parties to accurately value the claims. Preliminary approval should be granted.

DATED: April 24, 2025                            **SETAREH LAW GROUP**

1
2

**LAVI & EBRAHIM LLP**
**STEPHAN ZOURAS LLP**
**THIERMAN BUCK LLP**

3

/s/ Shaun Setareh

4

SHAUN SETAREH

5

THOMAS SEGAL
BRIAN LOUIS

6

JOSEPH LAVI
VINCENT GRANBERRY

7

EVE HOWE
JAMES B. ZOURAS

8

TERESA M. BECVAR
DAVID J. COHEN

9

JOSH BUCK
*Attorneys for Plaintiffs*

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT