UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA GALVAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FIRST STUDENT MANAGEMENT, LLC, et al., <br><br> Defendants. | Case No. 18-cv-07378-JST <br><br> **ORDER DENYING RENEWED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** <br><br> Re: ECF No. 134 |

Before the Court is a renewed motion for preliminary approval of class action settlement filed by Plaintiffs Barbara Galvan, Spynsir Tucker, and Germaine Scott. ECF No. 134. Defendants First Student Management, LLC, First Group America, Inc., and First Transit, Inc. ("Defendants") do not oppose the motion. The Court will deny the motion.

**I.   BACKGROUND**

   **A.   Factual and Procedural Background**

Defendants provide transportation services to school districts and related clients. Named Plaintiffs Barbara Galvan, Spynsir Tucker, and Germaine Scott worked for Defendants as bus drivers at various points between 2001 and 2021. ECF No. 114 ¶¶ 27–29.

Plaintiff Galvan initiated this action in San Mateo County Superior Court on November 6, 2018, and Defendants removed it to federal court on December 7, 2018. ECF Nos. 1, 1-1. A later-filed case, *Provencio v. First Student, Inc.*, No. 19-cv-04152-JST, was related to Galvan's case because it asserted similar claims against Defendants. ECF No. 119 ¶ 6. Plaintiffs Galvan and Provencio then filed a consolidated amended complaint on April 22, 2020. ECF No. 54.

The operative consolidated complaint, ECF No. 114 at 5–33, alleges that Defendants violated the California Labor Code and Business and Professions Code by: (1) failing to provide employees with their meal periods; (2) failing to provide employees with their rest breaks; (3) failing to pay premium wages to class members when they had not been provided with required meal periods and/or rest breaks; (4) failing to pay at least minimum wages to class members for all time worked; (5) failing to pay the correct overtime rate; (6) failing to pay double-time wages at the correct rate; (7) failing to reimburse class members for all necessary business expenses; (8) failing to maintain accurate written wage statements; and (9) failing to pay full final wages after separation. ECF No. 114 at 7.

Plaintiffs originally moved for class certification on October 14, 2021. ECF No. 77. The Court denied that motion. ECF No. 99. Plaintiffs then moved for preliminary approval of a proposed class action settlement on December 7, 2023. ECF No. 118. The Court denied that motion on August 16, 2024. ECF No. 126.

Plaintiffs filed their renewed motion for preliminary approval of a proposed class action settlement on April 24, 2025. ECF No. 134. Plaintiffs also filed a supplemental brief after seeking and receiving leave from the Court to do so. ECF Nos. 136, 139, 141. The Court took the motion under submission without argument on June 16, 2025.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(a).

## III. DISCUSSION

### A. Class Certification

#### 1. Legal Standard

"Even if the parties have agreed to settle a case on a class-wide basis, the court must determine whether the proposed class satisfies all the requirements of Rule 23(a) (numerosity, typicality, commonality, and adequacy of representation) and either Rule 23(b)(1), (2), or (3)." Manual for Complex Litigation § 22.921 (4th ed.) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997)); *see* Fed. R. Civ. P. 23(e)(1)(B) (requiring court to direct notice of settlement "if giving notice is justified by the parties' showing that the court will likely be able

to . . . certify the class for purposes of judgment on the propos[ed] [settlement]"). In the settlement context, "a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620 (citing Fed. Rule Civ. Proc. 23(b)(3)(D)). Even so, "other specifications of [ ] Rule [23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Id.*; *accord In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019) (noting that "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial. On the other hand, in deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses.").

### 2. Analysis

#### a. Predominance

Plaintiffs seek provisional certification of the settlement class under Rule 23(b)(3). This rule requires that questions common to all class members "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Common questions must predominate as to each cause of action for which the moving party seeks class certification. *See Berrien v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355, 361 (N.D. Cal. 2011). As noted above, the Supreme Court has established that the predominance requirement applies with equal, or "even heightened," force to the provisional certification of a settlement class. *Amchem Prods., Inc.*, 521 U.S. at 620; *accord id.* at 622–25 (affirming the holding that a proposed settlement class could not be certified because it lacked predominance).

The Court has found twice previously that Plaintiffs failed to demonstrate predominance. ECF No. 99 at 6–16; ECF No. 126 at 8–9 ("Once again, Plaintiffs make no effort to satisfy this requirement. . . . Plaintiffs cannot expect to obtain a different result based on an unchanged record."). Plaintiffs submitted an expert report based on records that were "incomplete and inadequate to demonstrate whether Defendants complied with the Labor Code." ECF No. 99 at 6. Plaintiffs also submitted declarations from class members, but these did not "support the existence of a uniform, unofficial policy, because of the wide variations in the frequency with which class

3

members did not take meal breaks." *Id.* at 11.

Plaintiffs offer little more on their third attempt. They summarily state that "common issues regarding the legality of Defendants' wage and hour practices predominate over any individualized issues" and represent that five paragraphs from "[t]he Declaration of Dr. Jeffrey Petersen explain[] how individualized issued related to the wage and hour claims asserted herein can be effectively managed." ECF No. 134 at 35. The proposed use of survey data does not allay the Court's concerns about the lack of evidence supporting the "existence of a common, unofficial policy," ECF No. 99 at 12, underlying Defendants' wage and hour practices. Here, Plaintiffs ask the Court to assume that the results of a not-yet-conducted survey will "paper over" the variations in Plaintiffs' own declarations that the Court identified in its previous orders. *See* ECF No. 99 at 11–12. *Senne v. Kansas City Royals Baseball Corp.* ("*Senne I*"), 315 F.R.D. 523, 583 (N.D. Cal. 2016) ("Rather than merely filling in 'evidentiary gaps' in a situation where all of the employees were similarly affected by a uniform policy, plaintiffs here are attempting to paper over significant material variations that make application of the survey results to the class as a whole improper."). The Court declines the invitation.

Plaintiffs also rely on *Aldapa v. Fowler Packing Co.*, 323 F.R.D. 316 (E.D. Cal. 2018), representing that there, "the district court certified a claim for off-the-clock work, based in part on Dr. Petersen's explanation of how he would conduct a survey if the case were tried." ECF No. 134 at 35. But in *Aldapa*, the court stated that "the fact that plaintiffs have proposed statistical modeling at this stage does not defeat class certification" in the context of *superiority* and after the Court had already found the predominance requirement was satisfied. The *Aldapa* court specifically noted that "under binding Ninth Circuit precedent individualized damage assessments, standing alone, cannot serve to defeat class certification." *Id.* at 344 (citing *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013) and *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). Here, the Plaintiffs' issue is not just individualized damage assessments, but whether Plaintiffs can establish *liability* based on the existence of unofficial, companywide policies regarding meal periods, rest periods, off-the clock work, and expense reimbursement. Plaintiffs still have not demonstrated that these liability issues are capable of

4

class-wide proof. Plaintiffs' motion is denied on that basis.

### b.     Adequacy

Rule 23(a)(4) provides that named plaintiffs must "fairly and adequately protect the interests of the class." Courts consider two questions to determine adequacy: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Mulderigg v. Amyris, Inc.*, 340 F.R.D. 575, 581 (N.D. Cal. 2021) (quoting *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012)). When assessing the adequacy of class counsel, courts must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class . . . ." Fed. R. Civ. P. 23(g)(1)(A). In addition, courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . . ." Fed. R. Civ. Pro. 23(g)(1)(B). "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).

Plaintiffs have failed to rectify the issues the Court identified in its previous order. In that order, the Court observed that the fact that "Plaintiffs' counsel have not even bothered to obtain a class list from Defendants, which they could easily have acquired," was not "the hallmark[] of adequate counsel." ECF No. 126 at 10. The amended proposed settlement agreement reveals that Plaintiffs' counsel still has not obtained the class list. ECF No. 134-4 at 24 ¶ 26 ("'Class List' means a complete list of all Class Members that Defendants *will* diligently and in good faith compile from its records and provide to the Settlement Administrator within thirty (30) calendar days after Preliminary Approval of this Settlement." (emphasis added)). Moreover, if the class list reveals that the total number of workweeks exceeds the expectations of the parties and the parties cannot agree on an adjustment to the settlement amount, the settlement will collapse. *Id.* 48–49

¶ 103. This uncertainty, created by Plaintiffs' counsel's failure to procure basic records after years of litigation, demonstrates Plaintiffs' counsel's inadequacy to represent the class. *See Lawrence v. Goals Aesthetic & Plastic Surgery*, No. 1:18-cv-8649-GHW, 2024 WL 3742398, at *10–11 (S.D.N.Y. Aug. 9, 2024) (granting defendants' motion to decertify class on ground of inadequate counsel where plaintiffs' counsel "never pursued class-wide time and payroll records").

For the foregoing reasons, the proposed settlement class fails to satisfy Rule 23, and Plaintiffs' motion for preliminary approval is therefore denied.

### B. Preliminary Approval

In addition to the problems preventing certification under Rule 23, numerous other aspects of the proposed settlement continue to preclude preliminary approval.

#### 1. Amount Offered in Settlement

To evaluate the adequacy of the relief that a settlement provides, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. "Balancing the class's potential recovery against the amount offered in settlement is 'perhaps the most important factor to consider' in preliminary approval." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 970 (N.D. Cal. 2019) (quoting *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016)).

The Court's prior order raised several concerns about the amount offered in settlement. ECF No. 99 11–15. The Court now considers whether Plaintiffs' renewed motion satisfactorily addresses those concerns.

##### a. Lack of Factual Basis for Recovery Estimation

In its order on Plaintiff's prior motion, the Court took issue with Plaintiffs' formula to calculate the maximum possible recovery for the failure to provide meal periods. ECF No. 126 at 12–13. Plaintiffs have resolved some of these issues—for instance, adjusting the assumed hourly rate of pay from $10 to $22.

Other issues, however, remain. In the prior motion, Plaintiffs assumed a 10% violation rate based on Defendants' records. But the parties had agreed that Defendants' "records are

incomplete and inadequate." ECF No. 126 at 13 (quoting ECF No. 99 at 6). Now, Plaintiffs use an 11% violation rate for meal breaks for the Driver Class and a 37% violation rate for the Non-Driver Class. ECF No. 134-4 at 10 ¶ 30. But again, the only explanation provided is that these "numbers and calculations [are] based on data provided by Defendants and analyzed by an expert retained by Plaintiffs prior to mediation." *Id.* at 10 n.1. The details of this claimed expert analysis and the basis on which it was conducted remain shrouded in mystery. Thus, there continues to be "no way for the Court to determine whether the settlement is fair and reasonable." ECF No. 126 at 13.

### b. Inclusion of PAGA Payment & Compromise Positions

Plaintiffs now use $3,250,000 ($3,500,000 minus the $250,000 PAGA allocation) as the numerator to produce their recovery estimate for class claims, ECF No. 134 at 26, which rectifies the Court's concern on this point as expressed in its prior order. ECF No. 126 at 13–14. Likewise, Plaintiffs no longer base Defendants' maximum exposure on compromise positions, resolving this concern as well. *Id.* at 14–15.

### c. Amount Offered for PAGA Claims

The Court's prior order observed that "[n]either Plaintiffs' motion nor the supporting declarations contain an estimation of the maximum possible recovery for the PAGA claims," making it impossible to determine whether a $250,000 PAGA penalty is fair and adequate. ECF No. 126 at 15. Plaintiffs now calculate maximum possible PAGA penalties, ECF No. 134 at 24, but like their other calculations, they do so based on unexplained assumptions. Moreover, while the non-penalty class fund amounts to 11% of potential non-penalty recovery, *id.* at 26, Plaintiffs acknowledge that the $250,000 PAGA penalty is just 0.15% of the potential penalty recovery. *Id.* at 33. Plaintiffs represent that "[c]ourts have routinely approved similar PAGA allocation," *id.*, but they cite only one case with a similar percent recovery, *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 3227180, at *3 (N.D. Cal. June 11, 2016). And in *Viceral*, the court expressed "substantial concern" about a 0.15% recovery on settlement and explained that it "would ordinarily be highly skeptical of a settlement that amounts to a tiny fraction of the value of the PAGA claim." *Id.* at *9. Only in light of "the unusual and peculiar circumstances of this case

7

1    where Plaintiffs face a substantial risk of recovering nothing on either the PAGA or class claims"
2    did the court conclude the 0.15% recovery was fair and reasonable. *Id.* Plaintiffs here have not
3    shown such unusual and peculiar circumstances.

4    Also, the Court stated in its prior order that "Plaintiffs . . . have not stated whether LWDA
5    has objected or otherwise responded to the proposed settlement." ECF No. 126 at 15. Plaintiffs
6    still have not done this. *See Almanzar v. Home Depot U.S.A., Inc.*, No. 2:20-CV-0699-KJN, 2022
7    WL 2817435, at *17 (E.D. Cal. July 19, 2022) (citing *Rodriguez v. Danell Custom Harvesting,*
8    *LLC*, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018); *Mancini v. W. & S. Life Ins. Co.*, 2018 WL
9    4489590, at *2 (S.D. Cal. Sept. 18, 2018)). Accordingly, the Court cannot find that the amount
10   offered for PAGA claims is fair and reasonable.

### 2. Equitable Treatment of Class Members

12   The Court's prior order raised two issues with respect to the equitable treatment of class
13   members: that Plaintiffs' proposed formula (1) did not distinguish between current and former
14   employees and thus inequitably distributed payment for late-paid final wage claims, and (2) did
15   not account for differences in the number of hours worked per week. ECF No. 126 at 16.
16   Plaintiffs have attempted to resolve each of these concerns.

17   Plaintiffs have resolved the latter issue. Plaintiffs have adjusted from a workweek-based
18   payment formula to one based on shifts. Moreover, Plaintiffs explain that this is equitable because
19   "the primary claim is for off-the-clock work at the beginning and end of shifts, and class members
20   with more shifts are also likely to have more potential meal and rest break violations." ECF No.
21   134 at 28.

22   As to the former issue, however, the formula now provides that former employees "will
23   have their Individual Shifts increased by 15% to account for their added entitlement to" late-paid
24   final wage claims. ECF No. 134. But Plaintiffs do not explain how a 15% adjustment is
25   proportionate to those employees' potential recovery for late-paid final wage claims. Without
26   further explanation, the Court concludes that this is arbitrary.

### CONCLUSION

28   For the foregoing reasons, Plaintiffs' motion for provisional certification of the settlement

8

1  class and preliminary approval of the proposed settlement is denied.

2  The Court sets a case management conference on December 2, 2025 at 2:00 p.m. An
3  updated joint case management statement is due November 24, 2025. That statement must
4  address all of the topics set forth in the Standing Order for All Judges of the Northern District of
5  California – Contents of Joint Case Management Statement, including by providing proposed
6  dates for designation of experts, discovery cut-off, hearing of dispositive motions, pretrial
7  conference, and trial.

**IT IS SO ORDERED.**

Dated:  October 21, 2025



JON S. TIGAR
United States District Judge